PROBER & RAPHAEL, A LAW CORPORATION
DEAN R. PROBER, ESQUIRE, #106207
LEE S. RAPHAEL, ESQUIRE, #180030
CASSANDRA J. RICHEY, ESQUIRE #155721
MELISSA VERMILLION, ESQUIRE #241354
JOSEPH GARIBYAN, ESQUIRE #271833
BONNI S. MANTOVANI, ESQUIRE, # 106353
ANNA LANDA, ESQUIRE #276607
HALIE L. LEONARD, ESQUIRE #265111
20750 Ventura Boulevard, Suite 100
P. O. Box 4365
Woodland Hills, California 91365-4365
(818) 227-0100
(818) 227-0101 facsimile
cmartin@pralc.com
Attorneys for Secured Creditor
O.027-091

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bk. No. 2:14-bk-19737-WB |
| | ) |
| Christopher Smith, | ) |
| | ) CHAPTER 11 |
| Debtor. | ) |
| | ) |

NOTICE OF SECURITY INTEREST IN RENTS AND PROFITS

TO DEBTOR, DEBTOR'S ATTORNEY, AND ALL INTERESTED PARTIES:

NOTICE IS HEREBY GIVEN pursuant to 11 U.S.C. § 552(b) and § 546(b) of the

Bankruptcy Code that OneWest Bank N.A., its assignees and/or successors in interest, has a

security interest in the rents and profits in that certain real property commonly known as **4130-

4132 ½ Toluca Lake Avenue, Burbank, CA 91505**.

Said security interest arises from a Promissory Note and Deed of Trust dated August 31,

2006 in the original amount of $888,780.00.  A copy of the Note and Deed of Trust is attached

hereto as **Exhibit "1"** and is incorporated herein by this reference.

NOTICE IS HEREBY GIVEN that pursuant to Bankruptcy Code § 546(b), OneWest

1

Bank N.A., its assignees and/or successors in interest, hereby claims a perfected security interest in rents, issues and profits of the afore-described subject property.

NOTICE IS ALSO GIVEN that as a result of this Notice of Perfection under § 546(b) concerning the rents, issues and profits from the subject Property, that all rents, issues and profits generated hereafter from the afore-described real property are deemed cash collateral as defined under 11 U.S.C. § 363(a) and are subject to the perfected security interest held by OneWest Bank N.A., its assignees and/or successors in interest.

NOTICE IS HEREBY GIVEN that said cash collateral must be segregated and separately accounted for pursuant to Bankruptcy Code § 363(c)(4).

NOTICE IS FURTHER GIVEN that OneWest Bank N.A., its assignees and/or successors in interest, does not consent to the use of its cash collateral and hereby demands that such funds generated from the subject real property be segregated and separately accounted for as required by law and turned over to OneWest Bank N.A., its assignees and/or successors in interest.

Dated: August 1, 2014                    Prober & Raphael, A Law Corporation

                                         /s/ Cassandra J. Richey
                                         CASSANDRA J. RICHEY, ESQ., #155721

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Prober & Raphael, A Law Corporation, 20750 Ventura Boulevard, Suite 100, Woodland Hills, CA 91364

A true and correct copy of the foregoing document entitled (*specify*): NOTICE OF SECURITY INTEREST IN RENTS AND PROFITS will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:   Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 07/30/2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**CHAPTER 13 TRUSTEE: Melanie Scott Green** Melanie.green@usdoj.gov
**ATTORNEY FOR INTERESTED PARTY: M Jonathan Hayes** jhayes@srhlawfirm.com,
roksana@srhlawfirm.com;carolyn@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;anastasia@srhlawfirm.com;maria@
**ATTORNEY FOR INTERESTED PARTY: Gina J Kim** gjkim@piteduncan.com,
ecfcacb@piteduncan.com;GJK@ecf.inforupcty.com
**DEBTORS ATTORNEY:Matthew D Resnik** matt@srhlawfirm.com,
mattecf@gmail.com;renee@srhlawfirm.com
**OFFICE OF THE U.S. TRUSTEE: United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____8/5/14_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):   Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 8/5/14 | Iris Shaangelyan | /s/ Iris Shaangelyan |
|--------|------------------|----------------------|
| *Date* | *Type Name* | *Signature* |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**2.  SERVED BY U.S. MAIL**

2

Honorable Julia W. Brand
U.S. Bankruptcy Court
3
255 E Temple St Ste 1382
4
Los Angeles, CA 90012
Judges Copy

5

Christopher Smith
6
4130 W Toluca Lake Ave
Burbank, CA 91505
7
Debtor

8

M Jonathan Hayes
9
Simon Resnik Hayes LLP
15233 Ventura Blvd Ste 250
10
Sherman Oaks, CA 91403
Debtors' Attorney
11

12

Matthew D Resnik
Simon Resnik Hayes LLP
13
510 W 6th St
Ste 1220
14
Los Angeles, CA 90014
Debtors' Attorney
15

16

U.S. Trustee
United States Trustee (LA)
17
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
18

19

20

21

22

23

24

25

26

27

28

ARM - WITH PAYMENT [Graduated Payment Advantage]
**NOTE SECURED BY DEED OF TRUST**
(Adjustable Interest Rate Loan - Cost of Funds Index)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY
MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES, MY PRINCIPAL BALANCE INCREASES AND
MY INTEREST RATE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT
OF THE SAME DATE

U.S. $ 5 888,780.00                                           Santa Monica, California

Loan No. REDACTED                                            August 31, 2006

4130 - 4132 1/2 Toluca Lake Avenue, Burbank, CA 91505

                                        (Property Address)

**1  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay

**EIGHT HUNDRED EIGHTY-EIGHT THOUSAND SEVEN HUNDRED EIGHTY AND 00/100**

Dollars (U.S. $ 888,780.00 ) (this amount is called "principal", plus interest, to the order of the Lender. The
Lender is First Federal Bank of California, a federal savings bank, its successors and/or assignees, or
anyone to whom this Note is transferred. I understand that the Lender may transfer this Note. The Lender or
anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the
"Note Holder."

**2  INTEREST**

(a)  **Interest Rate**

Interest will be charged on the unpaid principal until the full amount of principal has been paid. I will
pay interest at the yearly rate of 7.040% . This is my initial interest rate. The interest rate I will pay may
change. The interest rate provided for in this Section 2 is the rate I will pay both before and after any default
described in Section 8 of this Note. Interest will be charged on the basis of a twelve-month year and a
thirty-day month.

(b)  **Interest Change Dates**

The interest rate I will pay may change on the 1st day of November, 2008 and on that day each
month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The
new rate of interest will become effective on each Interest Change Date.

(c)  **Interest Rate Limit**

So long as I own the property securing this Note, my interest rate will never be greater than
**11.950%** , or lower than **2.950%** . If this property is sold or transferred, with the prior consent of Lender as
provided in Paragraph 12, the maximum interest rate will be 4.910% percentage points above the greater of

(i) my initial interest rate; or

(ii) my interest rate at the time of sale or transfer.

(d)  **The Index**

Beginning with the first Interest Change Date, the interest rate will be based on an index (the
"Index"). The "Index" is the monthly weighted average cost of savings, borrowings and advances of
members of the Federal Home Loan Bank of San Francisco (the "Bank"), as made available by the Bank.
The most recent Index figure available as of the date 15 days before each Interest Change Date is called
the "Current Index."

If the Index or any Index previously substituted under this Section 2(d) is no longer available, or is
otherwise unpublished, or at Lender's sole discretion is determined to be substantially recalculated, the
Lender may choose a new Index. The Lender will give me notice of the choice. The Lender shall next adjust
the Margin set forth in Section 2(e) of this Note based upon the value of the substituted Index as of the last
preceding Interest Change Date on which the prior Index was available or the date of this Note, whichever
occurs later, such that the sum of the substituted Index and the adjusted Margin will be similar to the sum of
the prior Index and the Margin set forth in Section 2(e) of this Note as of such date. The most recent value of
the substituted Index, as announced from time to time, and such adjusted Margin shall become the Index
and the Margin for purposes of Section 2 of this Note.

(e)  **Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by
adding 2.950% percentage points (the "Margin") to the Current Index. Subject to the limit in Section 2(c), this
amount will be my new interest rate until the next Interest Change Date.

**3  PAYMENTS**

(a)  **Time and Place of Payments**

I will make payments every month in accordance with the terms of this Note.

I will make my monthly payments on the first day of each month beginning on November 1, 2006. I
will make these payments every month until I have paid all of the principal and interest and any other
charges described below that I may owe under this Note. My monthly payments will be applied to interest
before principal. If, on October 1, 2036, I still owe amounts under this Note, I will pay those amounts in full
on that date, which is called the "maturity date."

I will make my monthly payments at 401 Wilshire Boulevard, Santa Monica, California 90401, or at a
different place if required by the Note Holder. Principal, interest and charges are payable in lawful money of
the United States.

RIDER TO NOTE SECURED BY DEED OF TRUST - PREPAYMENT PENALTY RIDER

OWNER OCCUPANCY RIDER ATTACHED HERETO AND MADE A PART HEREOF

(b)  Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of
TWO THOUSAND SIX HUNDRED FIFTY-NINE AND 14/100
Dollars (U.S. $ 2,659.14). This amount may change.

My initial monthly payment may not constitute a "full payment" at the interest rate shown in paragraph 2 above. My initial monthly payment is calculated based on a payment rate (or "Pay Rate") of 0.500% . This lower payment amount will not reflect the actual interest rate that is being charged on my Note.

(c)Payment Change Dates
My monthly payment (1) of any Full Payment or Limited Payment (as such terms are defined below) may change as required by Section 3(d) below beginning on the 1st day of November, 2007 and on that day every twelfth (12th) month thereafter, and (2) of any Interest Only Payment (as such term is defined below) may change as required by Section 3(d) below beginning on the 1st day of November, 2007 and on that day every month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Sections 3(f) or 3(g) below requires me to pay the Full Payment.
I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Sections 3(f) or 3(g) below.

(d)  Calculation of Monthly Payment Changes and Payment Options

(i)  During the First Five Years of the Loan Term.  During the first five years of the loan term, I may have up to three payment options, each with changes to the monthly payment as follows:

(A)  Limited Payment.  I have the option of paying a Limited Payment (as defined below).  At least 25 days but not more than 120 days before each Payment Change Date, the Note Holder will calculate the monthly amount that would be sufficient to repay the remaining unpaid principal in full on the maturity date in substantially equal installments at the pay rate equal to the sum of the immediately prior Pay Rate plus 0.750%. The result of this calculation is called the "Limited Payment." The Limited Payment may not constitute a "Full Payment" at the interest rate shown above.  This lower payment amount will not reflect the actual interest rate that is being charged on my Note nor the full amount of interest due, and may result in negative amortization (deferred interest which will be added to the principal balance of my loan).
After the first five years of the loan term, the Limited Payment is calculated based upon the interest rate, not the Pay Rate, as described in Subsection 3(d)(ii)(A) below.

(B)  Full Payment.  At all times I have the option of paying the Full Payment (as defined below).  At least 25 days but not more than 120 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the remaining unpaid principal in full on the maturity date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."

(C)  Interest Only Payment.  I will have the option of making an Interest Only Payment (as defined below) so long as such payment is greater than the Limited Payment.  The Interest Only Payment is the monthly amount allocated to interest based on a 30 day month and shall be calculated by multiplying the unpaid principal of this Note by the applicable interest rate, dividing the product by 360 and multiplying the quotient by 30.

(ii)  After The First Five Years of The Loan Term.  After the first five years of the loan term, and every fifth year thereafter, my monthly payment will be recalculated in accordance with Section 3(g), and I will pay either the Full Payment, the Limited Payment or an Interest Only Payment as set forth herein.  My first payment following the fifth anniversary date of my loan term must be a Full Payment.

(A)  Limited Payment.  Following the month in which I am required to make a Full Payment as described above, I will have the option of making a Limited Payment.  In order to determine the Limited Payment, the Note Holder will calculate the amount of my monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075. The result of this calculation is the new Limited Payment.

(B)  Full Payment:  The Note Holder will calculate the Full Payment as provided in Section 3(d)(i)(B) above.

(C)  Interest Only Payment.  The Note Holder will calculate the Interest Only Payment as provided in Section 3(d)(i)(C) above.

(iii)  Minimum Payment.  Unless Sections 3(d)(iii)(B), 3(f) or 3(g) below requires me to pay a different amount, I will pay at least the Limited Payment.

(e)  Additions / Reductions to My Unpaid Principal
My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient at the monthly payment date to repay the unpaid principal in full on the maturity date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder will also charge interest on the amount of this difference. The interest rate on the interest added to principal will be the rate required by Section 2 above.

My monthly payment could also be greater than the amount necessary to repay the principal in full on the maturity date in substantially equal payments. In that case, the Note Holder will subtract the amount of the interest portion of the monthly payment from the amount of the monthly payment and will then subtract this difference from the unpaid principal.

(f)  Limit on My Unpaid Principal; Increased Monthly Payment.
My unpaid principal can never exceed a maximum amount equal to ONE HUNDRED TWENTY-FIVE AND 00/100 (125.00%) of the principal amount I originally borrowed.  My unpaid principal could exceed that maximum amount due to the Limited Payments and/or interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my current interest rate in substantially equal payments. At this time I will not have the option of paying the Limited Payment.

REDACTED

**(g) Required Full Payment - Recast**

On November 1, 2011, and on the same day every five years thereafter (each a "Recast Date"), I will begin paying the Full Payment (defined above) as my monthly payment until my monthly payment changes again. I will not have the option of paying the Limited Payment or the Interest Only Payment for my monthly payment due on any Recast Date. I will also begin the Full Payment as my monthly payment on the final Payment Change Date

**4    NOTICES OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment at least 25 days before the effective date of any change. The notice will contain the new interest rate and/or the payment amount applicable to my loan. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**5    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments, without paying any prepayment charge. The Note Holder may require that any partial prepayments be made on the date monthly payments are due and be in the amount of that whole part of one or more monthly payments which would be applied towards principal. If I make a partial prepayment, there will be no changes in the amount of the dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits.

**7    LEGISLATION AFFECTING LENDER'S RIGHT**

If enactment or expiration of applicable laws or regulation has the effect of rendering any provision of the Note or Deed of Trust relating to payment of interest or principal, defaults, or transfer of the property unenforceable according to its terms, the Note Holder, at its option, may require immediate payment in full of all sums secured by the Deed of Trust and may invoke any remedies permitted herein.

**8    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(a)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be six percent of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(b)  Accrual of Interest on Unpaid Balance**

In addition to any late charge described above and at the option of the Note Holder, all accrued interest which is not paid when due shall also bear interest at the same rate as the interest on the unpaid principal balance.

**(c)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, or if I do not keep the promises I make in this Note or the Deed of Trust securing it, I will be in default.

**(d)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not correct the default by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

**(e)  No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(f)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Such expenses include for example, reasonable attorneys' fees.

**9    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(a) above or at a different address if I am given a notice of that different address

**10    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

REDACTED

11    WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

12    SECURITY

The Note is secured by a Deed of Trust dated the same date as this Note, and said Deed of Trust contains the following clause, which is incorporated herein: **"Assumptions.** During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a credit worthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower."

13    CLERICAL ERRORS

In the event that the Lender at any time discovers that this Note or the Deed of Trust or any other document related to this loan (the "Loan Documents") contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error. I agree, upon notice from the Lender to re-execute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

14    LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

BORROWER(S):

_____

Christopher R. Smith

DO NOT DESTROY THIS NOTE. When paid, this Note, with the Deed of Trust securing it, must be surrendered to Trustee for cancellation before reconveyance will be made.

REDACTED

REDACTED

FIRST FEDERAL BANK
OF CALIFORNIA
Corporate Office
401 Wilshire Boulevard
Santa Monica, CA 90401-9490

## PREPAYMENT CHARGE RIDER TO
## NOTE SECURED BY DEED OF TRUST

This Rider is attached to and made part of that certain Note Secured by Deed of Trust (the "Note") dated
August 31, 2006 by and between

Christopher R. Smith, a married man as his sole and separate property

("Borrower"), and FIRST FEDERAL BANK OF CALIFORNIA, ("Lender" or "Note Holder"). All terms used herein
shall have the meanings ascribed to such terms in the Note. To the extent the provisions contained herein conflict
with any provision contained in the Note, the provisions hereof shall control.

1.    Paragraph 5 of the Note is hereby modified in its entirety to read as follows:

    "5  BORROWER'S RIGHT TO REPAY

        I have the right to make payments of principal at any time before they are due.  A payment of principal only
        is known as a "prepayment."  When I make a prepayment, I will tell the Note Holder in writing that I am
        doing so.  I may make a full prepayment or partial prepayments.

        Over the first three Loan Years, I may prepay an aggregate amount not exceeding $ 177,756.00         (20
        percent of the original loan amount, the "Permitted Prepayment") without penalty.  During the first three
        Loan Years, if I prepay an amount in excess of the Permitted Prepayment, I will pay to the Note Holder a
        prepayment charge pursuant to the following schedule

    FIRST LOAN YEAR     $ 22,219.50

    SECOND LOAN YEAR    $ 14,813.00

    THIRD LOAN YEAR     $ 7,406.50

        After completion of the third Loan Year, there will be no prepayment charges for any full or partial
        prepayments.  As used in this Note, "Loan Year" means each year during the term of this Note
        commencing thirty days before the first payment due date.

        The prepayment charge shall be payable upon a prepayment as set forth above, whether voluntary or
        involuntary, including but not limited to a prepayment resulting from the Note Holder's permitted
        acceleration of the balance due on the Note.  Notwithstanding the foregoing, nothing herein shall restrict
        my right to prepay at any time without penalty, accrued but unpaid interest that has been added to
        principal.

        The Note Holder may require that any partial prepayments be made on the date monthly payments are due
        and be in the amount of one or more monthly payments which would be applied towards principal.  Any
        partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the
        principal balance of the Note which shall not relieve me of the obligation to make the installments each and
        every month until the Note is paid in full.  If I make a partial prepayment, there will be no changes in the
        amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes.
        My partial prepayment may reduce the amount of my monthly payments after the first Payment Change
        Date following my partial prepayment.  However, any reduction due to my partial prepayment may be offset
        by an interest rate increase."

2.   Other than as expressly modified herein, the provisions of the Note shall remain in full force and effect, according to their terms.

BORROWER(S):

_____

Christopher R. Smith

REDACTED

FIRST FEDERAL BANK OF CALIFORNIA
401 Wilshire Boulevard, Santa Monica, California 90401

## OWNER-OCCUPANCY ADDENDUM TO NOTE

Loan No. REDACTED                                    Date: August 31, 2006

FOR VALUE RECEIVED, the undersigned (the "Borrower" or "Trustor") agrees that the following provisions shall be incorporated into that certain note (the "Note") of even date executed by the Borrower, in favor of First Federal Bank of California (the "Lender" or "Beneficiary"), as beneficiary, which Note is secured by a deed of trust (the "Deed of Trust") of even date. To the extent that the provisions of this Rider are inconsistent with the provisions of the Note or Deed of Trust, the provisions of this Rider shall prevail and shall supersede any such inconsistent provisions of the Note or Deed of Trust.

## 1.  OWNER OCCUPANCY

As an inducement for Lender to make the loan secured by the Deed of Trust, Borrower has represented to Lender that the Property will be occupied, within ninety days of the date of recording of the Deed of Trust, as the Borrower's personal residence, and will not be used as investment property (i.e. the Property will be "owner-occupied"), unless extenuating circumstances exist which are beyond Borrower's control and as to which Borrower notifies Lender in writing. Borrower acknowledges that Lender would not have agreed to make the loan if the Property were not to be owner-occupied and that the interest rate set forth on the face of the Note and other terms of the loan were determined as a result of the Borrower's representation that the Property would be owner-occupied. Borrower further acknowledges that, among other things, purchasers of loans (including agencies, associations and corporations created by the federal and state government for the purchase of loans) typically require that properties securing loans acquired by such purchasers be owner-occupied, and will reject loans for which the security properties are not owner-occupied. Lender's ability to sell a loan or an interest in a loan (which it often does in the ordinary course of business) will be impaired where a security property is not owner-occupied. the risks involved and the costs of holding and administering a loan are often higher in the case of a loan where the security property is not owner-occupied; and, if and when Lender makes a loan on non-owner-occupied property, Lender typically makes such a loan on terms different from those of loans secured by owner-occupied properties.

In order to provide Lender with evidence of the owner-occupancy of the Property, the Borrower agrees to provide Lender with documentation reasonably requested by Lender for the purpose of verification of owner-occupancy. This documentation may include, but is not limited to, utility bills, copies of the Borrower's most recent telephone billing statement and any tax return schedules showing investment property owned by the Borrower. Such documentation shall assist Lender in verifying owner-occupancy, but shall not in itself be deemed proof of owner-occupancy if, in Lender's judgment, other evidence indicates that the Property is not occupied by the Borrower.

Accordingly, in the event the Property is not occupied, within the applicable time described above, as a personal residence of the Borrower, or the Borrower fails to provide the documentation required hereunder in a timely manner, the Lender may, at its option, do the following:

A.    If at such time the loan meets the Lender's normal requirements as to loan-to-value ratio, property type, etc. for a loan secured by non-owner occupied property, the Lender may (a) permanently increase the interest rate on the Note by an additional one percent (1.00%); and (b) add one percent (1.00%) of the face amount of the Note, representing the additional loan fee, to the unpaid principal balance of the Note.

B.    Alternatively, the Lender may declare all sums secured by the Deed of Trust to be immediately due and payable.

The rights of Lender hereunder shall be in addition to any other rights of Lender under the Note and Deed of Trust or allowed by law.

REDACTED

Page 1

## 2.    PREPAYMENT CHARGE

In addition to the foregoing, in the event that the Lender determines, in its sole and absolute judgment, that Borrower has failed to occupy the Property by the ninetieth day following recording of the Deed of Trust as Borrower's personal residence as described in Paragraph 1 above, a prepayment charge shall be payable thereafter in connection with any prepayment made under the Note. In such case, the prepayment charge shall be the greater of (a) the prepayment charge set forth in the Note and any Rider thereto, if any, or (b) the following prepayment charge:

A.    For any prepayment made within **three years** of the date of the Note, the prepayment charge shall be the greater of: (i) one percent of the unpaid principal balance of the Note on the date of prepayment or (ii) the amount determined under the following schedule:

First Year:        Three percent of the principal amount being prepaid.

Second Year:       Two percent of the principal amount being prepaid.

Third Year:        One percent of the principal amount being prepaid.

B.    If prepayment is made after such three year period, there shall be no prepayment charge due.

## 3.    FEES OR COSTS

Any legal fees or administrative costs incurred directly or indirectly by Lender as a result of the inability to sell the loan may be added to the unpaid principal balance of the Note.

## 4.    EFFECT OF RIDER

Except as otherwise provided in this Rider, all of the provisions of the Note and Deed of Trust shall remain in full force and effect.

In this rider, the singular shall include the plural.

REDACTED

IN WITNESS WHEREOF, the Borrower has executed this Rider on the _____31st_____ day of ____August____, 20 0U .

BORROWER(S):

_____
Christopher R. Smith

REDACTED

## ALLONGE TO NOTE

Loan Number: REDACTED

For the purposes of further endorsement of the following described Note, this allonge is affixed and becomes a permanent part of said note:

Original Loan Amount:  $888,780.00
Note Date:  08/31/2006
Borrower:  CHRISTOPHER R SMITH
Property address:  4130-4132 1/2 W TOLUCA LAKE
  BURBANK, CA 91505

WITHOUT RECOURSE PAY TO THE ORDER OF:

OneWest Bank, FSB

Authorized Signer

CRYSTAL MOORE 3rd Party Authorized Signatory - Nationwide Title Clearing

REDACTED ALLONGE_OWBFA

REDACTED

## ALLONGE TO NOTE

Loan Number: REDACTED

For the purposes of further endorsement of the following described Note, this allonge is affixed and becomes a permanent part of said note.

Original Loan Amount:    $888,780.00
Note Date:               08/31/2006
Borrower:                CHRISTOPHER R SMITH
Property address:        4130-4132 1/2 W TOLUCA LAKE
                         BURBANK, CA 91505

**WITHOUT RECOURSE PAY TO THE ORDER OF:**
OneWest Bank, FSB

FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for First Federal Bank of California, a Federal Savings Bank, Santa Monica, CA



Authorized Signer

CRYSTAL MOORE ATTORNEY-IN-FACT

REDACTED    ALLONGE_OWBFA

REDACTED

REDACTED

**This page is part of your document - DO NOT DISCARD**

**06 2014919**

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**09/11/06 AT 08:00am**

**TITLE(S) :**

L E A D     S H E E T



FEE

| FEE $ | 48 Z |
| DAF $ | 6 |
| C-20 | 10 |

D.T.T.

NOTIFICATION SENT $4

CODE
20

CODE
19

CODE
9

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY:
13 of 22

WHEN RECORDED MAIL TO:

**FIRST FEDERAL BANK OF CALIFORNIA**
401 Wilshire Boulevard / LOAN SERVICE
Santa Monica, California 90401

06 2014919

Loan No. REDACTED
Title Order No. REDACTED

REDACTED

| | CONSTRUCTION | XX | NON-CONSTRUCTION |
Deed of Trust and Assignment of Rents
**ADJUSTABLE INTEREST RATE LOAN**

REDACTED

THE NOTE SECURED BY THIS DEED OF TRUST PROVIDES FOR CHANGES IN THE INTEREST RATE AND MONTHLY PAYMENTS AND MAY PROVIDE FOR THE ADDITION OF UNPAID INTEREST TO PRINCIPAL (NEGATIVE AMORTIZATION). SEE THE NOTE DESCRIBED BELOW FOR FULL DESCRIPTION OF LOAN TERMS.

THIS DEED OF TRUST IS MADE ON          August 31, 2006                    The Trustor is

Christopher R. Smith, a married man as his sole and separate property

("Borrower")  The trustee is SEASIDE FINANCIAL CORPORATION ("Trustee")  The beneficiary is FIRST FEDERAL BANK OF CALIFORNIA, a federally chartered savings bank and whose address is 401 Wilshire Boulevard, Santa Monica, California 90401 ("Lender", "Note Holder" or "Beneficiary").

Borrower owes Lender the principal sum of
EIGHT HUNDRED EIGHTY-EIGHT THOUSAND SEVEN HUNDRED EIGHTY AND 00/100

Dollars (U.S. $ 888,780.00)

This debt is evidenced by Borrower's note dated the same date as this Deed of Trust ("Note") which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **10/01/2036**. This Deed of Trust secures to Lender: (a) the repayment of the debt evidenced by the Note with interest and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Deed of Trust; (c) the performance of Borrower's covenants and agreements under this Deed of Trust and the Note; (d) the performance, if the loan secured by this Deed of Trust is a construction loan, of Borrower's covenants and agreements contained in a construction or building loan or similar agreement; (e) the performance if the security property is subject to a lease, of the terms and conditions of any such lease; (f) compliance with the terms of any Declaration of Covenants, Conditions and Restrictions or similar instruments pertaining to the security property; (g) the performance of any agreement of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and (h) the payment of charges allowed by law for any statement regarding the obligation secured by this Deed of Trust.
For this purpose and otherwise for valuable consideration, Borrower irrevocably grants, transfers, assigns and conveys to Trustee, in trust with power of sale, in the case of a lease, the leasehold estate in and to the property described below, and the following described property located in Los Angeles County, California:

AS PER LEGAL DESCRIPTION MARKED EXHIBIT 'A' ATTACHED HERETO AND MADE A PART HEREOF, CONSISTING OF 1 PAGE

2485-019-008

Which has the address of     4130 - 4132 1/2 Toluca Lake Avenue, Burbank, CA 91505

("Property Address")

06/11/50

FUTURE TAX STATEMENTS MAY BE MAILED TO BORROWER AT THE ADDRESS SHOWN ABOVE
13 of 22
REDACTED

REDACTED

ETHER WITH all the improvements now or hereafter erected on the property and all present and future easements, rights, rights ay, appurtenances, rents, royalties, leases, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or after made a part of the property. The following items are added to the Property description, and shall also constitute the Property ared by this Deed of Trust: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or d, or intended to be used in connection with the Property, including, but no limited to, those for the purposes of supplying or ributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access trol apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, ashers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, ineling and attached floor coverings now or hereafter attached to the Property. All replacements and additions are also covered by is Deed of Trust. Borrower agrees to execute and deliver, if requested by Lender, any further instruments necessary to confirm the en of this Deed of Trust on any equipment. All of the foregoing is referred to in this Deed of Trust as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant, convey and assign the Property (and, if this Deed of Trust is on a leasehold, that the ground lease is in full force and effect without default on the part of either lessor or lessee thereunder), that the Property is unencumbered, except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, BORROWER AGREES AS FOLLOWS:

(1) **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, any other charges provided in the Note and all other sums secured by this Deed of Trust.

(2) **Construction of Improvements.** Borrower will complete in a good and workmanlike manner any building or improvement or repair which may be begun on the Property, pay any costs incurred when due, and not permit any mechanic's lien against the Property nor any stop notice against loan proceeds.

(3) **Preservation and Maintenance of Property; Nuisance; Duty to Protect; Leaseholds.** Borrower shall not destroy, damage, or substantially change the Property, allow the Property to deteriorate, or abandon the Property. Borrower shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Specifically without limitation, Borrower will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender. Borrower agrees neither to abandon nor leave unattended the Property. Borrower shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property. If this Deed of Trust is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

(4) **Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured at all times against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender (and, if this Deed of Trust is on a leasehold, the ground lease) requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires, with loss payable to Lender. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be subject to the approval of Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender, whether or not such insurance was required by Lender. All insurance procured by or for the benefit of Borrower pertaining to the Property, whether such insurance is required by Lender or not, shall name Lender as the loss payee. Lender shall have the right to hold all policies and renewals. Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event that Borrower obtains any new insurance policies or coverage pertaining to the Property, Borrower shall promptly notify Lender and promptly provide copies of said items. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

At least 30 days prior to the expiration of any insurance policy, Borrower shall obtain and deliver to Lender written evidence of the payment of the renewal premium. If Borrower does not deliver such evidence to Lender or if the insurance is terminated, Lender is specifically requested by Borrower to obtain insurance and include the cost as an amount due pursuant to the Note. Lender is not obligated to obtain the insurance, but if it does so, it may obtain the insurance from any insurance agency or company acceptable to it. If the Lender does obtain such insurance, the Borrower shall reimburse all sums advanced together with interest thereon at the rate of interest due according to the Note, with such reimbursement all due and payable with the next scheduled monthly payment due on the Note. The Borrower is hereby made aware of the fact that any substitute or replacement insurance procured by the Lender will likely cost much more than the insurance which could be procured by the Borrower.

Unless Lender and Borrower otherwise agree in writing, all insurance proceeds (whether or not the policy or provision was required by Lender) shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sum secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when the notice is given.

If under paragraph 14 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the Borrower's monthly payments or change the amount of the payments.

(5) Life, Health, or Accident Insurance. If Borrower maintains life, accident or health insurance and Lender is the owner or holder of any policy of such insurance as further security hereunder, Lender may elect to pay any premiums if Borrower does not make the payment, and any amount so paid shall be secured hereby.

(6) Taxes and Other Sums Due; Liens. Borrower shall timely pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 7, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

If Borrower fails to make any such payment, Lender, without contesting the validity or amount, may make the payment together with any related costs, expenses, fees, or charges, and thereafter enforce all rights relating to said payment as provided to Lender by this Deed of Trust or by law. Borrower agrees to notify Lender and appropriate taxing authorities immediately upon the happening of any event which does or may affect the value of the Property, the amount or basis of the Property, or the availability of any exemption to which Borrower may be entitled, if any law is passed deducting from the value of real property for tax purposes any lien thereon, or changing in any way the laws for the taxation of deeds of trust or debts secured by deed of trust for state or local purposes, or the manner of the collection of any such taxes, including, but not limited to, the postponement of the payment of all or any part of any real or personal property taxes, which would affect this Deed of Trust, the holder of this Deed of Trust and the Note which it secures shall have the right to declare the principal sum and the interest due; provided, however, that such election shall be ineffective if Borrower is permitted by law to pay the whole of such tax in addition to all other payments required hereunder and if, prior to such specified date, does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall be a modification of this Deed of Trust. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Deed of Trust, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien within ten days of the giving of notice.

(7) Impounds. Subject to applicable law and if Lender so requests, Borrower shall pay to Lender on the day monthly payments are due under the Note until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Deed of Trust; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "Impounds". Lender may estimate the Funds due on the basis of current data and reasonable estimates of future impounds.

The Funds may be intermingled with other monies of Lender, and shall not bear interest except as required by law. If Lender requires Impounds due to Borrower's failure to timely make payments pursuant to paragraph 6, Borrower acknowledges and agrees that no interest shall be paid by Lender on such Funds. Lender shall apply the Funds to pay the Impounds. Lender shall give to Borrower all reports of Impounds as required by law. The Funds are hereby pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the Impounds, shall exceed the amount required to pay the Impounds when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments. If the amount of the Funds held by Lender is not sufficient to pay the Impounds when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender. Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 14 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

(8) Assignment of Awards and Damages to Lender. Borrower assigns to Lender all sums due, paid, or payable, (a) for injury to the Property, or (b) in connection with this loan transaction. Lender may, at its option, begin, intervene in, appear in or prosecute in its own name, any legal action, or make any compromise or settlement in connection therewith. If required by Lender, Borrower agrees to execute further assignments of any such compensation, award, damages, rights of action and proceeds.

(9) Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of funds and attorneys' fees, (ii) entry upon the Property to make repairs, (iii) procurement of satisfactory insurance as provided in paragraph 4 hereof, and (iv) if this Deed of Trust is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default by Borrower in the terms and conditions of the ground lease. Any amounts disbursed by Lender pursuant to this paragraph 9, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 9 shall require Lender to incur any expense or take any action hereunder.

(10) Condemnation. The proceeds of any award or claim for damages, direct or indirect, in connection with any condemnation action or proceeding, or for conveyance in lieu of condemnation are hereby assigned and shall be paid to Lender, subject, if this Deed of Trust. Said application shall not cure or waive any default or notice of default nor invalidate any act done because of such notice, nor shall said application change the due date or amount of the monthly payments due on the Note secured by this Deed of Trust.

(11) Failure of Borrower to Comply with Deed of Trust. If Borrower fails to make any payment or do any act provided in this Deed of Trust, Borrower will be in default.

(12) Sums Advanced To Bear Interest. Any sums advanced by Lender under this Deed of Trust will be secured hereby and will bear interest from the date advanced at the same rate as the debt secured by this Deed of Trust.

(13) Application of Payments. Subject to the terms of the Note, Lender has the right to determine how payments received will be allocated among the various items which make up Borrower's obligations to Lender.

REDACTED

06  2014919

(14) **Acceleration Clause; Right to Declare Sums Due.** Irrespective of the maturity date specified in any note or agreement pertaining to any indebtedness secured hereby, Lender shall have the right, at its option, to declare an indebtedness and obligations secured hereby immediately due and payable upon such declaration if: (a) Borrower is in default; or (b) Borrower or any successor in interest to Borrower of such Property sells, enters into a contract of sale, conveys or alienates such Property or any part thereof, or suffers his title or any interest to be divested, whether voluntarily or involuntarily or leases such Property or any part thereof for a term of more than 3 years, or changes or permits to be changed the character or use of the Property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such Property; or (c) Borrower is a partnership and the interest of a general partner is assigned, transferred, or inherited; or (d) Borrower is a corporation and more than 25% of the corporate stock thereof is sold, transferred or assigned during a 12 month period; or (e) Borrower is a trust and there is a change of beneficial interest with respect to more than 25% of such property; or (f) Borrower has made any material misrepresentation or failed to disclose any material fact in those certain financial and other written representations and disclosures made by Borrower in order to induce Lender to enter into the transaction evidenced by the Promissory Note or notes or agreements which this Deed of Trust secures, or (g) the insolvency of Borrower, appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower, or the dissolution or termination of Borrower's existence as a going business (if Borrower is a business), or (h) any breach by Borrower under the terms of any other agreement between Borrower and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower to Lender, whether existing now or later, or (i) Lender deems itself to be financially insecure as to this transaction.

(15) **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

(16) **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** This Deed of Trust shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 14. Borrower's covenants and agreements shall be joint and several. Any person who co-signs this Deed of Trust but does not execute the Note: (a) is co-signing this Deed of Trust only to mortgage, grant and convey that person's interest in the Property under the terms of this Deed of Trust; (b) is not personally obligated to pay the sums secured by this Deed of Trust; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note without that person's consent.

(17) **Legislation or Regulation Affecting Lender's Rights.** If enactment or expiration of applicable laws or regulations has the effect of rendering any provision of the Note or this Deed of Trust unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted herein. If Lender exercises this option, Lender shall take the steps specified in paragraph 24.

(18) **Governing Law; Severability.** The Note and this Deed of Trust shall be governed by the laws, rules and regulations of the United States including, without limitation, the laws, rules and regulations relating to federally chartered savings banks, provided, however, that, to the extent that the Note and this Deed of Trust shall be deemed to be governed by state law, the Note and this Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Note are declared to be severable.

(19) **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Deed of Trust.

(20) **Right to Collect Rents and Profits/Assignment of Leases.** If Borrower is in default hereunder, Lender (in person, by agent, or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the property, and to collect the rents of the Property (including but not limited to those past due). Any rents collected by Lender or the receiver shall be applied first to costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph the word "lease" shall mean "sublease" if the Deed of Trust is on a leasehold.

(21) **Remedies.** No remedy provided by this Deed of Trust is exclusive of any other remedy allowed by law or any other writing. Instead, to the extent permitted by law, all remedies available to Lender by contract or law shall be cumulative and may be exercised singulary or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy. Without limitation, Lender reserves the right to judicially foreclose upon the Property and obtain a judgment against Borrower for any unpaid deficiency, where permitted by law.

(22) **Power of Trustee.** At Lender's request, Trustee may: (1) release any debt; (2) extend the time or alter other terms of payment of such debt; (3) accept additional security; (4) substitute or release any security property; (5) recover all or part of any security property; (6) consent to the making of any map or plat; (7) join in granting any easement on the Property; or (8) join in any extension or subordination agreement. Any such act by Trustee will not affect Borrower's liability for the payment of the debt secured by this Deed of Trust, nor will it affect the lien of this Deed of Trust on the remainder of the Property for the full amount of Borrower's debt to Lender.

(23) **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it, and may charge such fees for each full or partial reconveyance of this Deed of Trust then customarily charged for such services.

06/11/09

REDACTED

(24) **Default; Acceleration; Trustee's Sale upon Default.** For purposes of paragraph 14 and this paragraph 24, a "default" by Borrower shall mean a failure by Borrower to pay any monthly installment under the Note when due, or otherwise perform any obligation required by the Note, or a breach or default by Borrower of any of the provisions of the Deed of Trust, or a breach or default by Borrower under any other Deed of Trust, or other instrument secured by the property described in the Deed of Trust. Pursuant to paragraph 14 and this paragraph 24, in the event of a default by Borrower the entire principal amount outstanding under the Note and Deed of Trust and accrued interest thereon and late charges and other costs shall at once become due and payable at the option of the Note Holder without prior notice and regardless of any prior forbearance. Upon such a default by Borrower, Lender at its option may deliver to Trustee a written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and of election to cause to be sold the Property described in the Deed of Trust. Lender shall also deposit with the Trustee the Deed of Trust and any notes and all documents evidencing expenditures secured thereby. If Lender invokes the power of sale and after the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, without demand on Borrower, Trustee may sell such Property at the time and place fixed by such Trustee and such notice of sale, either as a whole or in separate parcels, and in such order as the Trustee shall determine (subject to such rights as Borrower may have at law to direct such order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of such property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof. Any person, including Borrower, Trustee or Lender, may purchase at such sale. After deducting all costs, fees and expenses of Trustee, and of this Deed of Trust, including costs of evidence of title in connection with such sale, Trustee first shall apply the proceeds of sale to payment of all sums expended under the Deed of Trust, not then repaid, with accrued interest at the rate then payable under the Note or notes secured thereby, and then to payment of all other sums secured thereby and, if thereafter there be any proceeds remaining, shall distribute them to the person or persons legally entitled thereto.

(25) **Substitute Trustee.** Lender, at its option may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the instrument number and recording date where this Deed of Trust is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law.

(26) **Waiver of Statute of Limitations.** Time is of the essence in all of Borrower's obligations. To the extent permitted by law, Borrower waives all present or future statutes of limitations with respect to any debt, demand or obligation secured by this Deed of Trust, in any action to enforce this Deed of Trust.

(27) **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. The right of inspection shall include, but is not necessarily limited to, the right to conduct tests upon and take samples of the soil, the air, and all other chemicals contained on the Property, within the subsurface of the Property, and in the air located upon the Property. If the Property is used for commercial or residential income purposes, at Lender's request Borrower shall deliver to Lender certified copies of all business records, a certified statement of gross and net annual income received from the Property during Borrower's previous fiscal year in such form and detail as Lender shall require, and any other financial statements or records relating to the Property.

(28) **Offsets.** No indebtedness secured by this Deed of Trust shall be deemed to have been offset or to be offset or compensated by all or part of any claim, cause of action, counterclaim or crossclaim, whether liquidated or unliquidated, which Borrower now or hereafter may have or may claim to have against Lender, and, in respect to the indebtedness now or hereafter secured hereby, Borrower waives, to the fullest extent permitted by law, the benefits of California Code of Civil Procedure Section 431.70 (and any successor laws), which Section provides:

> "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in his answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a 'demand for money' and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred with Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9."

(29) **Misrepresentation or Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Deed of Trust secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice, shall have the right to declare the indebtedness secured by the Deed of Trust, irrespective of the maturity date specified in the Note or notes, immediately due and payable. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon hereunder.

(30) **Statement of Obligation.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

(31) **Notices.** Any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing it by first class mail, unless another method is required by law. The notice shall be sent to the Property address unless Borrower designates by notice a different address. Any notice to Lender must be given by first class mail to Lender's address stated above unless Lender designates a different address. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph, provided customary time for mail delivery shall have passed before such presumption is effective.

REDACTED

(32) **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

(33) **Modification.** This Deed of Trust can only be modified in writing and signed by Borrower and Lender.

(34) **Loan Charges.** If a law, which applies to the loan secured by this Deed of Trust and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with such loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit.

(35) **Attorneys' Fees.** Borrower agrees to pay the following costs, expenses and attorney's fees paid or incurred by Note Holder (1) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in connection with the collection, enforcement or interpretation of the Note or this Deed of Trust, whether or not suit is filed, (2) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in workout negotiations or modifications; and (3) costs of suit and attorneys' fees in such sum as the court may adjudge in any action to enforce payment of this Deed of Trust or any part of it.

(36) **Security Agreement; Financing Statements.** The following provisions relating to this Deed of Trust as a security agreement are hereby made a part of this Deed of Trust.

Security Agreement. This instrument shall constitute a security agreement to the extent any of the Property (a) constitutes fixtures, or (b) personal property of Borrower is located upon the Property, and such personal property is used to operate or maintain the Property. Lender shall have all of the rights of a secured party as to said items under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Borrower shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the rents, fixtures and personal property. Borrower shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Borrower shall assemble the personal property in a manner and at a place reasonably convenient to Borrower and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

Addresses. The mailing addresses of Borrower (debtor) and Lender (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Deed of Trust.

(37) **Hazardous Substances.** Borrower represents and warrants that, so long as this Deed of Trust remains a lien on the Property, the Property never has been, and never will be, used for the generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et. seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., the Clean Water Act, 33 U.S.C. Section 466 et. seq. the Safe Drinking Water Act, 17 U.S.C. Section 1401 et. seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601 Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 13000 and 25100, et. seq., and as subsequently amended, or other applicable state or Federal laws, rules or regulations. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Property for hazardous waste. Borrower hereby (a) releases and waives all claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify, defend and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to and/or during Borrower's ownership or interest in the Property, whether or not the same was or should have been known to Borrower. The provisions of this section of the Deed of Trust, including the obligations to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

(38) **Compliance With Laws.** Borrower warrants that the Property and Borrower's actual or intended use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

(39) **Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

(40) **Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

(41) **Assumptions.** During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a creditworthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption, and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower. This paragraph 41 shall be effective only if a substantially similar provision is contained in the Note secured by this Deed of Trust.

(42) **Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (i) a unit in, together with an undivided interest in the common elements of, a condominium project ("Condominium Project") or (ii) a parcel of land improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned unit development ("PUD"), Borrower and Lender further covenant and agree as follows:

06  2014919

(42) **Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (i) a unit together with an undivided interest in the common elements of, a condominium project ("Condominium Project") or (ii) a parcel of improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned development ("PUD"), Borrower and Lender further covenant and agree as follows:

(a) **Assessment and Obligations.** Borrower shall promptly pay, when due, all assessments imposed by the Owners Association, Homeowners' Association, or other governing body of the Condominium Project or PUD ("Owners' Association"). Borrower shall perform all of Borrower's obligations under the provisions of the Declaration, Trust Instrument, Articles of Incorporation, Bylaws, Code of Regulations or other constituent document of the Condominium Project or PUD (the "Instrument").

(b) **Hazard Insurance.** In the case of a Condominium Project, so long as the Owners' Association maintains a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term "extended coverage" and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then: (1) Borrower's obligation under paragraph 4 hereof of maintain hazard insurance coverage on the Property is deemed satisfied; and (2) the provisions of paragraph 4 hereof regarding application of hazard insurance proceeds shall be superseded by any provision of the Instrument or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4 hereof. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect. Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage.

In the case of a Condominium Project or PUD, in the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss, in the case of a Condominium Project, to the Property, whether to the unit or to common elements, or, in the case of a PUD, to the common areas and facilities of the PUD, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower.

(c) **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners' Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

(d) **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the common areas and facilities, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sum secured by this Deed of Trust in the manner provided in paragraph 10 hereof.

(e) **Lender's Prior Consent.** Borrower shall not, except with notice to Lender and with Lender's prior written consent, consent to: (1) the abandonment or termination provided by law in the case of substantial disruption by fire or other casualty or in the case of a taking by condemnation or eminent domain; (2) any material amendment to the instrument of the Condominium Project or PUD, including, but not limited to, any amendment that would change the percentage interest of the unit owners in the common areas and facilities of the Condominium Project or PUD; (3) the effectuation of any decision by the Owners' Association to terminate professional management and assume self-management of the Condominium Project or PUD; (4) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners' Association unacceptable to Lenders; or (5) in the case of a PUD, the transfer, release, encumbrance, partition or subdivision of all or part of the PUD's common areas and facilities, except as to the Owners' Association's right to grant easements for utilities and similar or related purposes.

(43) **Construction Loan Provisions.** If all or any portion of the proceeds of the loan secured by this Deed of Trust are to be used for construction of improvements on the Property covered by the Deed of Trust, the following additional provisions shall apply unless otherwise specified in the Note: Borrower agrees: (1) to commence construction promptly and in any event within thirty (30) days from recordation of the Deed of Trust, and to complete the same in accordance with plans and specifications satisfactory to Lender and to comply with all the provisions of the building loan or similar agreement entered into with Lender; (2) to allow Lender to inspect the security property at all times during construction; (3) to replace any work or materials unsatisfactory to Lender within fifteen (15) calendar days, after notice from Lender of such fact, which notice may be given to Borrower by registered or certified mail, sent to Borrower's last known address, or by personal service of the same; (4) not to suffer or permit any cessation of work on the construction of such improvements for any reason whatsoever for a period of fifteen (15) calendar days, whether consecutive or not without the written consent of Lender; and (5) to promptly pay all claims for labor performed and materials furnished in connection with the said construction and not to permit any claims or lien for said work or material to be filed of record against the security property. If the security property is a part of a larger tract upon which improvements shall be constructed, Borrower shall make separate contracts and subcontracts for said construction which shall pertain to the security property only and shall keep separate, full and complete records of all work and materials furnished to such property. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive the facts and statements therein, and to act thereon hereunder.

(44) **Adjustable Rate Mortgage Provisions.** The Note secured by this Deed of Trust may contain provisions that permit (i) increases and decreases to the rate of interest provided in the Note on a periodic basis; (ii) increases and decreases to the monthly payment of principal and interest on a periodic basis; (iii) limitations on increases in the rate of interest, and may contain provisions that permit; (iv) limitations on increases and decreases in the monthly payment of principal and interest on a periodic basis; and (v) additions of unpaid interest to the outstanding principal balance of the loan evidenced by the Note, with interest thereon. Reference is made to the Note for a complete description of the adjustable rate terms of the indebtedness secured by this Deed of Trust.

(45) Borrower shall not, without prior written consent of Lender, consent to or vote in favor of the establishment, approval or ization of, or incorporation of the Property into, any Community Facilities District, Mello Roos District, or any other district or ganization in which public improvements are financed via bonds of public funds, and repaid by the landowner. Borrower further rees to provide prompt written notice to Lender immediately upon receipt of any information which indicates that the Property is or ly in the future be included in any Community Facilities District, Mello Roos District, or any other district or organization in which lic improvements are financed via bonds or public funds, and repaid by landowners.

REDACTED

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by Borrower and recorded with it.

BORROWER(S):

_____

Christopher R. Smith

06 2014919

*10*

# ACKNOWLEDGMENT

STATE OF _California_

} SS.

COUNTY OF _Los Angeles_

On _August 31st, 2006_ , before me, _Breanna M. LePante_   NOTARY PUBLIC

personally appeared   _Christopher R. Smith_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Breanna M. LePante_   (Seal)

BREANNA M. LEPANTE
COMM. #1506370
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. AUG. 8, 2008

_BREANNA M. LEPANTE
1506370
ORANGE COUNTY      8-8-08_

This Certificate must be attached to:

Title or type of Document: _____

Number of pages: _____

Date of document: _____

Signer(s) other than named above _____

ACKNOW (2003-10-24)

EXHIBIT A

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 16 of Tract No. 8256, in the City of Burbank, as per map recorded in Book 125, Page(s) 7 and 8, of Maps, in the office of the County Recorder of said County.

06  2014919

legal rev. (010698)