| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| M. Jonathan Hayes (Bar No. 90388)<br>Matthew D. Resnik (Bar No. 182562)<br>Roksana D. Moradi (Bar No. 266572)<br>SIMON RESNIK HAYES LLP<br>15233 Ventura Blvd., Suite 250<br>Sherman Oaks, CA 91403<br>Telephone: (818) 783-6251<br>Facsmile: (818) 82704919<br>jhayes@SRHLawFirm.com<br>matthew@SRHLawFirm.com<br>roksana@SRHLawFirm.com<br><br>☒ *Attorney for Movant*<br>☐ *Movant appearing without attorney* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

In re:

CHRISTOPHER SMITH,

Debtor(s)

CASE NO.: 2:14-bk-19737-WB

CHAPTER: 11

**NOTICE OF MOTION AND**
**MOTION FOR ORDER DETERMINING**
**VALUE OF COLLATERAL**
**[11 U.S.C. § 506(a), FRBP 3012]**

This motion is being made under **ONLY ONE** of the following notice procedures:
☐ **No hearing unless requested under LBR 9013-1(o)(4);**
☒ **Hearing set by Movant: LBR 9013-1(d);**
☐ **Hearing on Shortened Notice: LBR 9075-1(b); or**
☐ **Hearing on Emergency Basis: LBR 9075-1(a).**

DATE: 12/11/2014
TIME: 11:00 am
COURTROOM: 1375
PLACE: 255 E. Temple Street
Los Angeles, CA 90012

**Creditor Name** *(Insert name of creditor holding collateral to be valued):* One West Bank, NA, US Bank,NA,

and their Successors and/or Assigns

1. **PLEASE TAKE NOTICE THAT** Christopher Smith (Movant) requests an order valuing the collateral described below. This motion does not request lien avoidance (see LBR forms F 4003 for lien avoidance involving principal residences and judicial liens).

This form is optional. It has been approved for use by    United States Bankruptcy Court for the Central District of California

*June 2013*    Page 1    **F 3012-1.MOTION.VALUATION**

2. **NOTICE PROVISIONS AND DEADLINES FOR FILING AND SERVING A WRITTEN RESPONSE:** Your rights might be affected by this Motion. You may want to consult an attorney.  Refer to the box checked below for the deadline to file and serve a written response. If you fail to timely file and serve a written response, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.  You must serve a copy of your opposition upon the Movant and the Movant's attorney and the United States trustee, and also serve a copy on the judge pursuant to LBR 5005-2(d) and the Court Manual.

a. ☐ **No Hearing Scheduled; Notice Provided Under LBR 9013-1(o):** This Motion is filed by the Movant pursuant to LBR 9013-1(o), which provides for granting of motions without a hearing.  The full Motion is attached, including the legal and factual grounds upon which the Motion is made.  If you wish to oppose this Motion, you must file a written response and request for hearing with the court and serve it as stated above **no later than 14 days after the date stated on the Proof of Service of this Motion** plus 3 additional days if you were served by mail, electronically, or pursuant to F.R.Civ.P. 5(b)(2)(D), (E), or (F). Your opposition must comply with LBR 9013-1(f) and (o).

b. ☒ **Hearing Set by Movant; Notice Provided Under LBR 9013-1(d):** This Motion is set for hearing on at least 21 days of notice pursuant to LBR 9013-1(d).  The full Motion and supporting documentation are attached, including the legal and factual grounds upon which the Motion is made.  If you wish to oppose this Motion, you must file a written response with the court and serve it as stated above **no later than 14 days prior to the hearing**.  Your response must comply with LBR 9013-1(f).  The undersigned hereby verifies that the hearing date and time selected were available for this type of Motion according to the judge's self-calendaring procedures [LBR 9013-1(b)].

c. ☐ **Hearing Requested on Shortened Notice under LBR 9075-1(b):** Movant has filed a separate motion asking the court to set a hearing on shortened notice, titled Application for Order Setting Hearing on Shortened Notice (Application).  If the court grants the Application, the Movant will serve you with another document providing notice. The deadline to file and serve a written response will be contained in this document.  If the court denies the Application, the Movant will provide written notice of a regular hearing date or other proposed disposition of this motion.

d. ☐ **Hearing Requested on Emergency Basis under LBR 9075-1(a):  Hearing Requested on Emergency Basis under LBR 9075-1(a):**  Movant has contacted the court and requested an emergency hearing on less than 48 hours notice.  If the court grants the request, you will receive a separate Notice of Hearing that identifies the deadline for the Movant to file and serve the Motion and the deadline for you to file and serve a written response.  If the court denies the request to set an emergency hearing, the Movant will provide written notice of a regular hearing date or other disposition of this motion and the deadline for filing an opposition.

Date:  11/03/2014

By:    /s/ M. Jonathan Hayes
       *Signature of Movant or Attorney for Movant*


Name:  M. Jonathan Hayes, Esq.
       *Print Name of Movant or Attorney for Movant*

This form is optional.  It has    approved for use by    United States Bankruptcy Court for the Central District of California

*June 2013*                Page 2                **F 3012-1.MOTION.VALUATION**

## MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL PURSUANT TO 11 U.S.C. § 506(a) AND FRBP 3012

**1. The Movant is (*check one*):**
- ☒ The debtor
- ☐ A creditor
- ☐ The trustee
- ☐ The Official Committee of Creditors Holding Unsecured Claims
- ☐ Other (*specify*): _____

**2. The Collateral to be Valued:**

    a. The Movant requests a determination of the value of the following collateral (Collateral).

    ☒ Real Property
      *Street Address:* <u>4130 -4132 1/2 Toluca Lake Ave</u>
      *Unit Number:* _____
      *City, State, Zip Code:* <u>Burbank, CA 91505</u>

      Legal description or document recording number (including county of recording):
      <u>TRACT NO 8256 LOT 16 BOOK 125 PAGES 7-8; APN 2485-019-008</u>

    ☐ Personal Property

      ☐ Vehicle:
      *Year, manufacturer, type, and model:* _____
      *Vehicle Identification Number:* _____
      *Location of vehicle (if known):* _____

      ☐ Equipment:
      *Manufacturer, type, and characteristics:* _____
      *Serial number(s):* _____
      *Location (if known):* _____

      ☐ Other Personal Property (*describe type, identifying information, and location*):
      _____
      _____

    ☐ See attached page.

    b. Purpose of the Valuation

      ☒ Treatment of the claim in a plan:

        ☐ Pursuant to 11 U.S.C. § 1322

        ☒ Pursuant to 11 U.S.C. § 1129

        ☐ Other: _____

      ☐ Disposition or use of Collateral pursuant to 11 U.S.C. § 363;

      ☐ Other: (*specify*): _____
        _____
        _____

This form is optional.  It has    approved for use by    United States Bankruptcy Court for the Central District of California

*June 2013*    Page 3    **F 3012-1.MOTION.VALUATION**

c. Movant asserts that the value of the Collateral is $ 950,000.00 _____ as of (date): 08/14/2014 _____

*Check one:*

☐ Date bankruptcy case was commenced.

☒ Other (*specify*): Case Commenced 05/19/2014; Appraisal dated 08/14/2014 _____

**3. Liens Encumbering the Collateral:**

The Collateral is subject to the following liens in the amounts specified securing the debt against the Collateral:

| Names of Lien Holders in Order of Priority | Original Lien Amount | Balance of Lien Amount As of *(applicable date)* 05/19/2014 |
|---|---|---|
| **1st Lien:** One West Bank, FSB | $ 888,780.00 | $ 1,005,388.22 |
| **2nd Lien:** US Bank | $ 59,220.00 | $ 59,168.00 |
| **3rd Lien:** | $ | $ |

☐ See attached page for additional lien(s).

**4. Determination of Secured/Unsecured Status:**

Based upon paragraphs 2 and 3 above, Movant asserts the following:

| Names of Lien Holders in Order of Priority | Secured Portion of the Claim | Unsecured Portion of the Claim |
|---|---|---|
| **1st Lien:** One West Bank, FSB | $ 950,000.00 | $ 55,388.22 |
| **2nd Lien:** US Bank | $ 0.00 | $ 59,168.00 |
| **3rd Lien:** | $ | $ |

☐ See attached page for additional lien(s).

**5. Evidence in Support of Motion:**

    a. Evidence establishing the value of the Collateral:
        ☒ Declaration of the debtor as owner of the Collateral
        ☒ Declaration of the expert witness
            ☒ Certified appraiser
            ☐ Other: _____
        ☐ Declaration of a party who can authenticate a market report (e.g. Kelley Blue Book) pursuant to F.R.Evid. 803(17).
        ☒ Other: Property Appraisal (Exhibit "A")

    b. Evidence establishing the amount of the claims related to the liens encumbering the Collateral
        ☒ Declaration of the debtor as owner of the Collateral
        ☐ Declaration of a witness authenticating a document that is an admissible statement of a party opponent (e.g. proof of claim or a recent loan statement) pursuant to F.R.Evid. 801(d)(2).
        ☒ Other: Proof of Claim for 1st Lien (Exhibit "B") and Recorded Assignment of Deed of Trust for 2nd Lien (Exhibit "C")
    c. Evidence establishing the priority of the lien encumbering the Collateral
        ☒ Declaration of the debtor as owner of the Collateral
        ☐ Other:

    d. ☐ Other evidence (*specify*):

---

This form is optional.  It has been approved for use by        United States Bankruptcy Court for the Central District of California

*June 2013*                                Page 4                        **F 3012-1.MOTION.VALUATION**

**Based upon the foregoing, Movant requests that this Court value the Collateral as listed in paragraph 2.c. above and that the claims related to the liens encumbering the Collateral, listed in paragraph 3 above, are determined to be secured or unsecured as requested in paragraph 4 above.**

☐ See attached continuation page for additional provisions.

Respectfully submitted,

Date: ___11/03/2014_____

By: ___/s/ M. Jonathan Hayes_____
       *Signature of Movant or Attorney for Movant*

Name: _M. Jonathan Hayes, Esq._____
       *Printed Name of Movant or Attorney for Movant*

This form is optional.  It has been approved for use by    United States Bankruptcy Court for the Central District of California

*June 2013*                                    Page 5                                    **F 3012-1.MOTION.VALUATION**

## DECLARATION OF THE DEBTOR AS OWNER OF THE COLLATERAL IN SUPPORT OF MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL

1.  I, *(state debtor's name)* Christopher Smith _____ declare that I am the debtor in this bankruptcy case.

2.  I make this declaration of my own personal knowledge and if called as a witness, could and would testify thereto.

3.  I am the owner of the collateral listed in paragraph 1 of the Motion for Order Determining Value of Collateral to which this declaration is attached.

4.  My opinion of the value of the Collateral is $ 950,000.00 _____ as of *(applicable date)* 08/14/2014 _____ based upon my personal knowledge, including but not limited to:

    ☒ Review of an appraisal (do not attach).

    ☐ Knowledge of comparable sales (do not attach).

    ☐ Other: _____

5.  As of *(applicable date)* 05/19/2014 _____, the Collateral is subject to the following liens in the amounts specified securing the debt against the Collateral:

| Names of Lien Holders in Order of Priority | Original Lien Amount | Balance of Lien Amount As of *(state applicable date)* 05/19/2014 |
|---|---|---|
| 1st Lien: One West Bank, FSB | $ 888,780.00 | $ 1,005,388.22 |
| 2nd Lien: US Bank | $ 59,220.00 | $ 59,168.00 |
| 3rd Lien: | $ | $ |

The foregoing balances are established by true and correct copies of filed proofs of claim, or recent loan statements, or other documents attached to this declaration as ~~Exhibit A.~~ Exhibit "B"- Exhibit "C"

6.  The purpose of the valuation is to provide for treatment of the claim of:

| Names of Lien Holders in Order of Priority | Secured Portion of the Claim | Unsecured Portion of the Claim |
|---|---|---|
| 1st Lien: One West Bank, FSB | $ 950,000.00 | $55,388.22 |
| 2nd Lien: US Bank | $ 0.00 | $ 59,168.00 |
| 3rd Lien: | $ | $ |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
*Signature*

Christopher Smith
*Printed Name*

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

June 2013                     Page 6                     **F 3012-1.MOTION.VALUATION**

## DECLARATION OF EXPERT WITNESS IN SUPPORT OF
## MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL

I, Jennifer Bosco _____ declare:

1. I am over 18 years of age, and I am qualified to testify as an expert witness in my capacity as a:

   ☒ Licensed Residential Property Appraiser with license no. AR 037417 _____.

   ☐ Other: _____
   _____

2. Attached as Exhibit A to this declaration, is my report, which discloses all the data that I have used in forming my opinion.

3. My opinion of the value of the Collateral is $ 950,000.00 _____ as of *(applicable date)* 08/14/2014 _____.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
*Signature*

Jennifer Bosco
*Printed Name*

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2013*                                    Page 7                    **F 3012-1.MOTION.VALUATION**

**EXHIBIT A**

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: JB081414A

## SUBJECT

| | |
|---|---|
| Property Address: 4130 W Toluca Lake Ave | City: Burbank    State: CA    Zip Code: 91505 |
| County: Los Angeles | Legal Description: TRACT NO 8256 LOT 16 |

Assessor's Parcel #: 2485-019-008    Tax Year: 2013    R.E. Taxes: $ 7,893.28    Special Assessments: $ None
Current Owner of Record:  SMITH,CHRISTOPHER R CO TRUST    Borrower (if applicable):  None (Smith-Owner)
Occupant: ☒ Owner ☐ Tenant ☐ Vacant  Project Type: ☐ PUD ☒ Other (describe) 2-4 Unit    HOA: $ None ☐ per yr. ☐ per mo.
Market Area Name: Burbank-Toluca Lake    Map Reference: 563 D5    Census Tract: 3116.00
The purpose of this appraisal is to develop an opinion of:  ☒ Market Value (as defined), or ☐ other type of value (describe)
This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date) ☐ Retrospective ☐ Prospective
Approaches developed for this appraisal: ☒ Sales Comparison Approach ☐ Cost Approach ☐ Income Approach (See Reconciliation Comments and Scope of Work)
Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)
Intended Use:  The appraisal report is to be used in estate planning.

## ASSIGNMENT

Intended User(s) (by name or type):
Client:  SMITH,CHRISTOPHER    Address:  On File
Appraiser:  Jennifer L. Bosco    Address:  On File

## MARKET AREA DESCRIPTION

| Location: | ☐ Urban ☒ Suburban ☐ Rural | Predominant Occupancy | 2 - 4 Unit Housing | Present Land Use | Change in Land Use |
|---|---|---|---|---|---|
| Built up: | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | PRICE        AGE | One-Unit    96 % | ☒ Not Likely |
| Growth rate: | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner    80 | $(000)      (yrs) | 2-4 Unit     1 % | ☐ Likely *  ☐ In Process * |
| Property values: | ☐ Increasing ☒ Stable ☐ Declining | ☐ Tenant   15 | 427   Low   61 | Multi-Unit   2 % | * To: |
| Demand/supply: | ☐ Shortage ☒ In Balance ☐ Over Supply | ☐ Vacant (0-5%) | 1,249 High  91 | Comm'l      1 % | |
| Marketing time: | ☒ Under 3 Mos. ☐ 3-6 Mos. ☐ Over 6 Mos. | ☐ Vacant (>5%) | 1,050 Pred  67 | % | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends):  Market conditions are considered declining with an average to low supply and demand for residential properties.  Marketing times are typically less than 180 days.  Conventional financing is prevalent and readily available at nominal rates. Seller may pay a portion of a buyer's non-recurring closing costs. The subject area is comprised of single family dwellings built predominately from 1930-1950.  Dwellings vary in age, style, condition and site size.  Commercial and multi-residential properties are situated along major thoroughfares.  There is good access to support services, schools and employment.

## SITE DESCRIPTION

Dimensions:  See Plat Map    Site Area:    6,249 Sq.Ft.
Zoning Classification:  BUR4*    Description:  2-4 Unit
Zoning Compliance: ☒ Legal ☐ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning
Are CC&Rs applicable? ☐ Yes ☒ No ☐ Unknown  Have the documents been reviewed? ☐ Yes ☒ No  Ground Rent (if applicable) $ _____ / _____
Comments:
Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain)
The subject is considered to be a legal conforming use and the subject's current use as a 2-4 Unit is it'shighest and best use.
Actual Use as of Effective Date:  2-4 unit    Use as appraised in this report:  Duplex
Summary of Highest & Best Use:    Highest and best use considered to be 2-4 Unit.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Frontage | Average |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | | Street | | ☒ | ☐ | Topography | Level/Avg |
| Gas | ☒ | ☐ | | Width | Average | | | Size | Average |
| Water | ☒ | ☐ | | Surface | Asphalt | | | Shape | Rectangular |
| Sanitary Sewer | ☒ | ☐ | | Curb/Gutter | | ☒ | ☐ | Drainage | Average |
| Storm Sewer | ☒ | ☐ | | Sidewalk | | ☒ | ☐ | View | Residential |
| Telephone | ☐ | ☐ | | Street Lights | | ☒ | ☐ | | |
| Multimedia | ☐ | ☐ | | Alley | None | | | | |

Other site elements: ☒ Inside Lot ☐ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☐ Other (describe)
FEMA Spec'l Flood Hazard Area: ☐ Yes ☒ No  FEMA Flood Zone: X    FEMA Map #: 065018/06037C/1339 F    FEMA Map Date: 09/26/2008
Site Comments:    There were no apparent adverse easements, encroachment or other adverse conditions noted at the time of the inspection.  Further there were no obvious environmental hazards present in the improvements, on the site, or in the vicinity of the subject.  For properties constructed before 1978 asbestos or lead paint could possibly be an issue.  However, no adverse environmental conditions were observed at the time of the inspection.

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | Exterior Description | Foundation | Basement ☒ None | Heating |
|---|---|---|---|---|
| # of Units    4 ☐ Accessory Unit | Foundation  Concrete/Avg | Slab  Concrete | Area Sq. Ft.         0 | Type  Central |
| # Stories    2 ☐ # Bldgs.    1 | Exterior Walls  Stucco | Crawl Space  None Noted | % Finished         0 | Fuel  Gas |
| Type ☒ Det. ☐ Att. ☐ | Roof Surface  Composition Shin | Basement  None Noted | Ceiling | |
| Design (Style)  Conventional | Gutters & Dwnspts.  Yes | Sump Pump ☐ None | Walls | Cooling |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | Window Type  Various/Avg | Dampness  None Noted | Floor | Central  Central |
| Actual Age (Yrs.)    1944 (70) | Storm/Screens  Yes | Settlement  None Noted | Outside Entry | Other  Central |
| Effective Age (Yrs.)  20 | | Infestation  None Noted | | |

| Interior Description | Appliances | # | Attic ☐ None | Amenities | Car Storage ☐ None |
|---|---|---|---|---|---|
| Floors  Various/Avg | Refrigerator | 4 | Stairs | Fireplace(s) #  _____ Woodstove(s) #  0 | Garage  # of cars ( 8  Tot.) |
| Walls  Drywall/Paint/Wd/Avg | Range/Oven | 4 | Drop Stair | Patio  Patio | Attach. |
| Trim/Finish  Wd/Avg | Disposal | 0 | Scuttle | Deck  None | Detach.    4  Cars |
| Bath Floor  Tile/Avg | Dishwasher | 0 | Doorway | Porch  Porch | Blt-In |
| Bath Wainscot  Tile/Avg | Fan/Hood | 0 | Floor | Fence  Block | Carport |
| Doors  Wd/Avg | Microwave | 0 | Heated | Pool  None | Driveway    4  Cars |
| | Washer/Dryer | 0 | Finished | | Surface  Concrete |

| | | | | | |
|---|---|---|---|---|---|
| Unit # 1 contains: | 5 Rooms; | 2 Bedrooms; | 1 Bath(s); | Sq.Ft. GLA Above Grade | The Total Gross Building Area |
| Unit # 2 contains: | 5 Rooms; | 2 Bedrooms; | 1 Bath(s); | Sq.Ft. GLA Above Grade | for the Subject Property is |
| Unit # 3 contains: | 5 Rooms; | 2 Bedrooms; | 1 Bath(s); | Sq.Ft. GLA Above Grade | 3,254  Sq.Ft. |
| Unit # 4 contains: | 5 Rooms; | 2 Bedrooms; | 1 Bath(s); | Sq.Ft. GLA Above Grade | |

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP 2-4 UNIT

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: JB081414A

**IMPROVEMENTS (cont.)**

Additional features: The energy efficient items are typical for the market area of the subject.

Describe the condition of the property (including physical, functional and external obsolescence): The subject is a 4-unit residential dwelling located on an interior mixed use residential street. The site is level with front and rear landscape, hardscape and 4 car detached garage. The subject is in generally average condition, quality and appeal. No updating noted, original amenities. The following repairs are noted:

**COMPARABLE RENTAL ANALYSIS**

The following properties are representative current, similar, and proximate rental properties comparable to the subject property. This analysis is intended to support the opinion of the market rent for the subject property.

| FEATURE | SUBJECT | COMPARABLE RENTAL # 1 | | COMPARABLE RENTAL # 2 | | COMPARABLE RENTAL # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 4130 W Toluca Lake Ave Burbank, CA 91505 | 609 N Hollywood Way Burbank, CA 91505 | | 10937 Moorpark St North Hollywood, CA 91602 | | | |
| Proximity to Subject | | 0.95 miles N | | 1.49 miles W | | | |
| | | DESCRIPTION | +/– $ Adjust | DESCRIPTION | +/– $ Adjust | DESCRIPTION | +/– $ Adjust |
| Current Monthly Rent | $ | $ 2,650 | | $ 4,645 | | $ | |
| Less: Utilities | –$ | –$ | | –$ | | –$ | |
| Furnishings | –$ | –$ | | –$ | | –$ | |
| Plus: Rent Concess. | +$ | +$ | | +$ | | +$ | |
| Adj. Monthly Rent | $ | $ 2,650 | | $ 4,645 | | $ | |
| Adj. Mo. Rent / GLA | $ /sq.ft. | $ /sq.ft. | | $ /sq.ft. | | $ /sq.ft. | |
| Data Source(s) | Rental Survey | Rental Survey | | Rental Survey | | | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +/– $ Adjust | DESCRIPTION | +/– $ Adjust | DESCRIPTION | +/– $ Adjust |
| Rent Control | ☐ Yes ☒ No | ☐ Yes ☒ No | | ☐ Yes ☒ No | | ☐ Yes ☐ No | |
| Lease Date | MTM/Various | MTM/Various | | MTM/Various | | | |
| Location | Suburban/Avg | Suburban/Avg | | Suburban/Avg | | | |
| Design (Style) | Conventional | Conventional | | Conventional | | | |
| Age | 1944 | 1950 | | 1949 | | | |
| Condition | C3 | C3 | | C3 | | | |
| Total GBA | 3,254 sq.ft. | 3,008 sq.ft. | | 4,400 sq.ft. | | sq.ft. | |
| Total # of Units | 4 | 4 | | 3 | | | |
| Total GLA | 3,254 sq.ft. | sq.ft. | | sq.ft. | | sq.ft. | |

| Unit Breakdown | Tot. | Bed. | Baths | GLA | Tot. | Bed. | Baths | GLA | Tot. | Bed. | Baths | GLA | Tot. | Bed. | Baths | GLA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit # 1 | 5 | 2 | 1 | | 5 | 2 | 1 | | 6 | 3 | 2 | | | | | |
| Unit # 2 | 5 | 2 | 1 | | 3 | 0 | 1 | | 3 | 1 | 1 | | | | | |
| Unit # 3 | 5 | 2 | 1 | | 3 | 0 | 1 | | 3 | 1 | 1 | | | | | |
| Unit # 4 | 5 | 2 | 1 | | 3 | 0 | 1 | | | | | | | | | |

| Parking | 4 Car Garage | | | | | | |
|---|---|---|---|---|---|---|---|

| Net Rental Adjustment (Total) | | ☐ + ☐ – $ | | ☐ + ☐ – $ | | ☐ + ☐ – $ | |
|---|---|---|---|---|---|---|---|
| Indicated Monthly Market Rent | | $ 2,650 | | $ 4,645 | | $ | |

Analysis of rental data:

**SUBJECT RENT SCHEDULE**

**Rent Schedule:** The appraiser must reconcile the applicable indicated monthly market rents to provide an opinion of the market rent for each unit in the subject property.

| | Leases | | Actual Rents | | | Opinion of Market Rent | | |
|---|---|---|---|---|---|---|---|---|
| | Lease Dates | | Per Unit | | Total Rents | Per Unit | | Total Rents |
| Unit # | Begin Date | End Date | Unfurnished | Furnished | | Unfurnished | Furnished | |
| 1 | Owner | | $ | $ | $ | $ | $ | $ |
| 2 | MTM | | $ 1,450 | $ | $ 1,450 | $ 1,750 | $ | $ 1,750 |
| 3 | MTM | | $ 1,400 | $ | $ 1,400 | $ 1,750 | $ | $ 1,750 |
| 4 | MTM | | $ 1,500 | $ | $ 1,500 | $ 1,750 | $ | $ 1,750 |

Comments on lease data: Lease data was not reviewed or provided to appraiser.

| | | |
|---|---|---|
| Total Actual Monthly Rent | $ 4,350 | Total Gross Monthly Rent | $ 5,250 |
| Other Monthly Income (itemize) | $ | Other Monthly Income (itemize) | $ |
| Total Actual Monthly Income | $ 4,350 | Total Estimated Monthly Income | $ 5,250 |

Utilities included in estimated rents ☐ Electric ☐ Water ☐ Sewer ☐ Gas ☐ Oil ☐ Trash collection ☐ Multimedia ☐ Telephone ☒ Other

Comments on actual or estimated rents and other monthly income (including personal property) The above rents include garage parking.

**INCOME APPROACH**

**INCOME APPROACH TO VALUE** ☒ The Income Approach was not developed for this appraisal.

**Gross Rent Multiplier Analysis:**

| Address | Date | Sale Price | Gross Rent | GRM | Comments |
|---|---|---|---|---|---|
| | | | | | |

Opinion of Monthly Market Rent $ 5,250 X Gross Rent Multiplier = $ **Indicated Value by Income Approach**

Summary of Income Approach (including support for market rent and GRM):
N/A

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP 2-4 UNIT**

Form GP2-4 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

4/2007

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File #: JB081414A

TRANSFER HISTORY

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): NDC Data Source

| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: The subject has not been listed or |
|---|---|
| Date: | transferred within the last 36 months. None of the comparables have been listed or transferred within the |
| Price: | last 12 months. |
| Source(s): NDC Datasource | |
| 2nd Prior Subject Sale/Transfer | |
| Date: | |
| Price: | |
| Source(s): | |

## SALES COMPARISON APPROACH TO VALUE (if developed)   ☐ The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 4130 W Toluca Lake Ave Burbank, CA 91505 | 4726 Forman Ave Toluca Lake, CA 91602 | | 4975 Clybourn Ave North Hollywood, CA 91601 | | 609 N Hollywood Way Burbank, CA 91505 | |
| Proximity to Subject | | 0.82 miles NW | | 1.08 miles NW | | 0.95 miles N | |
| Sale Price | $ | $ | 880,000 | $ | 712,000 | $ | 1,050,000 |
| Sale Price/GBA | $ /sq.ft. | 321.05 /sq.ft. | | 257.78 /sq.ft. | | 349.07 /sq.ft. | |
| Gross Monthly Rent | $ 5,250 | $ 4,000 | | $ 5,400 | | $ 4,750 | |
| Gross Rent Multiplier | | 220.00 | | 131.85 | | 221.05 | |
| Price per Unit | $ | $ 440,000 | | $ 178,000 | | $ 262,500 | |
| Price per Room | $ | $ 80,000 | | $ 44,500 | | $ 75,000 | |
| Price per Bedroom | $ | $ 293,333 | | $ 178,000 | | $ 210,000 | |
| Data Source(s) | NDC/MLS | Doc#1540/MLS#SR13170180 | | Doc#1755083/MLS#SR13118794 | | Doc#1301186/MLS#12176532 | |
| Verification Source(s) | Inspection | Local Realtors | | Local Realtors | | Local Realtors | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +/– $ Adjust | DESCRIPTION | +/– $ Adjust | DESCRIPTION | +/– $ Adjust |
| Rent Control | ☐ Yes ☒ No | ☐ Yes ☒ No | | ☐ Yes ☒ No | | ☐ Yes ☒ No | |
| Sales or Financing | None | Cnvl/$600 | | Cnvl/None Noted | | Cnvl/None Noted | |
| Concessions | None | Dom:121 | | Dom:121 | | Dom:83 | |
| Date of Sale/Time | Estate Planning | 01/02/2014 | | 12/12/2013 | | 09/06/2013 | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Suburban/Avg | Suburban/Avg | | Suburban/Avg | | Suburban/Avg | |
| Site | 6,249 Sq.Ft. | 12,436 Sq.Ft. | | 5,317 Sq.Ft. | | 7,742 Sq.Ft. | |
| View | Residential | Residential/Avg | | Residential/Avg | | Residential/Avg | |
| Design (Style) | Conventional | Conventional | | Conventional | | Conventional | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Age | 1944 (70) | 1938 (76) | | 1948 (66) | | 1950 (64) | |
| Condition | C3 | C3 | | C4 | +45,000 | C3 | |
| Total GBA | 3,254 sq.ft. | 2,741 sq.ft. | +30,000 | 2,762 sq.ft. | +29,000 | 3,008 sq.ft. | +15,000 |
| Total # of Units | 4 | 2 | | 4 | | 4 | |
| Total GLA | 3,254 sq.ft. | 2,741 sq.ft. | | 2,762 sq.ft. | | 3,008 sq.ft. | |

| Unit Breakdown | Total | Bdrms | Baths | Total | Bdrms | Baths | | Total | Bdrms | Baths | | Total | Bdrms | Baths | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit # 1 | 5 | 2 | 1 | 7 | 2 | 2 | | 4 | 1 | 1 | | 5 | 2 | 1 | |
| Unit # 2 | 5 | 2 | 1 | 4 | 1 | 1 | | 4 | 1 | 1 | | 3 | 1 | 1 | |
| Unit # 3 | 5 | 2 | 1 | | | | +10,000 | 4 | 1 | 1 | | 3 | 1 | 1 | |
| Unit # 4 | 5 | 2 | 1 | | | | +10,000 | 4 | 1 | 1 | | 3 | 1 | 1 | |

| Basement & Finished | None | None | | None | | None | |
|---|---|---|---|---|---|---|---|
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Wall/None | FWA/CAC | -4,000 | Wall/Wall | | Wall/None | |
| Energy Efficient Items | Typ for Area | Typ for Area | | Typ for Area | | Typ for Area | |
| Parking | 4 Car Garage | 3 Garage Spaces | +2,000 | 3 Carport Spaces | +5,000 | 4 Car Garage | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | Porch/Patio | | Porch/Patio | |
| Amenities | None | None | | None | | None | |
| | | | | | | | |
| | | | | | | | |
| APN | 2485-019-008 | 2420-018-012 | | 2420-015-017 | | 2480-015-011 | |
| Net Adjustment (Total) | | ☒ + ☐ – | $ 48,000 | ☒ + ☐ – | $ 79,000 | ☒ + ☐ – | $ 15,000 |
| Adjusted Sale Price | | Net 5.5 % | | Net 11.1 % | | Net 1.4 % | |
| of Comparables | | Gross 6.4 % | $ 928,000 | Gross 11.1 % | $ 791,000 | Gross 1.4 % | $ 1,065,000 |
| Adjusted Price of Comparables per GBA | | $ 338.56 | | $ 286.39 | | $ 354.06 | |
| Adjusted Price of Comparables per Unit | | $ 464,000 | | $ 197,750 | | $ 266,250 | |
| Adjusted Price of Comparables per Room | | $ 84,364 | | $ 49,438 | | $ 76,071 | |
| Adjusted Price of Comparables per Bedroom | | $ 309,333 | | $ 197,750 | | $ 213,000 | |

| Ind. Val. per GBA $ 292.00 X 3,254 | SF GBA = $ 950,168 | Ind. Val. per Unit $ 237,500 X 4 Units = $ 950,000 |
|---|---|---|
| Ind. Val. per Room $ 47,500 X 20 | Rooms = $ 950,000 | Ind. Val. per Bedroom $ 118,000 X 8 Bedrooms = $ 944,000 |

Summary of Sales Comparison Approach   The comparables are all recent verified sales from the immediate market area.  The sales are  similar in style, overall condition, quality and appeal.  The sales bracket the subject's GLA, site size and basic utility.The adjusted sales range is $791,000-$1,065,000.  More weight given to standard sales and properties evenly weighted with closed sales.

Final Estimated Value: $950,000 THE ESTIMATED EXPOSURE TIME IS 45-120 DAYS. THE APPRAISER HAS NOT APPRAISED THE SUBJECT PROPERTY IN THE PREVIOUS 36 MONTHS.

Appraisal Parameters and Methods: A six month market search was conducted within the subject's neighborhood and similar competing neighborhood(s) for comparable sales, pending sales and properties currently listed for sale.  May properties were reviewed.  To the best of the appraiser's knowledge, the Comparable presented and utilized in this report represent the most relevant data appropriate for the analysis and valuation of the subject property.  The comparable section and valuation analysis is governed by the principle of substitution: a buyer will not pay more for another that is equally desirable.  When determinable, adjustments for significant differences in improvements are derived by matched paired analysis or abstraction.  When matched pair analysis or abstraction were not possible or practical, bracketing and/or the appraiser's knowledge and experience in the market area are utilized in determining the appropriate adjustment for differences.  Comparable sales were confirmed closed per the information data sources cited in the "scope of the Appraisal."  In the case of discrepancies among data sources the appraisers placed more weight on the MLS data for descriptive information and NDC or Public Records for recording data.

Indicated Value by Sales Comparison Approach $   950,000

## GP 2-4 UNIT

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GP2-4 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE                    4/2007

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: JB081414A

## COST APPROACH TO VALUE (if developed)   ☒ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value):

**COST APPROACH**

ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW

| | |
|---|---|
| Source of cost data: | |
| Quality rating from cost service: | Effective date of cost data: |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.): | |

| OPINION OF SITE VALUE | | =$ |
|---|---|---|
| DWELLING | Sq.Ft. @ $ | =$ |
| | Sq.Ft. @ $ | =$ |
| | Sq.Ft. @ $ | =$ |
| | Sq.Ft. @ $ | =$ |
| | Sq.Ft. @ $ | =$ |
| | | =$ |
| Garage/Carport | Sq.Ft. @ $ | =$ |
| Total Estimate of Cost-New | | =$ |
| Less | Physical | Functional | External |
| Depreciation | | =$( ) |
| Depreciated Cost of Improvements | | =$ |
| "As-is" Value of Site Improvements | | =$ |
| | | =$ |
| | | =$ |

Estimated Remaining Economic Life (if required): _____ Years  |  **INDICATED VALUE BY COST APPROACH** .................................... =$

## PROJECT INFORMATION FOR PUDs (if applicable)   ☐ The Subject is part of a Planned Unit Development.

**PUD**

Legal Name of Project:

Describe common elements and recreational facilities:

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 950,000      Income Approach $      Cost Approach (if developed) $ NA

Final Reconciliation   The Sales Comparison approach was solely weighted in determining the final estimate of value, as it best represents typical buyer's and sellers. The Cost approach was not considered  due to the subject's age and location in a fully developed locale. The Income approach was not considered applicable because SFR's in the subject's area are typically purchases for owner use and not income generation.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed,  ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed,  ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:

☒ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is:  $   950,000   , as of:   08/14/2014   , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

## ATTACHMENTS

A true and complete copy of this report contains   21   pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:
☒ Scope of Work   ☒ Limiting Cond./Certifications   ☐ Narrative Addendum   ☒ Photograph Addenda
☐ Sketch Addendum   ☒ Map Addenda   ☒ Additional Sales   ☐ Cost Addendum   ☐ Flood Addendum
☐ Manuf. House Addendum   ☒ Hypothetical Conditions   ☒ Extraordinary Assumptions   ☒ Plat Map   ☒ Location Map
☒ Declaration/Resume   ☐   ☐

Client Contact:  Smith, Christopher          Client Name:   SMITH,CHRISTOPHER
E-Mail:  csmith@csstelevision.com          Address:  On File

## SIGNATURES

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| Appraiser Name:  Jennifer L. Bosco | Supervisory or Co-Appraiser Name: |
| Company:  SunWest Appraisals, Inc | Company: |
| Phone: (818) 613-1767   Fax: | Phone:   Fax: |
| E-Mail: jenbosco@hotmail.com | E-Mail: |
| Date of Report (Signature):  August 14, 2014 | Date of Report (Signature): |
| License or Certification #:   AR037417   State: CA | License or Certification #:   State: |
| Designation:   Certified Residential Appraiser | Designation: |
| Expiration Date of License or Certification:   06/07/2015 | Expiration Date of License or Certification: |
| Inspection of Subject: ☒ Interior & Exterior  ☐ Exterior Only  ☐ None | Inspection of Subject:  ☐ Interior & Exterior  ☐ Exterior Only  ☐ None |
| Date of Inspection:   08/14/2014 | Date of Inspection: |

**GP 2-4 UNIT**

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GP2-4 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE                    4/2007

# ADDITIONAL COMPARABLE SALES

File No.: JB081414A

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address | 4130 W Toluca Lake Ave Burbank, CA 91505 | 617 N Rosemary Ln Toluca Lake, CA 91602 | | 10937 Moorpark St North Hollywood, CA 91602 | | | |
| Proximity to Subject | | 1.21 miles N | | 1.49 miles W | | | |
| Sale Price | $ | $ | 950,000 | $ | 894,500 | $ | |
| Sale Price/GBA | $ /sq.ft. | $ 294.67 /sq.ft. | | $ 203.30 /sq.ft. | | $ /sq.ft. | |
| Gross Monthly Rent | $ 5,250 | $ 4,000 | | $ | | $ | |
| Gross Rent Multiplier | | 237.50 | | | | | |
| Price per Unit | $ | $ 237,500 | | $ 298,167 | | $ | |
| Price per Room | $ | $ 47,500 | | $ 68,808 | | $ | |
| Price per Bedroom | $ | $ 118,750 | | $ 178,900 | | $ | |
| Data Source(s) | NDC/MLS | Doc#1540/MLS#SR13170180 | | MLS#SR13240084 | | | |
| Verification Source(s) | Inspection | Local Realtors | | Local Realtors | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +/– $ Adjust | DESCRIPTION | +/– $ Adjust | DESCRIPTION | +/– $ Adjust |
| Rent Control | ☐ Yes ☒ No | ☐ Yes ☒ No | | ☐ Yes ☒ No | | ☐ Yes ☐ No | |
| Sales or Financing Concessions | None None | Cnvl/None Dom:88 | | Listing Dom:262 | | | |
| Date of Sale/Time | Estate Planning | 11/25/2013 | | Active | | | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | | |
| Location | Suburban/Avg | Suburban/Avg | | Suburban/Avg | | | |
| Site | 6,249 Sq.Ft. | 11,992 Sq.Ft. | 0 | 6,996 Sq.Ft. | | | |
| View | Residential | Residential/Avg | | Residential/Avg | | | |
| Design (Style) | Conventional | Conventional | | Conventional | | | |
| Quality of Construction | Average | Average | | Average | | | |
| Age | 1944 (70) | 1944 (70) | | 1949 (65) | | | |
| Condition | C3 | C3 | | C3 | | | |
| Total GBA | 3,254 sq.ft. | 3,224 sq.ft. | 0 | 4,400 sq.ft. | -68,000 | sq.ft. | |
| Total # of Units | 4 | 4 | | 3 | | | |
| Total GLA | 3,254 sq.ft. | 3,224 sq.ft. | | 4,400 sq.ft. | | sq.ft. | |

| Unit Breakdown | Total | Bdrms | Baths | Total | Bdrms | Baths | Total | Bdrms | Baths | Total | Bdrms | Baths |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit # 1 | 5 | 2 | 1 | 5 | 2 | 1 | 4 | 1 | 1 | | | |
| Unit # 2 | 5 | 2 | 1 | 5 | 2 | 1 | 4 | 1 | 1 | | | |
| Unit # 3 | 5 | 2 | 1 | 5 | 2 | 1 | 5 | 3 | 2 | | | |
| Unit # 4 | 5 | 2 | 1 | 5 | 2 | 1 | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Basement & Finished Rooms Below Grade | None None | None None | | None None | | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | Wall/None | Wall/Wall | | None/Window | | | |
| Energy Efficient Items | Typ for Area | Typ for Area | | Typ for Area | | | |
| Parking | 4 Car Garage | 4 Garage Spaces | | 3 Car Garage | | | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | Porch/Patio | | | |
| Amenities | None | None | | None | | | |
| APN | 2485-019-008 | 2420-022-008 | | 2423-008-016 | | | |
| Net Adjustment (Total) | | ☐ + ☐ – $ | | ☐ + ☒ – $ | -68,000 | ☐ + ☐ – $ | |
| Adjusted Sale Price of Comparables | | Net % Gross % | $ 950,000 | Net 7.6 % Gross 7.6 % | $ 826,500 | Net % Gross % | $ |
| Adjusted Price of Comparables per GBA | | $ 294.67 | | $ 187.84 | | $ | |
| Adjusted Price of Comparables per Unit | | $ 237,500 | | $ 275,500 | | $ | |
| Adjusted Price of Comparables per Room | | $ 47,500 | | $ 63,577 | | $ | |
| Adjusted Price of Comparables per Bedroom | | $ 118,750 | | $ 165,300 | | $ | |
| Summary of Sales Comparison Approach | See page 3. | | | | | | |

(Left vertical label: SALES COMPARISON APPROACH)

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP 2-4 UNIT

Form GP2-4.(AC) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    4/2007

# Assumptions, Limiting Conditions & Scope of Work

File No.: JB081414A

| Property Address: | 4130 W Toluca Lake Ave | | City: Burbank | | State: CA | Zip Code: 91505 |
|---|---|---|---|---|---|---|
| Client: | SMITH,CHRISTOPHER | | Address: | On File | | |
| Appraiser: | Jennifer L. Bosco | | Address: | On File | | |

**STATEMENT OF ASSUMPTIONS & LIMITING CONDITIONS**

— The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

— The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements, and any such sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size. Unless otherwise indicated, a Land Survey was not performed.

— If so indicated, the appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

— The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

— If the cost approach is included in this appraisal, the appraiser has estimated the value of the land in the cost approach at its highest and best use, and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used. Unless otherwise specifically indicated, the cost approach value is not an insurance value, and should not be used as such.

— The appraiser has noted in the appraisal report any adverse conditions (including, but not limited to, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property, or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property, or adverse environmental conditions (including, but not limited to, the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

— The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.  The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

— The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

— If this appraisal is indicated as subject to satisfactory completion, repairs, or alterations, the appraiser has based his or her appraisal report and valuation conclusion on the assumption that completion of the improvements will be performed in a workmanlike manner.

— An appraiser's client is the party (or parties) who engage an appraiser in a specific assignment. Any other party acquiring this report from the client does not become a party to the appraiser-client relationship. Any persons receiving this appraisal report because of disclosure requirements applicable to the appraiser's client do not become intended users of this report unless specifically identified by the client at the time of the assignment.

— The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public, through advertising, public relations, news, sales, or by means of any other media, or by its inclusion in a private or public database.

— An appraisal of real property is not a 'home inspection' and should not be construed as such. As part of the valuation process, the appraiser performs a non-invasive visual inventory that is not intended to reveal defects or detrimental conditions that are not readily apparent. The presence of such conditions or defects could adversely affect the appraiser's opinion of value. Clients with concerns about such potential negative factors are encouraged to engage the appropriate type of expert to investigate.

**The Scope of Work is the type and extent of research and analyses performed in an appraisal assignment that is required to produce credible assignment results, given the nature of the appraisal problem, the specific requirements of the intended user(s) and the intended use of the appraisal report. Reliance upon this report, regardless of how acquired, by any party or for any use, other than those specified in this report by the Appraiser, is prohibited. The Opinion of Value that is the conclusion of this report is credible only within the context of the Scope of Work, Effective Date, the Date of Report, the Intended User(s), the Intended Use, the stated Assumptions and Limiting Conditions, any Hypothetical Conditions and/or Extraordinary Assumptions, and the Type of Value, as defined herein. The appraiser, appraisal firm, and related parties assume no obligation, liability, or accountability, and will not be responsible for any unauthorized use of this report or its conclusions.**

**Additional Comments (Scope of Work, Extraordinary Assumptions, Hypothetical Conditions, etc.):THE GLA WAS DERIVED FROM THIRD PARTY SOURCES DEEMED RELIABLE.  IF DETERMINED NOT TO BE ACCURATE THE APPRAISER RESERVES THE RIGHT TO AMEND THE REPORT ACCORDINGLY.   The appraiser has not performed an valuation on the subject in the previous 36 months.**

**GP** RESIDENTIAL   Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2AD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE                    3/2007

# Certifications

File No.: JB081414A

| Property Address: | 4130 W Toluca Lake Ave | City: Burbank | State: CA | Zip Code: 91505 |
|---|---|---|---|---|

| Client: | SMITH,CHRISTOPHER | Address: | On File |
|---|---|---|---|
| Appraiser: | Jennifer L. Bosco | Address: | On File |

**APPRAISER'S CERTIFICATION**

**I certify that, to the best of my knowledge and belief:**

— The statements of fact contained in this report are true and correct.

— The credibility of this report, for the stated use by the stated user(s), of the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

— I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

— I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

— My engagement in this assignment was not contingent upon developing or reporting predetermined results.

— My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

— My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

— I did not base, either partially or completely, my analysis and/or the opinion of value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property, or of the present owners or occupants of the properties in the vicinity of the subject property.

— Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.

— Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification.

**Additional Certifications:**

**DEFINITION OF MARKET VALUE \*:**

Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1. Buyer and seller are typically motivated;

2. Both parties are well informed or well advised and acting in what they consider their own best interests;

3. A reasonable time is allowed for exposure in the open market;

4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

\* This definition is from regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989 between July 5, 1990, and August 24, 1990, by the Federal Reserve System (FRS), National Credit Union Administration (NCUA), Federal Deposit Insurance Corporation (FDIC), the Office of Thrift Supervision (OTS), and the Office of Comptroller of the Currency (OCC). This definition is also referenced in regulations jointly published by the OCC, OTS, FRS, and FDIC on June 7, 1994, and in the Interagency Appraisal and Evaluation Guidelines, dated October 27, 1994.

| Client Contact: | Smith, Christopher | Client Name: | SMITH,CHRISTOPHER |
|---|---|---|---|
| E-Mail: | csmith@csstelevision.com | Address: | On File |

**SIGNATURES**

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| Appraiser Name: Jennifer L. Bosco | Supervisory or Co-Appraiser Name: |
| Company: SunWest Appraisals, Inc | Company: |
| Phone: (818) 613-1767    Fax: | Phone:                 Fax: |
| E-Mail: jenbosco@hotmail.com | E-Mail: |
| Date Report Signed: August 14, 2014 | Date Report Signed: |
| License or Certification #: AR037417    State: CA | License or Certification #:              State: |
| Designation: Certified Residential Appraiser | Designation: |
| Expiration Date of License or Certification: 06/07/2015 | Expiration Date of License or Certification: |
| Inspection of Subject: ☒ Interior & Exterior  ☐ Exterior Only  ☐ None | Inspection of Subject: ☐ Interior & Exterior  ☐ Exterior Only  ☐ None |
| Date of Inspection: 08/14/2014 | Date of Inspection: |

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**  Form GPRES2AD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    3/2007

**Supplemental Addendum**                                    File No. JB081414A

| Client | SMITH,CHRISTOPHER | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4130 W Toluca Lake Ave | | | | | |
| City | Burbank | County | Los Angeles | State | CA | Zip Code  91505 |
| Owner | SMITH,CHRISTOPHER R CO TRUST | | | | | |

**Additional Information:**

PERSONAL PROPERTY: Personal property includes such items as furnishings, artwork, antiques, machinery, and equipment.  No personal property was included in the valuation of the subject.

FEMA FLOOD DATA: Readers/users of this appraisal must note that the FEMA flood hazard information noted herein (in regards tot he subject) can not be guaranteed by the appraisers.  The appraisers are not qualified experts in the determination of flood hazards and make no representations as to the FDMA flood zones or the necessity of flood insurance for the subject.  The reader/user is advised to obtain a separate independent Flood FDMA, unless otherwise noted or included herein as an exhibit.  Flood information noted in this appraisal was obtained from NDC services.

ZONING DATA: Zoning information was derived from NDC or other sources deemed reliable.  However, the accuracy of the data can not be guaranteed.

STRUCTURAL/MECHANICAL DEFECTS: Unless specifically noted, this appraisal is based on the special assumption that the subject does not have any structural or mechanical defects.  It is assumed that all mechanical equipment and appliances are in satisfactory working condition, unless otherwise noted, and that the electrical/plumbing systems are also adequate, unless otherwise noted.  The appraisers are not experts in these areas (not licensed or qualified home inspector) and have not tested the subject to ensure that all of the above is in working condition.  The pest control report (or termite report) and home inspection report if any, were not provided to the appraisers.  Lastly, this appraisal is based on the special assumption that the roof and foundation systems area adequate.  But again, the appraisers are not experts in these fields and have not tested the subject in these regards.

ADVERSE ENVIRONMENTAL CONDITIONS: There were no obvious environmental hazards present in the improvements, on the site or in the vicinity of the subject property that we noted as the time of the inspection.  The value of the property in this report is based on the assumption that the property is not negatively affected by the presence of hazardous substances or detrimental environmental conditions.  The appraisers are not experts in the identification of hazardous substances or detrimental environmental conditions.  It is possible that tests and inspections made by a qualified hazardous substances and environmental expert would reveal the existence of hazardous materials and environmental conditions on or around the subject property that would negatively affect its value.

COMPETENCY STATEMENT: The appraisers have analyzed/appraised the subject's property type before.  The appraisers possess the necessary knowledge and experience to complete this report in conformity with the competency provision of the USPAP.  The appraiser signing on the right, supervised the appraisal process, has made a through review of the work file including the finished report, has recommended changes where appropriate, and concurs with the analyses and value conclusions stated herein.  The appraisers accept full and complete responsibility for the appraisal report.

PURPOSE OF THE REPORT (SCOPE OF THE REPORT): The purpose of this report is to estimate the market value of the subject property.

FUNCTION (INTENDED USE) OF REPORT: The function of this report is for estate planning purposes.  This appraisal report is not intended for use in a mortgage finance transaction.  This report is not intended for any other use or uses and shall be invalid if used for any other function.  Furthermore, this report may only be used by the noted client, as indicated on the top of the appraisal form.  This report may not be given to and may not be utilized by a third party.  The appraisers and appraisal firm will have no obligation to reissue this report to any other party.

REAL PROPERTY INTERESTS DEFINED: A Fee Simple interest is defined as "Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat." [Dictionary of Real Estate Appraisal, 3rd Ed.]

DIGITAL SIGNATURES: This report may contain digitally-reproduced signatures, which are approved by FNMA, GNMA, FHA and HUD.  The A la mode appraisal software program allows an appraiser to attach a digitally-reproduced signature by entering a secret password known only to the signing appraiser.  Furthermore, after the report is digitally signed, it is locked and cannot be altered by anyone but the

**Supplemental Addendum**

File No. JB081414A

| Client | SMITH,CHRISTOPHER | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4130 W Toluca Lake Ave | | | | | | |
| City | Burbank | County | Los Angeles | State | CA | Zip Code | 91505 |
| Owner | SMITH,CHRISTOPHER R CO TRUST | | | | | | |

signing appraisers.  The appraisers accept full responsibility for the appraisal report.

DIGITAL PHOTOGRAPHS: This report may contain digitally-reproduced photographs, which are
approved by FNMA, GNMA, FHA, and HUD.  The photos have not been altered or enhanced in anyway
that would misrepresent the property or mislead the intended user of this report.  The appraisers accepts
full responsibility for the appraisal.

 PROFESSIONAL ASSISTANCE: Claire Levine-Dotson provided professional assistance
in the preparation of this report. She assisted with data input and research. Claire was
directly supervised by Jennifer Bosco.

**Plat Map**

| Client | SMITH,CHRISTOPHER | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4130 W Toluca Lake Ave | | | | | |
| City | Burbank | County | Los Angeles | State | CA | Zip Code | 91505 |
| Owner | SMITH,CHRISTOPHER R CO TRUST | | | | | |



**Location Map**

| Client | SMITH,CHRISTOPHER | | | | |
|---|---|---|---|---|---|
| Property Address | 4130 W Toluca Lake Ave | | | | |
| City | Burbank | County  Los Angeles | | State  CA | Zip Code  91505 |
| Owner | SMITH,CHRISTOPHER R CO TRUST | | | | |



**Subject Photo Page**

| Client | SMITH,CHRISTOPHER | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4130 W Toluca Lake Ave | | | | | |
| City | Burbank | County | Los Angeles | State | CA | Zip Code 91505 |
| Owner | SMITH,CHRISTOPHER R CO TRUST | | | | | |



**Subject Front**

4130 W Toluca Lake Ave
Sales Price
Gross Living Area     3,254
Total Rooms     20
Total Bedrooms     8
Total Bathrooms     4
Location     Suburban/Avg
View     Residential
Site     6,249 Sq.Ft.
Quality     Average
Age     1944 (70)



**Subject Rear**



**Subject Street**

**Photograph Addendum**

| | |
|---|---|
| Client | SMITH,CHRISTOPHER |
| Property Address | 4130 W Toluca Lake Ave |
| City | Burbank County Los Angeles State CA Zip Code 91505 |
| Owner | SMITH,CHRISTOPHER R CO TRUST |










# Photograph Addendum

| | |
|---|---|
| Client | SMITH,CHRISTOPHER |
| Property Address | 4130 W Toluca Lake Ave |
| City | Burbank    County  Los Angeles    State  CA    Zip Code  91505 |
| Owner | SMITH,CHRISTOPHER R CO TRUST |










# Photograph Addendum

| Client | SMITH,CHRISTOPHER | | | | | |
|--------|-------------------|--|--|--|--|--|
| Property Address | 4130 W Toluca Lake Ave | | | | | |
| City | Burbank | County | Los Angeles | State | CA | Zip Code | 91505 |
| Owner | SMITH,CHRISTOPHER R CO TRUST | | | | | |

 

 

 

## Comparable Photo Page

| Client | SMITH,CHRISTOPHER | | | | |
|---|---|---|---|---|---|
| Property Address | 4130 W Toluca Lake Ave | | | | |
| City | Burbank | County Los Angeles | | State CA | Zip Code 91505 |
| Owner | SMITH,CHRISTOPHER R CO TRUST | | | | |



### Comparable 1

4726 Forman Ave

| | |
|---|---|
| Prox. to Subject | 0.82 miles NW |
| Sale Price | 880,000 |
| Gross Living Area | 2,741 |
| Total Rooms | 11 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | Suburban/Avg |
| View | Residential/Avg |
| Site | 12,436 Sq.Ft. |
| Quality | Average |
| Age | 1938 (76) |



### Comparable 2

4975 Clybourn Ave

| | |
|---|---|
| Prox. to Subject | 1.08 miles NW |
| Sale Price | 712,000 |
| Gross Living Area | 2,762 |
| Total Rooms | 16 |
| Total Bedrooms | 4 |
| Total Bathrooms | 4 |
| Location | Suburban/Avg |
| View | Residential/Avg |
| Site | 5,317 Sq.Ft. |
| Quality | Average |
| Age | 1948 (66) |



### Comparable 3

609 N Hollywood Way

| | |
|---|---|
| Prox. to Subject | 0.95 miles N |
| Sale Price | 1,050,000 |
| Gross Living Area | 3,008 |
| Total Rooms | 14 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4 |
| Location | Suburban/Avg |
| View | Residential/Avg |
| Site | 7,742 Sq.Ft. |
| Quality | Average |
| Age | 1950 (64) |

## Comparable Photo Page

| Client | SMITH,CHRISTOPHER | | | | |
|---|---|---|---|---|---|
| Property Address | 4130 W Toluca Lake Ave | | | | |
| City | Burbank | County  Los Angeles | | State  CA | Zip Code  91505 |
| Owner | SMITH,CHRISTOPHER R CO TRUST | | | | |



### Comparable  4

617 N Rosemary Ln

| | |
|---|---|
| Prox. to Subject | 1.21 miles N |
| Sale Price | 950,000 |
| Gross Living Area | 3,224 |
| Total Rooms | 20 |
| Total Bedrooms | 8 |
| Total Bathrooms | 4 |
| Location | Suburban/Avg |
| View | Residential/Avg |
| Site | 11,992 Sq.Ft. |
| Quality | Average |
| Age | 1944 (70) |



### Comparable  5

10937 Moorpark St

| | |
|---|---|
| Prox. to Subject | 1.49 miles W |
| Sale Price | 894,500 |
| Gross Living Area | 4,400 |
| Total Rooms | 13 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4 |
| Location | Suburban/Avg |
| View | Residential/Avg |
| Site | 6,996 Sq.Ft. |
| Quality | Average |
| Age | 1949 (65) |

### Comparable  6

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

# EXHIBIT B

| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>LOS ANGELES DIVISION | PROOF OF CLAIM |
|---|---|

| | |
|---|---|
| Name of Debtor:<br>Christopher Smith | Case Number:<br>2:14-bk-19737-JWB |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*
*You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>OneWest Bank, FSB | **COURT USE ONLY** |
| Name and address where notices should be sent:<br>OneWest Bank, FSB<br>P.O. Box 829009<br>Dallas, Texas 75382-9009<br><br>Telephone number: (800) 781-7399     email: | ☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number:<br>_____<br>*(If Known)*<br><br>Filed on _____ |
| Name and address where payment should be sent: (if different from above):<br>OneWest Bank, FSB<br>Cashiering Department<br>6900 Beatrice Drive<br>Kalamazoo, Michigan 49009<br><br>Telephone number: (800) 781-7399     email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:** _____ $1,005,388.22

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** _____ Money Loaned
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>_____ xxxxxx3320 | 3a. Debtor may have scheduled account as:<br><br>_____ (See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>_____ (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:** 4130-4132 1/2 Toluca Lake Ave, Burbank, California 91505

**Value of Property:** _____

**Annual Interest Rate:** _3.6590_% ☐ Fixed or ☒ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

_____ $177,246.03

**Basis for perfection:** _____ Recordation of Lien

**Amount of Secured Claim:** _____ $1,005,388.22

**Amount Unsecured:** _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a) (1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family or household use - 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507(a) (__).

**Amount entitled to priority:**

_____

*Amounts are subject to adjustment on 04/01/2016 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (04/13) 2

**7. Documents:** Attached are *redacted* copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and *redacted* copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   Joseph Garibyan
Title:   Attorney
Company:   Prober & Raphael, A Law Corporation
Address and telephone number (if different from notice address above):
P.O. Box 4365
Woodland Hills, CA 91365-4365

9/5/14

(Signature)            (Date)

Telephone number: (818) 227-0100   email: cmartin@pralc.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

Case 2:14-bk-19737-JWB Doc 91 Filed 09/08/14 Entered 09/08/14 14:24:30 Desc Main Document Page 29 of 78

BC Case 2:14-bk-19737-JWB Claim 1 Attachment 7 (Attachment #7 (2/2)) Filed 06/05/14 Desc Main Document Page 3 of 20
Chapter: 11                    Judge: Julia W. Brand                    Trustee: :

# Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.** See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | Christopher Smith | **Case number:** | 2:14-bk-19737-JWB |
| **Name of creditor:** | OneWest Bank, FSB | **Last four digits** of any number you use to identify the debtor's account: | xxxxxx3320 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date (05/19/2014)

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in item 1 on your Proof of Claim form).

1.  **Principal due**                                                                 (1)   **$880,885.01**

2.  **Interest due**

| Interest rate | From | To | Amount |
|---|---|---|---|
| 4.226% | 12/01/2011 | 12/31/2011 | $3,102.18 |
| 4.168% | 01/01/2012 | 01/31/2012 | $3,059.61 |
| 4.151% | 02/01/2012 | 02/29/2012 | $3,047.13 |
| 4.171% | 03/01/2012 | 03/31/2012 | $3,061.81 |
| 4.174% | 04/01/2012 | 04/30/2012 | $3,064.01 |
| 4.156% | 05/01/2012 | 05/31/2012 | $3,050.80 |
| 4.113% | 06/01/2012 | 06/30/2012 | $3,019.23 |
| 4.090% | 07/01/2012 | 07/31/2012 | $3,002.35 |
| 4.068% | 08/01/2012 | 08/31/2012 | $2,986.20 |
| 4.066% | 09/01/2012 | 09/30/2012 | $2,984.73 |
| 4.044% | 10/01/2012 | 10/31/2012 | $2,968.58 |
| 4.019% | 11/01/2012 | 11/30/2012 | $2,950.23 |
| 3.988% | 12/01/2012 | 12/31/2012 | $2,927.47 |
| 3.961% | 01/01/2013 | 01/31/2013 | $2,907.65 |
| 3.950% | 02/01/2013 | 02/28/2013 | $2,899.58 |
| 4.021% | 03/01/2013 | 03/31/2013 | $2,951.70 |
| 3.912% | 04/01/2013 | 04/30/2013 | $2,871.69 |
| 3.949% | 05/01/2013 | 05/31/2013 | $2,898.85 |
| 3.917% | 06/01/2013 | 06/30/2013 | $2,875.36 |
| 3.920% | 07/01/2013 | 07/31/2013 | $2,877.56 |
| 3.901% | 08/01/2013 | 08/31/2013 | $2,863.61 |
| 3.904% | 09/01/2013 | 10/31/2013 | $5,731.62 |
| 3.906% | 11/01/2013 | 11/30/2013 | $2,867.28 |
| 3.907% | 12/01/2013 | 12/31/2013 | $2,868.01 |
| 3.913% | 01/01/2014 | 01/31/2014 | $2,872.42 |
| 3.733% | 02/01/2014 | 02/28/2014 | $2,740.29 |
| 3.734% | 03/01/2014 | 03/31/2014 | $2,741.02 |
| 3.718% | 04/01/2014 | 04/30/2014 | $2,729.28 |
| 3.659% | 05/01/2014 | 05/19/2014 | $1,677.81 |

Total interest due as of the petition date **$86,598.06**       Copy total here  >   (2)   **+ $86,598.06**

3.  **Total principal and interest due**                                                    (3)   **$967,483.07**

## Part 2: Statement of Pre-Petition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | Amount |
|---|---|---|
| 1. Late Charges | 1 @ $288.89 incurred on 04/16/12<br>1 @ $288.89 incurred on 05/16/12<br>1 @ $288.89 incurred on 06/18/12 | (1)   $6,469.23 |

B6D (Official Form 6D) (12/07)
Chapter: 11
Judge: Julia W. Brand   Trustee: :

| | | | | |
|---|---|---|---|---|
| | | 1 @ $288.89 incurred on 09/17/12 | | |
| | | 1 @ $281.17 incurred on 11/16/12 | | |
| | | 1 @ $281.17 incurred on 12/17/12 | | |
| | | 1 @ $281.17 incurred on 01/16/13 | | |
| | | 1 @ $281.17 incurred on 02/19/13 | | |
| | | 1 @ $281.17 incurred on 03/18/13 | | |
| | | 1 @ $281.17 incurred on 04/16/13 | | |
| | | 1 @ $281.17 incurred on 05/16/13 | | |
| | | 1 @ $281.17 incurred on 06/17/13 | | |
| | | 1 @ $281.17 incurred on 07/16/13 | | |
| | | 1 @ $281.17 incurred on 08/16/13 | | |
| | | 1 @ $281.17 incurred on 09/16/13 | | |
| | | 1 @ $281.17 incurred on 10/16/13 | | |
| | | 1 @ $277.09 incurred on 11/18/13 | | |
| | | 1 @ $277.09 incurred on 12/16/13 | | |
| | | 1 @ $277.09 incurred on 01/16/14 | | |
| | | 1 @ $277.09 incurred on 02/18/14 | | |
| | | 1 @ $277.09 incurred on 03/17/14 | | |
| | | 1 @ $277.09 incurred on 04/16/14 | | |
| | | 1 @ $277.09 incurred on 05/16/14 | | |
| 2. | Non-sufficient funds (NSF) fees | | (2) | |
| 3. | Attorney fees | 1 @ $195.00 incurred on 08/02/12 | (3) | $585.00 |
| | | 1 @ $195.00 incurred on 12/12/13 | | |
| | | 1 @ $195.00 incurred on 02/26/14 | | |
| 4. | Filing fees and court costs | | (4) | |
| 5. | Advertisement costs | 1 @ $1,148.17 incurred on 02/26/14 | (5) | $1,148.17 |
| 6. | Sheriff/auctioneer fees | | (6) | |
| 7. | Title costs | 1 @ $1,079.00 incurred on 12/12/13 | (7) | $1,079.00 |
| 8. | Recording fees | 1 @ $18.00 incurred on 12/12/13 | (8) | $70.00 |
| | | 1 @ $24.00 incurred on 12/12/13 | | |
| | | 1 @ $28.00 incurred on 02/26/14 | | |
| 9. | Appraisal/broker's price opinion fees | 1 @ $145.00 incurred on 07/12/12 | (9) | $580.00 |
| | | 1 @ $145.00 incurred on 01/07/13 | | |
| | | 1 @ $145.00 incurred on 07/05/14 | | |
| | | 1 @ $145.00 incurred on 05/21/14 | | |
| 10. | Property inspection fees | 1 @ $11.00 incurred on 09/30/11 | (10) | $253.00 |
| | | 1 @ $11.00 incurred on 10/27/11 | | |
| | | 1 @ $11.00 incurred on 11/28/11 | | |
| | | 1 @ $11.00 incurred on 12/28/11 | | |
| | | 1 @ $11.00 incurred on 01/31/12 | | |
| | | 1 @ $11.00 incurred on 03/02/12 | | |
| | | 1 @ $11.00 incurred on 04/30/12 | | |
| | | 1 @ $11.00 incurred on 05/30/12 | | |
| | | 1 @ $11.00 incurred on 01/04/13 | | |
| | | 1 @ $11.00 incurred on 02/01/13 | | |
| | | 1 @ $11.00 incurred on 03/04/13 | | |
| | | 1 @ $11.00 incurred on 04/02/13 | | |
| | | 1 @ $11.00 incurred on 05/06/13 | | |
| | | 1 @ $11.00 incurred on 06/11/13 | | |
| | | 1 @ $11.00 incurred on 07/31/13 | | |
| | | 1 @ $11.00 incurred on 08/16/13 | | |
| | | 1 @ $11.00 incurred on 10/09/13 | | |
| | | 1 @ $11.00 incurred on 11/04/13 | | |
| | | 1 @ $11.00 incurred on 12/03/13 | | |
| | | 1 @ $11.00 incurred on 01/02/14 | | |
| | | 1 @ $11.00 incurred on 03/18/14 | | |
| | | 1 @ $11.00 incurred on 05/07/14 | | |
| | | 1 @ $11.00 incurred on 06/19/14 | | |
| 11. | Tax advances (non-escrow) | | (11) | |
| 12. | Insurance advances (non-escrow) | | (12) | |
| 13. | Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $10,490.02 |
| 14. | Property preservation expenses. Specify: | | (14) | |
| 15. | Other. Specify: | Specify: Certified Mail Costs  1 @ $525.00 incurred on 12/12/13 | (15) | $1,455.00 |
| | | Specify: Certified Mail Costs  1 @ $570.00 incurred on 02/26/14 | | |
| | | Specify: Certified Mail Costs  1 @ $120.00 incurred on 04/21/14 | | |
| | | Specify: Certified Mail Costs  1 @ $240.00 incurred on 05/19/14 | | |
| 16. | Other. Specify: | | (16) | |
| 17. | Other. Specify: | | (17) | |
| 18. | **Total prepetition fees, expenses, and charges.** Add all of the amounts listed above. | | (18) | $22,129.42 |

## Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No

☒ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the **petition** date in a form consistent with applicable nonbankruptcy law.

| | | | | | |
|---|---|---|---|---|---|
| 1. | **Installment payments due** | Date last payment received by creditor | | 03/13/2012 | |
| | | Number of installment payments due: | (1) | 29 | |
| 2. | **Amount of installment payments due** | | | | |

| | | |
|---|---|---|
| January 2012 to October 2012 | 10 installments @ $5,443.00 = | $54,430.00 |
| November 2012 to May 2013 | 7 installments @ $5,314.21 = | $37,199.47 |
| June 2013 to October 2013 | 5 installments @ $5,330.18 = | $26,650.90 |
| November 2013 to May 2014 | 7 installments @ $5,262.32 = | $36,836.24 |

| | | | | |
|---|---|---|---|---|
| | **Total installment payments due as of the prepetition date** | $155,116.61 | Copy total here   > (2) | $155,116.61 |
| 3. **Calculation of cure amount** | **Add** total prepetition fees, expenses, and charges | | Copy total here from Part 2   > | + $22,129.42 |
| | **Subtract** total of unapplied funds (funds received but not credited to account) | | | $0.00 |
| | **Subtract** amounts for which debtor is entitled to a refund | | | _____ |
| | **Total amount necessary to cure default as of the petition date** | | (3) | **$177,246.03** |

Copy total onto Item 4 of Proof of Claim form

Your monthly payment amount may change due to an escrow requirement and/or interest rate adjustment.
Your current payment amount and any upcoming changes are provided below.

| Effective Date | Effective Amount |
|---|---|
| 06/01/2014 | $5,276.01 |

## Additional Amounts included in "Amount of Claim as of Date Case Filed" in Item 1 on B10 (Official Form 10)

| | |
|---|---|
| Escrow Advance | $26,265.75 |

## SPECIAL NOTICE

## THE FOLLOWING NOTICE IS GIVEN TO YOU IN THE EVENT THAT THE FEDERAL FAIR DEBT COLLECTIONS ACT APPLIES TO THIS COMMUNICATION.

The following statement provides you with notice of certain rights which you may have by law.  Nothing in this statement modifies or changes the hearing date or response time specified in the attached documents or your need to take legal action to protect your rights in this matter.  No provision of the following statement modifies or removes your need to comply with local rules concerning the attached documents.

## CONSUMER DISCLOSURE

This communication is made in an attempt to collect on a debt or judgment and any information obtained will be used for that purpose.  Please be advised that if you notify Prober and Raphael, ALC within 30 days that all or a part of your obligation or judgment is disputed, then Prober and Raphael, ALC will mail you a written verification of the obligations or judgment and the amounts owed to OneWest Bank, FSB.  In addition and upon your request within 30 days, you will be provided with the name and address of the original creditor, if different from the current creditor.

**IndyMac Mortgage Services.**
6900 Beatrice Drive • Kalamazoo, MI 49009

ESCROW ACCOUNT
DISCLOSURE STATEMENT

DATE: May 29, 2014
LOAN NUMBER:

For statement questions,
Please call Customer Service at
1.800.781.7399

Visit our website at:
www.owb.com

/FQ

CHRISTOPHER R SMITH
10155 TOLUCA LAKE AVENUE
TOLUCA LAKE CA 91602

## YOUR MONTHLY MORTGAGE PAYMENT MAY BE CHANGING - THIS NOTICE WILL HELP YOU UNDERSTAND WHY

As you know, we maintain an escrow account for your mortgage which is used to pay such items as
property taxes, insurance premiums, or mortgage insurance. The escrow account must be reviewed at
least annually to determine whether enough funds are being collected each month, and whether the account
has a shortage or surplus. This notice provides all of the information required by federal regulations
to help you understand how IndyMac Mortgage Services calculates your monthly escrow payment and
determines the proper account balance required. Please take a few minutes to read this notice
carefully. It has been provided to answer most of your questions.

### PART 1 - WHAT ESCROW AMOUNTS CAN I EXPECT INDYMAC MORTGAGE SERVICES TO PAY IN THE COMING 12 MONTHS?

We expect to disburse money from your escrow account to pay certain escrow bills as they are due. We
anticipate paying these amounts for the next 12 months to help us determine how much money is needed
in your escrow account. The following are our estimates:

COUNTY TAX $7,893.26

The total amount of all of these estimated escrow payments is $7,893.26. Your normal escrow
payment must be one-twelfth of the total annual amount. The monthly escrow payment for your mortgage is
$657.77 based on this information.

### PART 2 - WHAT IS MY NEW MORTGAGE PAYMENT AMOUNT?

Your total monthly mortgage payment includes the monthly escrow payment. It also includes the monthly
amount for repayment of your loan (principal and interest) and other amounts, for services you have
requested. The following is a breakdown of the new monthly mortgage payment amount:

| | | |
|---|---|---|
| Loan Payment (principal and interest): | $4,618.24 | (this is determined from your Loan Note) |
| Escrow Payment (tax and insurance): | $657.77 | (see Part 1 for explanation) |
| Escrow Shortage/Surplus: | $0.00 | (see Part 3 for explanation) |
| Optional Services: | $0.00 | (for customers selecting optional services) |
| Miscellaneous: | $0.00 | |
| Less: Buydown/Assistance Payment: | $0.00 | |
| TOTAL NEW MORTGAGE PAYMENT IS | $5,276.01 | BEGINNING ON June 01, 2014. |

Note: Your monthly payment may also change in the future if you have an adjustable rate mortgage,
buydown/assistance subsidies, select optional services or you have a surplus less than $50.00.

### PART 3 - WHY IS THERE A SHORTAGE OR SURPLUS IN MY ESCROW ACCOUNT?

We anticipate that your escrow balance will be $7,858.92- at the end of May. We require that
your escrow balance be $2,631.10 at that time.

If your escrow account started with the required beginning balance, then the account would reach a
low point (or minimum balance) at some point in the next 12 months of $1,315.54. This low point
or minimum balance cannot be more than is allowable under federal regulations, under your state's laws/
regulations, or by the specific terms of your mortgage contract. Information on the reverse side will
help you understand how much money we need in the escrow account and how it is used.

*** CONTINUED ON REVERSE SIDE ***

**IndyMac Mortgage Services.**
a division of OneWest Bank, FSB
6900 Beatrice Drive • Kalamazoo, MI 49009

CHRISTOPHER R SMITH
10155 TOLUCA LAKE AVENUE
TOLUCA LAKE CA 91602

S U R P L U S

LOAN NUMBER:

SURPLUS AMOUNT: $.00

**PART 4: SUMMARY OF YOUR PROJECTED ESCROW ACCOUNT FOR THE NEXT 12 MONTHS.**

To see why we must start with the required beginning balance, please review the following projection which shows the: estimated monthly deposits to escrow, estimated disbursements from escrow, and monthly ending account balances. The escrow account should start with the required beginning balance for the 12 month period covering 06/14 thru 05/15.

| Description | Month | Anticipated Amount To Escrow | Anticipated Amount From Escrow | Projected Escrow Balance at End of Month | Balance Required at End of Month |
|---|---|---|---|---|---|
| | Beginning: | | | $7,858.92 - | $2,631.10 |
| | June | 657.77 | .00 | 7,201.15 - | 3,288.87 |
| | July | 657.77 | .00 | 6,543.38 - | 3,946.64 |
| | August | 657.77 | .00 | 5,885.61 - | 4,604.41 |
| | September | 657.77 | .00 | 5,227.84 - | 5,262.18 |
| | October | 657.77 | .00 | 4,570.07 - | 5,919.95 |
| COUNTY TAX | November | 657.77 | 3,946.63 | 7,858.93 - | 2,631.09 |
| | December | 657.77 | .00 | 7,201.16 - | 3,288.86 |
| | January | 657.77 | .00 | 6,543.39 - | 3,946.63 |
| | February | 657.77 | .00 | 5,885.62 - | 4,604.40 |
| COUNTY TAX | March | 657.77 | 3,946.63 | 9,174.48 - | 1,315.64 |
| | April | 657.77 | .00 | 8,516.71 - | 1,973.31 |
| | May | 657.77 | .00 | 7,858.94 - | 2,631.08 |
| | Totals: | 7,893.24 | 7,893.26 | | |

**PART 5: SUMMARY OF YOUR ESCROW ACCOUNT SINCE THE LAST TIME YOU RECEIVED AN ESCROW STATEMENT WITH A 12 MONTH PROJECTION.**

The last 12-month projection you received included estimates of escrow deposits and escrow disbursements for taxes and/or insurance. Your last year's payment was $5,443.00, of which $4,814.89 was applied to principal and interest and $628.11 was applied to your escrow account. The following information provides a summary of what we estimated would happen compared to what actually happened in your escrow account.

| Activity Description | Month | PROJECTED Deposits | PROJECTED Disbursements | PROJECTED Balance | ACTUAL Deposits | ACTUAL Disbursements | ACTUAL Balance |
|---|---|---|---|---|---|---|---|
| | June | 644.08 | .00 | 3,220.34 | .00 * | .00 | 18,372.47- |
| | July | 644.08 | .00 | 3,864.42 | .00 * | .00 | 18,372.47- |
| | August | 644.08 | .00 | 4,508.50 | .00 * | .00 | 18,372.47- |
| | September | 644.08 | .00 | 5,152.58 | .00 * | .00 | 18,372.47- |
| HAZ INS | October | 644.08 | .00 | 5,796.66 | .00 * | 3,604.00 * | 21,976.47- |
| COUNTY TAX | November | 644.08 | 3,864.45 | 2,576.29 | .00 * | 3,946.65 * | 25,923.12- |
| | December | 644.08 | .00 | 3,220.37 | .00 * | .00 | 25,923.12- |
| | January | 644.08 | .00 | 3,864.45 | .00 * | .00 | 25,923.12- |
| | February | 644.08 | .00 | 4,508.53 | 3,604.00 * | .00 | 22,319.12- |
| COUNTY TAX | March | 644.08 | 3,864.45 | 1,288.16 | .00 * | 3,946.63 * | 26,265.75- |
| | April | 644.08 | .00 | 1,932.24 | .00 * | .00 | 26,265.75- |
| | May | 644.08 | .00 | 2,576.32 | 18,406.83 E | .00 E | 7,858.92- |
| | Totals: | 7,728.96 | 7,728.90 | | 22,010.83 | 11,497.28 | |

The above shows the projection from the last escrow statement and what actually happened in the escrow account. You can compare these amounts to see the differences. For example, if actual bills were paid in a month different than we estimated, the ending monthly balance may have been different than what was projected. If actual bills paid were in an amount different than we estimated, the ending monthly balance may have been different than what was projected.

There are asterisks ( * ) above for any item which was either paid in a different month or in a different amount than the original estimates. An "E" indicates a projected deposit that has not yet been received or a projected payment we estimate will be paid as shown.

The history information may be incomplete if this is the first escrow analysis since IndyMac Mortgage Services began servicing your loan.

If we paid out more than we estimated, the escrow balance may have a shortage. If we paid out less than we estimated, the escrow balance may have a surplus. The amount of a shortage or surplus is explained in Part 3.

*Need To Reach Us?*

**Visit our website at:**
**www.owb.com**

**Automated Information:**
**1-800-781-7399**

**Contact us through our website:**
Use our secured messaging service online through your My Mortgage account at www.owb.com

**Customer Service:**
**1-800-781-7399**
8:00 am - 9:00 pm EST, Monday - Friday

**Correspondence Address:**
IndyMac Mortgage Services
a division of OneWest Bank, FSB
PO Box 4045
Kalamazoo, MI 49003-4045

**Overnight Address:**
IndyMac Mortgage Services
a division of OneWest Bank, FSB
6900 Beatrice Drive
Kalamazoo, MI 49009

**Fax Numbers:**
| | |
|---|---|
| Insurance Dept. | 269-353-2434 |
| Tax Dept. | 269-353-2485 |
| Payoff Dept. | 269-353-2437 |
| All Other Faxes | 269-353-2432 |

REDACTED

**This page is part of your document - DO NOT DISCARD**

### 06 2014919

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA**
### 09/11/06 AT 08:00am

## TITLE(S) :



L E A D    S H E E T

| FEE | FEE $ | | D.T.T. |
|-----|-------|--|--------|
| | DAF $ | | |
| | C-20 | | |

CODE
20

CODE
19

CODE
9____

NOTIFICATION SENT $4

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**




**THIS FORM IS NOT TO BE DUPLICATED**

WHEN RECORDED MAIL TO:

**FIRST FEDERAL BANK OF CALIFORNIA**
401 Wilshire Boulevard / LOAN SERVICE
Santa Monica, California 90401

**06   2014919**

Loan No. REDACTED
Title Order No. REDACTED

# _REDACTED

[ ] CONSTRUCTION  [XX]  NON-CONSTRUCTION
**Deed of Trust and Assignment of Rents**
**ADJUSTABLE INTEREST RATE LOAN**

**THE NOTE SECURED BY THIS DEED OF TRUST PROVIDES FOR CHANGES IN THE INTEREST RATE AND MONTHLY PAYMENTS AND MAY PROVIDE FOR THE ADDITION OF UNPAID INTEREST TO PRINCIPAL (NEGATIVE AMORTIZATION). SEE THE NOTE DESCRIBED BELOW FOR FULL DESCRIPTION OF LOAN TERMS.**

THIS DEED OF TRUST IS MADE ON            **August 31, 2006**                    The trustor is

**Christopher R. Smith, a married man as his sole and separate property**

("Borrower"). The trustee is SEASIDE FINANCIAL CORPORATION ("Trustee"). The beneficiary is FIRST FEDERAL BANK OF CALIFORNIA, a federally chartered savings bank and whose address is 401 Wilshire Boulevard, Santa Monica, California 90401 ("Lender", "Note Holder" or" Beneficiary").

Borrower owes Lender the principal sum of
**EIGHT HUNDRED EIGHTY-EIGHT THOUSAND SEVEN HUNDRED EIGHTY AND 00/100**

**Dollars (U.S.  $ 888,780.00).**

This debt is evidenced by Borrower's note dated the same date as this Deed of Trust ("Note") which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **10/01/2036**. This Deed of Trust secures to Lender: (a) the repayment of the debt evidenced by the Note with interest and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Deed of Trust; (c) the performance of Borrower's covenants and agreements under this Deed of Trust and the Note; (d) the performance, if the loan secured by this Deed of Trust is a construction loan, of Borrower's covenants and agreements contained in a construction or building loan or similar agreement; (e) the performance, if the security property is subject to a lease, of the terms and conditions of any such lease; (f) compliance with the terms of any Declaration of Covenants, Conditions and Restrictions or similar instruments pertaining to the security property: (g) the performance of any agreement of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and (h) the payment of charges allowed by law for any statement regarding the obligation secured by this Deed of Trust.

For this purpose and otherwise for valuable consideration, Borrower irrevocably grants, transfers, assigns and conveys to Trustee, in trust with power of sale, in the case of a lease, the leasehold estate in and to the property described below, and the following described property located in **Los Angeles** County, California:

**AS PER LEGAL DESCRIPTION MARKED EXHIBIT 'A' ATTACHED HERETO AND MADE A PART HEREOF, CONSISTING OF 1 PAGE**

**2485-019-008**

Which has the address of    **4130 - 4132 1/2 Toluca Lake Avenue, Burbank, CA 91505**

("Property Address")

**FUTURE TAX STATEMENTS MAY BE MAILED TO BORROWER AT THE ADDRESS SHOWN ABOVE**

REDACTED

ETHER WITH all the improvements now or hereafter erected on the property and all present and future easements, rights, rights
ay, appurtenances, rents, royalties, leases, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or
after made a part of the property. The following items are added to the Property description, and shall also constitute the Property
ered by this Deed of Trust: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or
d, or intended to be used in connection with the Property, including, but no limited to, those for the purposes of supplying or
ributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access
trol apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals,
ishers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets,
neling and attached floor coverings now or hereafter attached to the Property. All replacements and additions are also covered by
is Deed of Trust. Borrower agrees to execute and deliver, if requested by Lender, any further instruments necessary to confirm the
en of this Deed of Trust on any equipment. All of the foregoing is referred to in this Deed of Trust as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant, convey and
assign the Property (and, if this Deed of Trust is on a leasehold, that the ground lease is in full force and effect without default on the
part of either lessor or lessee thereunder), that the Property is unencumbered, except for encumbrances of record, and that Borrower
will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions
listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, BORROWER AGREES AS FOLLOWS:

(1) **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest on the
indebtedness evidenced by the Note, any other charges provided in the Note and all other sums secured by this Deed of Trust.

(2) **Construction of Improvements.** Borrower will complete in a good and workmanlike manner any building or improvement
or repair which may be begun on the Property, pay any costs incurred when due, and not permit any mechanic's lien against the
Property nor any stop notice against loan proceeds.

(3) **Preservation and Maintenance of Property; Nuisance; Duty to Protect; Leaseholds.** Borrower shall not destroy,
damage, or substantially change the Property, allow the Property to deteriorate, or abandon the Property. Borrower shall not cause,
conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the
Property. Specifically without limitation, Borrower will not remove, or grant to any other party the right to remove, any timber, minerals
(including oil and gas), soil, gravel or rock products without the prior written consent of Lender. Borrower agrees neither to abandon
nor leave unattended the Property. Borrower shall do all other acts, in addition to those acts set forth above in this section, which from
the character and use of the Property are reasonably necessary to protect and preserve the Property. If this Deed of Trust is on a
leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and
fee title shall not merge unless Lender agrees to the merger in writing.

(4) **Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured at all times
against loss by fire, hazards included within the term 'extended coverage' and any other hazards for which Lender (and, if this Deed of
Trust is on a leasehold, the ground lease) requires insurance. This insurance shall be maintained in the amounts and for the periods
that Lender requires, with loss payable to Lender. The insurance carrier providing the insurance shall be chosen by Borrower subject
to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be subject to the approval of Lender and shall include a standard mortgage clause in
favor of and in form acceptable to Lender, whether or not such insurance was required by Lender. All insurance procured by or for the
benefit of Borrower pertaining to the Property, whether such insurance is required by Lender or not, shall name Lender as the loss
payee. Lender shall have the right to hold all policies and renewals. Borrower shall promptly give to Lender all receipts of paid
premiums and renewal notices. In the event that Borrower obtains any new insurance policy or coverage pertaining to the Property,
Borrower shall promptly notify Lender and promptly provide copies of said items. In the event of loss, Borrower shall give prompt
notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

At least 30 days prior to the expiration of any insurance policy, Borrower shall obtain and deliver to Lender written evidence of
the payment of the renewal premium. If Borrower does not deliver such evidence to Lender or if the insurance is terminated, Lender is
specifically requested by Borrower to obtain insurance and include the cost as an amount due pursuant to the Note. Lender is not
obligated to obtain the insurance, but if it does so, it may obtain the insurance from any insurance agency or company acceptable to it.
If the Lender does obtain such insurance, the Borrower shall reimburse all sums advanced together with interest thereon at the rate of
interest due according to the Note, with such reimbursement all due and payable with the next scheduled monthly payment due on the
Note. The Borrower is hereby made aware of the fact that any substitute or replacement insurance procured by the Lender will likely
cost much more than the insurance which could be procured by the Borrower.

Unless Lender and Borrower otherwise agree in writing, all insurance proceeds (whether or not the policy or provision was
required by Lender) shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically
feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be
lessened, the insurance proceeds shall be applied to the sum secured by this Deed of Trust, whether or not then due, with any excess
paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance
carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or
restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when the
notice is given.

If under paragraph 14 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resultin
from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trus
immediately prior to the acquisition. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to princip:
shall not extend or postpone the due date of the Borrower's monthly payments or change the amount of the payments.

06  2014919

(5) **Life, Health, or Accident Insurance.** If Borrower maintains life, accident or health insurance and Lender is the owner or holder of any policy of such insurance as further security hereunder. Lender may elect to pay any premiums if Borrower does not make the payment, and any amount so paid shall be secured hereby.

(6) **Taxes and Other Sums Due; Liens.** Borrower shall timely pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 7, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

If Borrower fails to make any such payment, Lender, without contesting the validity or amount, may make the payment together with any related costs, expenses, fees, or charges, and thereafter enforce all rights relating to said payment as provided to Lender by this Deed of Trust or by law. Borrower agrees to notify Lender and appropriate taxing authorities immediately upon the happening of any event which does or may effect the value of the Property, the amount or basis of the Property, or the availability of any exemption to which Borrower may be entitled, if any law is passed deducting from the value of real property for tax purposes any lien thereon, or changing in any way the laws for the taxation of deeds of trust or debts secured by deed of trust for state or local purposes, or the manner of the collection of any such taxes, including, but not limited to, the postponement of the payment of all or any part of any real or personal property taxes, which would affect this Deed of Trust, the holder of this Deed of Trust and the Note which it secures shall have the right to declare the principal sum and the interest due; provided, however, that such election shall be ineffective if Borrower is permitted by law to pay the whole of such tax in addition to all other payments required hereunder and if, prior to such specified date, does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall be a modification of this Deed of Trust. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Deed of Trust, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien within ten days of the giving of notice.

(7) **Impounds.** Subject to applicable law and if Lender so requests, Borrower shall pay to Lender on the day monthly payments are due under the Note until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Deed of Trust; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "Impounds". Lender may estimate the Funds due on the basis of current data and reasonable estimates of future impounds.

The Funds may be intermingled with other monies of Lender, and shall not bear interest except as required by law. If Lender requires Impounds due to Borrower's failure to timely make payments pursuant to paragraph 5, Borrower acknowledges and agrees that no interest shall be paid by Lender on such Funds. Lender shall apply the Funds to pay the Impounds. Lender shall give to Borrower all reports of Impounds as required by law. The Funds are hereby pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the Impounds, shall exceed the amount required to pay the Impounds when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments. If the amount of the Funds held by Lender is not sufficient to pay the Impounds when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender. Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 14 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

(8) **Assignment of Awards and Damages to Lender.** Borrower assigns to Lender all sums due, paid, or payable, (a) for injury to the Property; or (b) in connection with this loan transaction. Lender may, at its option, begin, intervene in, appear in or prosecute in its own name, any legal action, or make any compromise or settlement in connection therewith. If required by Lender, Borrower agrees to execute further assignments of any such compensation, award, damages, rights of action and proceeds.

(9) **Protection of Lender's Security.** If borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of funds and attorneys' fees, (ii) entry upon the Property to make repairs, (iii) procurement of satisfactory insurance as provided in paragraph 4 hereof, and (iv) if this Deed of Trust is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default by Borrower in the terms and conditions of the ground lease. Any amounts disbursed by Lender pursuant to this paragraph 9, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 9 shall require Lender to incur any expense or take any action hereunder.

(10) **Condemnation.** The proceeds of any award or claim for damages, direct or indirect, in connection with any condemnation action or proceeding, or for conveyance in lieu of condemnation are hereby assigned and shall be paid to Lender, subject, if this Deed of Trust. Said application shall not cure or waive any default or notice of default nor invalidate any act done because of such notice, nor shall said application change the due date or amount of the monthly payments due on the Note secured by this Deed of Trust.

(11) **Failure of Borrower to Comply with Deed of Trust.** If Borrower fails to make any payment or do any act provided in this Deed of Trust, Borrower will be in default.

(12) **Sums Advanced To Bear Interest.** Any sums advanced by Lender under this Deed of Trust will be secured hereby and will bear interest from the date advanced at the same rate as the debt secured by this Deed of Trust.

(13) **Application of Payments.** Subject to the terms of the Note, Lender has the right to determine how payments received will be allocated among the various items which make up Borrower's obligations to Lender.

Page 3

**06 2014919**

(14) **Acceleration Clause; Right to Declare Sums Due.** Irrespective of the maturity date specified in any note or agreement pertaining to any indebtedness secured hereby, Lender shall have the right, at its option, to declare an indebtedness and obligations secured hereby immediately due and payable upon such declaration if: (a) Borrower is in default; or (b) Borrower or any successor in interest to Borrower of such Property sells, enters into a contract of sale, conveys or alienates such Property or any part thereof, or suffers his title or any interest to be divested, whether voluntarily or involuntarily or leases such Property or any part thereof for a term of more than 3 years, or changes or permits to be changed the character or use of the Property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such Property; or (c) Borrower is a partnership and the interest of a general partner is assigned, transferred, or inherited; or (d) Borrower is a corporation and more than 25% of the corporate stock thereof is sold, transferred or assigned during a 12 month period; or (e) Borrower is a trust and there is a change of beneficial interest with respect to more than 25% of such property; or (f) Borrower has made any material misrepresentation or failed to disclose any material fact in those certain financial and other written representations and disclosures made by Borrower in order to induce Lender to enter into the transaction evidenced by the Promissory Note or notes or agreements which this Deed of Trust secures, or (g) the insolvency of Borrower, appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower, or the dissolution or termination of Borrower's existence as a good business (if Borrower is a business), or (h) any breach by Borrower under the terms of any other agreement between Borrower and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower to Lender, whether existing now or later, or (i) Lender deems itself to be financially insecure as to this transaction.

(15) **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

(16) **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** This Deed of Trust shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 14. Borrower's covenants and agreements shall be joint and several. Any person who co-signs this Deed of Trust but does not execute the Note: (a) is co-signing this Deed of Trust only to mortgage, grant and convey that person's interest in the Property under the terms of this Deed of Trust; (b) is not personally obligated to pay the sums secured by this Deed of Trust; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note without that person's consent.

(17) **Legislation or Regulation Affecting Lender's Rights.** If enactment or expiration of applicable laws or regulations has the effect of rendering any provision of the Note or this Deed of Trust unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted herein. If Lender exercises this option, Lender shall take the steps specified in paragraph 24.

(18) **Governing Law; Severability.** The Note and this Deed of Trust shall be governed by the laws, rules and regulations of the United States including, without limitation, the laws, rules and regulations relating to federally chartered savings banks, provided, however, that, to the extent that the Note and this Deed of Trust shall be deemed to be governed by state law, the Note and this Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Note are declared to be severable.

(19) **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Deed of Trust.

(20) **Right to Collect Rents and Profits/Assignment of Leases.** If Borrower is in default hereunder, Lender (in person, by agent, or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the property, and to collect the rents of the Property (including but not limited to those past due). Any rents collected by Lender or the receiver shall be applied first to costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph the word "lease" shall mean "sublease" if the Deed of Trust is on a leasehold.

(21) **Remedies.** No remedy provided by this Deed of Trust is exclusive of any other remedy allowed by law or any other writing. Instead, to the extent permitted by law, all remedies available to Lender by contract or law shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy. Without limitation, Lender reserves the right to judicially foreclose upon the Property and obtain a judgment against Borrower for any unpaid deficiency, where permitted by law.

(22) **Power of Trustee.** At Lender's request, Trustee may: (1) release any debt; (2) extend the time or alter other terms of payment of such debt; (3) accept additional security; (4) substitute or release any security property: (5) recover all or part of any security property; (6) consent to the making of any map or plat; (7) join in granting any easement on the Property; or (8) join in any extension or subordination agreement. Any such act by Trustee will not affect Borrower's liability for the payment of the debt secured by this Deed of Trust, nor will it affect the lien of this Deed of Trust on the remainder of the Property for the full amount of Borrower's debt to Lender.

(23) **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it, and may charge such fees for each full or partial reconveyance of this Deed of Trust then customarily charged for such services.

06 2014919

REDACTED

Page 4

(24) **Default; Acceleration; Trustee's Sale upon Default.** For purposes of paragraph 14 and this paragraph 24, a "default" by Borrower shall mean a failure by Borrower to pay any monthly installment under the Note when due, or otherwise perform any obligation required by the Note, or a breach or default by Borrower of any of the provisions of the Deed of Trust, or a breach or default by Borrower under any other Deed of Trust, or other instrument secured by the property described in the Deed of Trust. Pursuant to paragraph 14 and this paragraph 24, in the event of a default by Borrower the entire principal amount outstanding under the Note and Deed of Trust and accrued interest thereon and late charges and other costs shall at once become due and payable at the option of the Note Holder without prior notice and regardless of any prior forbearings. Upon such a default by Borrower, Lender at its option may deliver to Trustee a written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and of election to cause to be sold the Property described in the Deed of Trust. Lender shall also deposit with the Trustee the Deed of Trust and any notes and all documents evidencing expenditures secured thereby. If Lender invokes the power of sale and after the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, without demand on Borrower, Trustee may sell such Property at the time and place filed by such Trustee and such notice of sale, either as a whole or in separate parcels, and in such order as the Trustee shall determine (subject to such rights as Borrower may have at law to direct such order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of such property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof. Any person, including Borrower, Trustee or Lender, may purchase at such sale. After deducting all costs, fees and expenses of Trustee, and of this Deed of Trust, including costs of evidence of title in connection with such sale, Trustee first shall apply the proceeds of sale to payment of all sums expended under the Deed of Trust, not then repaid, with accrued interest at the rate then payable under the Note or notes secured thereby, and then to payment of all other sums secured thereby and, if thereafter there be any proceeds remaining, shall distribute them to the person or persons legally entitled thereto.

(25) **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the instrument number and recording date where this Deed of Trust is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law.

(26) **Waiver of Statute of Limitations.** Time is of the essence in all of Borrower's obligations. To the extent permitted by law, Borrower waives all present or future statutes of limitations with respect to any debt, demand or obligation secured by this Deed of Trust, in any action to enforce this Deed of Trust.

(27) **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. The right of inspection shall include, but is not necessarily limited to, the right to conduct tests upon and take samples of the soil, the air, and all other chemicals contained on the Property, within the subsurface of the Property, and in the air located upon the Property. If the Property is used for commercial or residential income purposes, at Lender's request Borrower shall deliver to Lender certified copies of all business records, a certified statement of gross and net annual income received from the Property during Borrower's previous fiscal year in such form and detail as Lender shall require, and any other financial statements or records relating to the Property.

(28) **Offsets.** No indebtedness secured by this Deed of Trust shall be deemed to have been offset or to be offset or compensated by all or part of any claim, cause of action, counterclaim or crossclaim, whether liquidated or unliquidated, which Borrower now or hereafter may have or may claim to have against Lender; and, in respect to the indebtedness now or hereafter secured hereby, Borrower waives, to the fullest extent permitted by law, the benefits of California Code of Civil Procedure Section 431.70 (and any successor laws), which Section provides:

> "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in his answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a 'demand for money' and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred with Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9."

(29) **Misrepresentation or Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which the Deed of Trust secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice, shall have the right to declare the indebtedness secured by the Deed of Trust, irrespective of the maturity date specified in the Note or notes, immediately due and payable. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon hereunder.

(30) **Statement of Obligation.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

(31) **Notices.** Any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing it by first class mail, unless another method is required by law. The notice shall be sent to the Property address unless Borrower designates by notice a different address. Any notice to Lender must be given by first class mail to Lender's address stated above unless Lender designates a different address. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph, provided customary time for mail delivery shall have passed before such presumption is effective.

06 2014919

REDACTED



(32) **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

(33) **Modification.** This Deed of Trust can only be modified in writing and signed by Borrower and Lender.

(34) **Loan Charges.** If a law, which applies to the loan secured by this Deed of Trust and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with such loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit.

(35) **Attorneys' Fees.** Borrower agrees to pay the following costs, expenses and attorney's fees paid or incurred by Note Holder: (1) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in connection with the collection, enforcement or interpretation of the Note or this Deed of Trust, whether or not suit is filed; (2) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in workout negotiations or modifications; and (3) costs of suit and attorneys; fees in such sum as the court may adjudge in any action to enforce payment of this Deed of Trust or any part of it.

(36) **Security Agreement; Financing Statements.** The following provisions relating to this Deed of Trust as a security agreement are hereby made a part of this Deed of Trust:
Security Agreement. This instrument shall constitute a security agreement to the extent any of the Property (a) constitutes fixtures; or (b) personal property of Borrower is located upon the Property, and such personal property is used to operate or maintain the Property. Lender shall have all of the rights of a secured party as to said items under the Uniform Commercial Code as amended from time to time.
Security Interest. Upon request by Lender, Borrower shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the rents, fixtures and personal property. Borrower shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Borrower shall assemble the personal property in a manner and at a place reasonably convenient to Borrower and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.
Addresses. The mailing addresses of Borrower (debtor) and Lender (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Deed of Trust.

(37) **Hazardous Substances.** Borrower represents and warrants that, so long as this Deed of Trust remains a lien on the Property, the Property never has been, and never will be, used for the generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99.499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et. seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., the Clean Water Act, 33 U.S.C. Section 466 et. seq. the Safe Drinking Water Act, 17 U.S.C. Section 1401 et. seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601 Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 13000 and 25100, et. seq., and as subsequently amended, or other applicable state or Federal laws, rules or regulations. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Property for hazardous waste. Borrower hereby (a) releases and waives all claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify, defend and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to and/or during Borrower's ownership or interest in the Property, whether or not the same was or should have been known to Borrower. The provisions of this section of the Deed of Trust, including the obligations to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

(38) **Compliance With Laws.** Borrower warrants that the Property and Borrower's actual or intended use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

(39) **Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

(40) **Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

(41) **Assumptions.** During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a creditworthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower. This paragraph 41 shall be effective only if a substantially similar provision is contained in the Note secured by this Deed of Trust.

(42) **Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (I) a unit in, together with an undivided interest in the common elements of, a condominium project ('Condominium Project') or (ii) a parcel of land improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned unit development ("PUD"), Borrower and Lender further covenant and agree as follows:

**06  2014919**

REDACTED

(42) **Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (i) a unit together with an undivided interest in the common elements of, a condominium project ("Condominium Project") or (ii) a parcel of l improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned u development ("PUD"), Borrower and Lender further covenant and agree as follows.

(a) **Assessment and Obligations.** Borrower shall promptly pay, when due, all assessments imposed by the Own Association, Homeowners' Association, or other governing body of the Condominium Project or PUD ("Owners' Association Borrower shall perform all of Borrower's obligations under the provisions of the Declaration, Trust Instrument, Articles of Incorporation By-laws, Code of Regulations or other constituent document of the Condominium Project or PUD (the "Instrument").

(b) **Hazard Insurance.** In the case of a Condominium Project, so long as the Owners' Association maintains a "master" o "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term 'extended coverage' and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then: (1) Borrower's obligation under paragraph 4 hereof of maintain hazard insurance coverage on the Property is deemed satisfied; and (2) the provisions of paragraph 4 hereof regarding application of hazard insurance proceeds shall be superseded by any provision of the Instrument or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4 hereof. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect. Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage.

In the case of a Condominium Project or PUD, in the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss, in the case of a Condominium Project, to the Property, whether to the unit or to common elements, or, in the case of a PUD, to the common areas and facilities of the PUD, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower.

(c) **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

(d) **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the common areas and facilities, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sum secured by this Deed of Trust in the manner provided in paragraph 10 hereof.

(e) **Lender's Prior Consent.** Borrower shall not, except with notice to Lender and with Lender's prior written consent, consent to: (1) the abandonment or termination provided by law in the case of substantial disruption by fire or other casualty or in the case of a taking by condemnation or eminent domain; (2) any material amendment to the instrument of the Condominium Project or PUD, including, but not limited to, any amendment that would change the percentage interest of the unit owners in the common areas and facilities of the Condominium Project or PUD; (3) the effectuation of any decision by the Owners' Association to terminate professional management and assume self-management of the Condominium Project or PUD; (4) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners' Association unacceptable to Lenders; or (5) in the case of a PUD, the transfer, release, encumbrance, partition or subdivision of all or part of the PUD's common areas and facilities, except as to the Owners' Association's right to grant easements for utilities and similar or related purposes.

(43) **Construction Loan Provisions.** If all or any portion of the proceeds of the loan secured by this Deed of Trust are to be used for construction of improvements on the Property covered by the Deed of Trust, the following additional provisions shall apply unless otherwise specified in the Note: Borrower agrees: (1) to commence construction promptly and in any event within thirty (30) days from recordation of the Deed of Trust, and to complete the same in accordance with plans and specifications satisfactory to Lender and to comply with all the provisions of the building loan or similar agreement entered into with Lender; (2) to allow Lender to inspect the security property at all times during construction; (3) to replace any work or materials unsatisfactory to Lender within fifteen (15) calendar days, after notice from Lender of such fact, which notice may be given to Borrower by registered or certified mail, sent to Borrower's last known address, or by personal service of the same; (4) not to suffer or permit any cessation of work on the construction of such improvements for any reason whatsoever for a period of fifteen (15) calendar days, whether consecutive or not without the written consent of Lender; and (5) to promptly pay all claims for labor performed and materials furnished in connection with the said construction and not to permit any claims or lien for said work or material to be filed of record against the security property. If the security property is a part of a larger tract upon which improvements shall be constructed, Borrower shall make separate contracts and subcontracts for said construction which shall pertain to the security property only and shall keep separate, full and complete records of all work and materials furnished to such property. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive the facts and statements therein, and to act thereon hereunder.

(44) **Adjustable Rate Mortgage Provisions.** The Note secured by this Deed of Trust may contain provisions that permit: (i) increases and decreases to the rate of interest provided in the Note on a periodic basis, (ii) increases and decreases to the monthly payment of principal and interest on a periodic basis; (iii) limitations on increases in the rate of interest, and may contain provisions that permit; (iv) limitations on increases and decreases in the monthly payment of principal and interest on a periodic basis; and (v) additions of unpaid interest to the outstanding principal balance of the loan evidenced by the Note, with interest thereon. Reference is made to the Note for a complete description of the adjustable rate terms of the indebtedness secured by this Deed of Trust.

(45) Borrower shall not, without prior written consent of Lender, consent to or vote in favor of the establishment, approval or 'eation of, or incorporation of the Property into, any Community Facilities District, Mello Roos District, or any other district or ganization in which public improvements are financed via bonds or public funds, and repaid by the landowner. Borrower further rees to provide prompt written notice to Lender immediately upon receipt of any information which indicates that the Property is or y in the future be included in any Community Facilities District, Mello Roos District, or any other district or organization in which lic improvements are financed via bonds or public funds, and repaid by landowners.

REDACTED

06 2014919



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by Borrower and recorded with it.

**BORROWER(S):**

_____

Christopher R. Smith

06 2014919

*10*

## ACKNOWLEDGMENT

STATE OF California )
                       ) SS.
COUNTY OF Los Angeles )

On August 31st 2006, before me, Breanna M. LePante NOTARY PUBLIC,

personally appeared Christopher R. Smith

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Breanna M. LePante (Seal)

BREANNA M. LEPANTE
COMM. #1506370
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. AUG. 8, 2008

BREANNA M. LEPANTE
1506370
ORANGE COUNTY 8-8-08

This Certificate must be attached to:

Title or type of Document: _____

Number of pages: _____

Date of document: _____

Signer(s) other than named above: _____

06 2014919

EXHIBIT A

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 16 of Tract No. 8256, in the City of Burbank, as per map recorded in Book 125, Page(s) 7 and 8i, of Maps, in the office of the County Recorder of said County.

06 2014919

legal rev. (010698)

**ARM WITH PAYRATE (Graduated Payment Advantage)**
**NOTE SECURED BY DEED OF TRUST**
(Adjustable Interest Rate Loan - Cost of Funds Index)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES, MY PRINCIPAL BALANCE INCREASES AND MY INTEREST RATE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

**U.S. $ $ 888,780.00**                                          Santa Monica, California

Loan No. REDACTED                                               **August 31, 2006**

**4130 - 4132 1/2 Toluca Lake Avenue, Burbank, CA 91505**

(Property Address)

### 1   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay

**EIGHT HUNDRED EIGHTY-EIGHT THOUSAND SEVEN HUNDRED EIGHTY AND 00/100**

Dollars (U.S. **$ 888,780.00** ) (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is First Federal Bank of California, a federal savings bank, its successors and/or assignees, or anyone to whom this Note is transferred. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.   INTEREST

#### (a)  Interest Rate

Interest will be charged on the unpaid principal until the full amount of principal has been paid. I will pay interest at the yearly rate of **7.040%** . This is my initial interest rate. The interest rate I will pay may change. The interest rate provided for in this Section 2 is the rate I will pay both before and after any default described in Section 8 of this Note. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

#### (b)  Interest Change Dates

The interest rate I will pay may change on the **1st** day of **November, 2006** and on that day each month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

#### (c)  Interest Rate Limit

So long as I own the property securing this Note, my interest rate will never be greater than **11.950%** , or lower than **2.950%** . If this property is sold or transferred, with the prior consent of Lender as provided in Paragraph 12, the maximum interest rate will be **4.910%** percentage points above the greater of:

(i) my initial interest rate, or

(ii) my interest rate at the time of sale or transfer.

#### (d)  The Index

Beginning with the first Interest Change Date, the interest rate will be based on an index (the "Index"). The "Index" is the monthly weighted average cost of savings, borrowings and advances of members of the Federal Home Loan Bank of San Francisco (the "Bank"), as made available by the Bank. The most recent Index figure available as of the date 15 days before each Interest Change Date is called the "Current Index."

If the Index or any index previously substituted under this Section 2(d) is no longer available, or is otherwise unpublished, or at Lender's sole discretion is determined to be substantially recalculated, the Lender may choose a new Index. The Lender will give me notice of the choice. The Lender shall next adjust the Margin set forth in Section 2(e) of this Note based upon the value of the substituted index as of the last preceding Interest Change Date on which the prior Index was available or the date of this Note, whichever occurs later, such that the sum of the substituted index and the adjusted Margin will be similar to the sum of the prior index and the Margin set forth in Section 2(e) of this Note as of such date. The most recent value of the substituted index, as announced from time to time, and such adjusted Margin shall become the Index and the Margin for purposes of Section 2 of this Note.

#### (e)  Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **2.950%** percentage points (the "Margin") to the Current Index. Subject to the limit in Section 2(c), this amount will be my new interest rate until the next Interest Change Date.

### 3.   PAYMENTS

#### (a)  Time and Place of Payments

I will make payments every month in accordance with the terms of this Note.

I will make my monthly payments on the first day of each month beginning on **November 1, 2006.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **October 1, 2036,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 401 Wilshire Boulevard, Santa Monica, California 90401, or at a different place if required by the Note Holder. Principal, interest and charges are payable in lawful money of the United States.

**RIDER TO NOTE SECURED BY DEED OF TRUST - PREPAYMENT PENALTY RIDER**

**OWNER OCCUPANCY RIDER ATTACHED HERETO AND MADE A PART HEREOF**

REDACTED

**(b)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of
**TWO THOUSAND SIX HUNDRED FIFTY-NINE AND 14/100**
**Dollars (U.S. $ 2,659.14).** This amount may change.

My initial monthly payment may not constitute a "full payment" at the interest rate shown in paragraph 2 above. My initial monthly payment is calculated based on a payment rate (or "Pay Rate") of 0.500% . This lower payment amount will not reflect the actual interest rate that is being charged on my Note.

**(c)Payment Change Dates**
My monthly payment (1) of any Full Payment or Limited Payment (as such terms are defined below) may change as required by Section 3(d) below beginning on the 1st day of November, 2007 and on that day every twelfth (12th) month thereafter, and (2) of any Interest Only Payment (as such term is defined below) may change as required by Section 3(d) below beginning on the 1st day of  November, 2007  and on that day every month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Sections 3(f) or 3(g) below requires me to pay the Full Payment.
I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Sections 3(f) or 3(g) below.

**(d)  Calculation of Monthly Payment Changes and Payment Options**

(i)  **During the First Five Years of the Loan Term.** During the first five years of the loan term, I may have up to three payment options, each with changes to the monthly payment as follows:

(A)  **Limited Payment.**  I have the option of paying a Limited Payment (as defined below).  At least 25 days but not more than 120 days before each Payment Change Date, the Note Holder will calculate the monthly payment that would be sufficient to repay the remaining unpaid principal in full on the maturity date in substantially equal installments at the pay rate equal to the sum of the immediately prior Pay Rate plus **0.750%**.  The result of this calculation is called the "Limited Payment."  The Limited Payment may not constitute a "Full Payment" at the interest rate shown above.  This lower payment amount will not reflect the actual interest rate that is being charged on my Note nor the full amount of interest due, and may result in negative amortization (deferred interest which will be added to the principal balance of my loan).
**After the first five years of the loan term, the Limited Payment is calculated based upon the interest rate, not the Pay Rate, as described in Subsection 3(d)(ii)(A) below.**

(B)  **Full Payment.**  At all times I have the option of paying the Full Payment (as defined below).  At least 25 days but not more than 120 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the remaining unpaid principal in full on the maturity date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."

(C)  **Interest Only Payment.**  I will have the option of making an Interest Only Payment (as defined below) so long as such payment is greater than the Limited Payment.  The Interest Only Payment is the monthly payment allocated to interest based on a 30 day month and shall be calculated by multiplying the unpaid principal of this Note by the applicable interest rate, dividing the product by 360 and multiplying the quotient by 30.

(ii)  **After The First Five Years of The Loan Term.** After the first five years of the loan term, and every fifth year thereafter, my monthly payment will be recalculated in accordance with Section 3(g), and I will pay either the Full Payment, the Limited Payment or an Interest Only Payment as set forth herein.  My first payment following the fifth anniversary date of my loan term must be a Full Payment.

(A)  **Limited Payment.**  Following the month in which I am required to make a Full Payment as described above, I will have the option of making a Limited Payment. In order to determine the Limited Payment, the Note Holder will calculate the amount of my monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075. The result of this calculation is the new Limited Payment.

(B)  **Full Payment.**  The Note Holder will calculate the Full Payment as provided in Section 3(d)(i)(B) above.

(C)  **Interest Only Payment.**  The Note Holder will calculate the Interest Only Payment as provided in Section 3(d)(i)(C) above.

(iii)  **Minimum Payment.**  Unless Sections 3(d)(ii)(B), 3(f) or 3(g) below requires me to pay a different amount, I will pay at least the Limited Payment.

**(e)  Additions / Reductions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient at the monthly payment date to repay the unpaid principal in full on the maturity date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder will also charge interest on the amount of this difference. The interest rate on the interest added to principal will be the rate required by Section 2 above.

My monthly payment could also be greater than the amount necessary to repay the principal in full on the maturity date in substantially equal payments. In that case, the Note Holder will subtract the amount of the interest portion of the monthly payment from the amount of the monthly payment and will then subtract this difference from the unpaid principal.

**(f)  Limit on My Unpaid Principal; Increased Monthly Payment.**

My unpaid principal can never exceed a maximum amount equal to **ONE HUNDRED TWENTY-FIVE AND 00/100 (125.00%)** of the principal amount I originally borrowed. My unpaid principal could exceed that maximum amount due to the Limited Payments and /or interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my current interest rate in substantially equal payments. At this time I will not have the option of paying the Limited Payment.

REDACTED         PAGE TWO

**(g) Required Full Payment - Recast**
On **November 1, 2011,** and on the same day every five years thereafter (each a "Recast Date"), I will begin paying the Full Payment (defined above) as my monthly payment until my monthly payment changes again. I will not have the option of paying the Limited Payment or the Interest Only Payment for my monthly payment due on any Recast Date. I will also begin the Full Payment as my monthly payment on the final Payment Change Date.

### 4. NOTICES OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment at least 25 days before the effective date of any change. The notice will contain the new interest rate and/or the payment amount applicable to my loan. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

### 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments, without paying any prepayment charge. The Note Holder may require that any partial prepayments be made on the date monthly payments are due and be in the amount of that whole part of one or more monthly payments which would be applied towards principal. If I make a partial prepayment, there will be no changes in the amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

### 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits.

### 7. LEGISLATION AFFECTING LENDER'S RIGHT

If enactment or expiration of applicable laws or regulation has the effect of rendering any provision of the Note or Deed of Trust relating to payment of interest or principal, defaults, or transfer of the property unenforceable according to its terms, the Note Holder, at its option, may require immediate payment in full of all sums secured by the Deed of Trust and may invoke any remedies permitted herein.

### 8. BORROWER'S FAILURE TO PAY AS REQUIRED

**(a) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be six percent of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(b) Accrual of Interest on Unpaid Balance**
In addition to any late charge described above and at the option of the Note Holder, all accrued interest which is not paid when due shall also bear interest at the same rate as the interest on the unpaid principal balance.

**(c) Default**
If I do not pay the full amount of each monthly payment on the date it is due, or if I do not keep the promises I make in this Note or the Deed of Trust securing it, I will be in default.

**(d) Notice of Default**
If I am in default, the Note Holder may send me a written notice that if I do not correct the default by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

**(e) No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(f) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Such expenses include for example, reasonable attorneys' fees.

### 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(a) above or at a different address if I am given a notice of that different address.

### 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

REDACTED

### 11. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 12. SECURITY

The Note is secured by a Deed of Trust dated the same date as this Note, and said Deed of Trust contains the following clause, which is incorporated herein: "**Assumptions.** During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a credit worthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower."

### 13. CLERICAL ERRORS

In the event that the Lender at any time discovers that this Note or the Deed of Trust or any other document related to this loan (the "Loan Documents") contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender to re-execute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

### 14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

BORROWER(S):

Christopher R. Smith

DO NOT DESTROY THIS NOTE: When paid, this Note, with the Deed of Trust securing it, must be surrendered to Trustee for cancellation before reconveyance will be made.

REDACTED

FIRST FEDERAL BANK
OF CALIFORNIA
Corporate Office
401 Wilshire Boulevard
Santa Monica, CA 90401-9490

Loan No.: REDACTED

## PREPAYMENT CHARGE RIDER TO
## NOTE SECURED BY DEED OF TRUST

This Rider is attached to and made part of that certain Note Secured by Deed of Trust (the "Note") dated
**August 31, 2006** by and between

**Christopher R. Smith, a married man as his sole and separate property**

("Borrower"), and FIRST FEDERAL BANK OF CALIFORNIA. ("Lender" or "Note Holder"). All terms used herein
shall have the meanings ascribed to such terms in the Note. To the extent the provisions contained herein conflict
with any provision contained in the Note, the provisions hereof shall control.

1    Paragraph 5 of the Note is hereby modified in its entirety to read as follows:

"5. BORROWER'S RIGHT TO REPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only
is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am
doing so. I may make a full prepayment or partial prepayments.

Over the first three Loan Years, I may prepay an aggregate amount not exceeding $ **177,756.00**        (20
percent of the original loan amount; the "Permitted Prepayment") without penalty. During the first three
Loan Years, if I prepay an amount in excess of the Permitted Prepayment, I will pay to the Note Holder a
prepayment charge pursuant to the following schedule:

FIRST LOAN YEAR:      **$ 22,219.50**

SECOND LOAN YEAR:     **$ 14,813.00**

THIRD LOAN YEAR:      **$ 7,406.50**

After completion of the third Loan Year, there will be no prepayment charges for any full or partial
prepayments. As used in this Note, "Loan Year" means each year during the term of this Note
commencing thirty days before the first payment due date.

The prepayment charge shall be payable upon a prepayment as set forth above, whether voluntary or
involuntary, including but not limited to a prepayment resulting from the Note Holder's permitted
acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict
my right to prepay at any time without penalty, accrued but unpaid interest that has been added to
principal.

The Note Holder may require that any partial prepayments be made on the date monthly payments are due
and be in the amount of one or more monthly payments which would be applied towards principal. Any
partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the
principal balance of the Note which shall not relieve me of the obligation to make the installments each and
every month until the Note is paid in full. If I make a partial prepayment, there will be no changes in the
amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes.
My partial prepayment may reduce the amount of my monthly payments after the first Payment Change
Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset
by an interest rate increase."

REDACTED

2.  Other than as expressly modified herein, the provisions of the Note shall remain in full force and effect, according to their terms.

**BORROWER(S):**

_____

Christopher R. Smith

REDACTED

## FIRST FEDERAL BANK OF CALIFORNIA
### 401 Wilshire Boulevard, Santa Monica, California 90401

## OWNER-OCCUPANCY ADDENDUM TO NOTE

Loan No. REDACTED

Date: August 31, 2006

FOR VALUE RECEIVED, the undersigned (the "Borrower" or "Trustor") agrees that the following provisions shall be incorporated into that certain note (the "Note") of even date executed by the Borrower, in favor of First Federal Bank of California (the "Lender" or "Beneficiary"), as beneficiary, which Note is secured by a deed of trust (the "Deed of Trust") of even date. To the extent that the provisions of this Rider are inconsistent with the provisions of the Note or Deed of Trust , the provisions of this Rider shall prevail and shall supersede any such inconsistent provisions of the Note or Deed of Trust .

### 1. OWNER OCCUPANCY

As an inducement for Lender to make the loan secured by the Deed of Trust, Borrower has represented to Lender that the Property will be occupied, within ninety days of the date of recording of the Deed of Trust, as the Borrower's personal residence, and will not be used as investment property (i.e. the Property will be "owner-occupied"), unless extenuating circumstances exist which are beyond Borrower's control and as to which Borrower notifies Lender in writing. Borrower acknowledges that Lender would not have agreed to make the loan if the Property were not to be owner-occupied and that the interest rate set forth on the face of the Note and other terms of the loan were determined as a result of the Borrower's representation that the Property would be owner-occupied. Borrower further acknowledges that, among other things, purchasers of loans (including agencies, associations and corporations created by the federal and state government for the purchase of loans) typically require that properties securing loans acquired by such purchasers be owner-occupied, and will reject loans for which the security properties are not owner-occupied; Lender's ability to sell a loan or an interest in a loan (which it often does in the ordinary course of business) will be impaired where a security property is not owner-occupied; the risks involved and the costs of holding and administering a loan are often higher in the case of a loan where the security property is not owner-occupied; and, if and when Lender makes a loan on non-owner-occupied property, Lender typically makes such a loan on terms different from those of loans secured by owner-occupied properties.

In order to provide Lender with evidence of the owner-occupancy of the Property, the Borrower agrees to provide Lender with documentation reasonably requested by Lender for the purpose of verification of owner-occupancy. This documentation may include, but is not limited to, utility bills, copies of the Borrower's most recent telephone billing statement and any tax return schedules showing investment property owned by the Borrower. Such documentation shall assist Lender in verifying owner-occupancy, but shall not in itself be deemed proof of owner-occupancy if, in Lender's judgment, other evidence indicates that the Property is not occupied by the Borrower.

Accordingly, in the event the Property is not occupied, within the applicable time described above, as a personal residence of the Borrower, or the Borrower fails to provide the documentation required hereunder in a timely manner, the Lender may, at its option, do the following:

A. If at such time the loan meets the Lender's normal requirements as to loan-to-value ratio, property type, etc. for a loan secured by non-owner occupied property, the Lender may (a) permanently increase the interest rate on the Note by an additional one percent (1.00%); and (b) add one percent (1.00%) of the face amount of the Note, representing the additional loan fee, to the unpaid principal balance of the Note.

B. Alternatively, the Lender may declare all sums secured by the Deed of Trust to be immediately due and payable.

The rights of Lender hereunder shall be in addition to any other rights of Lender under the Note and Deed of Trust or allowed by law.

REDACTED

Page 1

## 2. PREPAYMENT CHARGE

In addition to the foregoing, in the event that the Lender determines, in its sole and absolute judgment, that Borrower has failed to occupy the Property by the ninetieth day following recording of the Deed of Trust as Borrower's personal residence as described in Paragraph 1 above, a prepayment charge shall be payable thereafter in connection with any prepayment made under the Note. In such case, the prepayment charge shall be the greater of (a) the prepayment charge set forth in the Note and any Rider thereto, if any, or (b) the following prepayment charge:

A.  For any prepayment made within **three years** of the date of the Note, the prepayment charge shall be the greater of: (i) one percent of the unpaid principal balance of the Note on the date of prepayment or (ii) the amount determined under the following schedule:

First Year:       Three percent of the principal amount being prepaid.

Second Year:   Two percent of the principal amount being prepaid.

Third Year:       One percent of the principal amount being prepaid.

B.  If prepayment is made after such three year period, there shall be no prepayment charge due.

## 3. FEES OR COSTS

Any legal fees or administrative costs incurred directly or indirectly by Lender as a result of the inability to sell the loan may be added to the unpaid principal balance of the Note.

## 4. EFFECT OF RIDER

Except as otherwise provided in this Rider, all of the provisions of the Note and Deed of Trust shall remain in full force and effect.

In this rider, the singular shall include the plural.

REDACTED

IN WITNESS WHEREOF, the Borrower has executed this Rider on the _____31st_____ day of _____august_____, 20 04 .

**BORROWER(S):**

_____
Christopher R. Smith

REDACTED

# ALLONGE TO NOTE

Loan Number: REDACTED

For the purposes of further endorsement of the following described Note, this allonge is affixed and becomes a permanent part of said note.

Original Loan Amount:   $888,780.00
Note Date:   08/31/2006
Borrower:   CHRISTOPHER R SMITH
Property address:   4130-4132 1/2 W TOLUCA LAKE
   BURBANK, CA 91505

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

WITHOUT RECOURSE PAY TO THE ORDER OF:
OneWest Bank, FSB

FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for First
Federal Bank of California, a Federal Savings Bank, Santa Monica, CA

Authorized Signer

CRYSTAL MOORE ATTORNEY-IN-FACT

REDACTED   ALLONGE_OWBFA



REDACTED

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

    Prober & Raphael, A Law Corporation, P.O. Box 4365, Woodland Hills, California 91365

A true and correct copy of the foregoing document entitled (*specify*): __CHAPTER 11 PROOF OF CLAIM_____
_____
_____
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __09/05/2014_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Melanie Scott Green Melanie.green@usdoj.gov
M Jonathan Hayes jhayes@srhlawfirm.com,
roksana@srhlawfirm.com;carolyn@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;
Gina J Kim gjkim@piteduncan.com, ecfcacb@piteduncan.com;GJK@ecf.inforupcty.com
John H Kim jkim@cookseylaw.com
Matthew D Resnik matt@srhlawfirm.com, mattecf@gmail.com;renee@srhlawfirm.com
Cassandra J Richey cmartin@pralc.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __09/08/2014_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/08/2014 | Asalia Catalan | /s/ Asalia Catalan |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                  **F 9013-3.1.PROOF.SERVICE**

II.    **SERVED BY U.S. MAIL**

Christopher Smith
4130 W Toluca Lake Ave
Burbank, CA 91505
Debtor

M Jonathan Hayes, Esquire
Simon Resnik Hayes LLP
15233 Ventura Blvd Ste 250
Sherman Oaks, CA 91403
Attorney for Debtor

Matthew D Resnik, Esquire
Simon Resnik Hayes LLP
510 W 6th St
Ste 1220
Los Angeles, CA 90014
Attorney for Debtor

**EXHIBIT C**

This page is part of your document - DO NOT DISCARD

**06 2134503**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**09/26/06 AT 08:00am**

**TITLE(S) :**



L E A D    S H E E T

**FEE**

FEE $ 35 00
DAF $ 4
C-20      8

**CODE
20**

**CODE
19**

**CODE
9___**

D.T.T.



Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.

**Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY
LAWYERS TITLE CO

**06  2134503**

WHEN RECORDED MAIL TO

PFF BANK & TRUST
9467 Milliken Avenue
P. O. Box 2729
Rancho Cucamonga, CA 91729-2729
LOAN CLOSING DEPARTMENT
ATTN:  BRENDA BEHRENS

SPACE ABOVE FOR RECORDER'S USE

# DEED OF TRUST

LOAN ID: 246291082

| | This is a: | X | This is not a: | CONSTRUCTION TRUST DEED |

THIS DEED OF TRUST is made this    15th    day of    SEPTEMBER , 2006
among the Trustor,
CHRISTOPHER R SMITH A MARRIED  MAN

(herein "Borrower"),
**POMONA FINANCIAL SERVICES, INC.**  (herein "Trustee"),
and the Beneficiary,    **PFF BANK & TRUST** a corporation organized and existing under the laws of **THE UNITED STATES OF AMERICA**   whose address is  **9467 Milliken Avenue, P.O. Box 2729, Rancho Cucamonga, CA 91729-2729**

(herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
LOS ANGELES                    , State of California:

LOT 16 OF TRACT 8256 IN THE  CITY OF BURBANK AS PER MAP
RECORDED IN BOOK 125 PAGES 7  AND 8 OF MAPS IN THE OFFICE
OF THE COUNTY RECORDER OF SAID  COUNTY

APN: 2485-019-008

which has the address of    4130 -4132 1/2 TOLUCA LAKE AVE, BURBANK, CA 91505

*Rider to Deed of trust attached*

(herein "Property Address");

26401. (4/96)
PFDC 7/99 0650

| CALIFORNIA -- HOME IMPROVEMENT - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT | (page 1 of 6) |

Borrower's Initials _____ C R S _____


LENDER



LOAN ID: 246291082

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the 'Property;'

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated    SEPTEMBER  15, 2006                        and extensions and renewals thereof (herein 'Note'), in the principal sum of U. S. $    59,220.00    , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be at Borrower's option either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

26401. (4/96)
PPDD 7/99 9600

Borrower's Initials    CPS

(page 2 of 6)

06 2134503

LOAN ID: 246291082

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principle of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender, provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

If this Deed of Trust is secured by a leasehold estate, Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease creating said estate and interest, and Borrower shall not, without the express written consent of Lender, alter or amend said ground lease. Borrower covenants and agrees that there shall not be a merger of the ground lease, or the leasehold estate created thereby, with the fee estate covered by the ground lease by reason of said leasehold estate or said fee estate, or any part of either, coming into common ownership, unless Lender shall consent in writing to such merger; if Borrower shall acquire such fee estate, then this Instrument shall simultaneously and without further action be spread so as to become a lien on such fee estate.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that the Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

2640L (4/96)
PFDR 7/99 9661

Borrower's Initials  _CRS_

(page 3 of 6)

LOAN ID: 246291082

**10. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall insure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvements, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or an interest therein is sold or transferred by Borrower (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person or persons but is a corporation, partnership, trust or other legal entity) without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Security Instrument which does not relate to a transfer of rights of occupancy in the property, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.



LOAN ID: 246291082

Lender may consent to a sale or transfer if: (1) Borrower causes to be submitted to Lender information required by Lender to evaluate the transferee as if a new loan were being made to the transferee; (2) Lender reasonably determines that Lender's security will not be impaired and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable; (3) interest will be payable on the sums secured by this Security Instrument at a rate acceptable to Lender; (4) changes in the terms of the Note and this Security Instrument required by Lender are made, including, for example, periodic adjustment in the interest rate, a different final payment date for the loan, and addition of unpaid interest to principal; and (5) the transferee signs an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument, as modified, if required by Lender. To the extent permitted by applicable law, Lender also may charge a reasonable fee as a condition to Lender's consent to any sale or transfer.

Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.**

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

26401 (4/96)
PPDX7 7/99 966B

Borrower's Initials _____ CRS _____

(page 5 of 6)

LOAN ID: 246291082

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums or receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligation.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

REQUEST FOR NOTICE OF DEFAULT
AND FORCLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

CHRISTOPHER R SMITH

———————————————— [Space Below This Line For Acknowledgement] ————————————————

STATE OF CALIFORNIA
COUNTY OF                                              SS.

On                                    before me, the undersigned, a Notary Public in and for said State personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Signature _____

REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto. Dated:

2640L (4/96)
PFDH 7/99 9664

(page 6 of 6)

**06 2134503**

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Orange                }ss.

On 9/18/06, before me, Maia Parenti, Notary Public
(Name and Title of Officer (e.g. Jane Doe, Notary Public)"

personally appeared Christopher R. Smith
(Name(s) of Signer(s))

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence

**MAIA PARENTI**
COMM. # 1400332
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. FEB. 11, 2007

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

Place Notary Seal Above

Signature of Notary Public

——————— **OPTIONAL** ———————

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document

**Description of Attached Document**

Title or Type of Document:

Document Date:                                    Number of Pages:

Signer(s) Other Than Named Above

**Capacity(ies) Claimed by Signer**

Signer's Name:
☐ Individual
☐ Corporate Officer — Title(s):
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing:

©1997 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Prod. No. 5907    Reorder: Call Toll-Free 1-800-876-6827

06 2134503

**PFF BANK & TRUST**
RIDER TO DEED OF TRUST
(Equity Line of Credit)

246291082

**NOTICE TO TRUSTOR: THIS RIDER TO DEED OF TRUST ("RIDER") CONTAINS PROVISIONS RELATING TO A REVOLVING LINE OF CREDIT ARRANGEMENT FEATURING OBLIGATORY ADVANCES, A VARIABLE INTEREST RATE AND A CONVERSION RIGHT.**

This Rider is made this   15th   of   SEPTEMBER , 2006       , and is incorporated into the body of and shall be deemed to amend and supplement the Deed of Trust of the same date given by the undersigned (the "Trustor") to secure Trustor's obligations to PFF BANK & TRUST (the "Beneficiary").

1. In addition to the other obligations secured by the Deed of Trust, the Deed of Trust secures the obligations of Trustor under that certain Equity Line of Credit Agreement and Disclosure Statement ('Credit Agreement') of the same date by and between Trustor and Beneficiary, the provisions of which are incorporated herein by this reference. The Credit Agreement is the "Note" referenced in the Deed of Trust.

2. The secured obligation is a revolving line of credit. Funds may be advanced by Beneficiary, repaid by Trustor, and subsequently readvanced by Beneficiary. Notwithstanding the loan amount which is outstanding and unpaid at any particular time, the Deed of Trust secures all of Trustor's obligations under the Credit Agreement. Beneficiary is obligated to make advances under the Credit Agreement so long as the line of credit has not been cancelled, terminated, or suspended. It is possible that Beneficiary will be obligated to make advances against the line of credit which will cause the total amount of the indebtedness under the Credit Agreement to exceed the credit limit or Note amount. All such obligatory advances will be secured by this Deed of Trust and will be prior to any interest created in the security property subsequent to this Deed of Trust. The unpaid balance of the revolving line of credit under the Credit Agreement may at certain times be zero. A zero balance does not affect the Beneficiary's obligation to advance to the Trustor and, thus, the interest of Beneficiary herein will remain in full force and effect notwithstanding a zero balance on the Credit Agreement.

3. The Credit Agreement which this Deed of Trust secures provides for a variable rate of interest up to a stated maximum rate. Changes in the rate of interest may occur as often as monthly, reflecting changes in the "Index", which Index is the "Prime Rate" published in the "Money Rates" table of the Western Edition of the "Wall Street Journal".

4. Beneficiary hereby waives its rights under Section 2 of the Deed of Trust to require Trustor to pay "Funds" as defined therein.

5. The second sentence of the second paragraph of Section 16 of the Deed of Trust is amended to read as follows: "Such notice shall provide a period within which Borrower may pay the sums declared due." In addition, the last two paragraphs of Section 16 (beginning with the words 'Lender may consent...") are deleted.

6. The first two sentences of Section 17 of the Deed of Trust are deleted and replaced by the following two sentences: "Except as provided in Paragraph 16 hereof, upon any default by Borrower as described in the Note, Lender may require that Borrower pay the entire outstanding balance of the line of credit, including any Finance Charges and other fees or charges due. Prior to acceleration of Borrower's outstanding balance, Lender shall give notice to Borrower as provided in Paragraph 12 hereof, which notice shall specify: (1) the default; (2) the action required to cure the default; (3) the date by which such default must be cured; and (4) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property."

7. Section 18 of the Deed of Trust is deleted in its entirety.

8. The second sentence of Section 20 of the Deed of Trust is amended in its entirety to read as follows: "Trustee shall reconvey the Property without warranty and with reasonable charge to the person or persons legally entitled to it."

This Rider to Deed of Trust is executed as of the date first written above.

CHRISTOPHER R SMITH

**NOTICE TO SUBSEQUENT LIENORS**: THIS DEED OF TRUST SECURES A REVOLVING LINE OF CREDIT UNDER WHICH ALL ADVANCES ARE OBLIGATORY ADVANCES, INCLUDING, IN SOME CASES, ADVANCES WHICH CAUSE THE BORROWINGS SECURED HEREBY TO EXCEED THE CREDIT LIMIT OR NOTE AMOUNT. SUCH OBLIGATORY ADVANCES WILL BE SECURED BY THIS DEED OF TRUST AND WILL BE PRIOR TO ANY SUBSEQUENT INTEREST CREATED IN THE SECURITY PROPERTY, EVEN IF THE ADVANCE IS MADE AFTER THE CREATION OF THE SUBSEQUENT INTEREST.
**NOTICE TO SUBSEQUENT TRANSFEREES**: IF YOU ACQUIRE AN INTEREST IN THE PROPERTY ENCUMBERED BY THIS DEED OF TRUST, YOUR INTEREST WILL BE SUBJECT TO YOUR SELLER'S ABILITY TO BORROW UNDER THE LINE OF CREDIT UNLESS YOU HAVE WRITTEN VERIFICATION FROM THE BENEFICIARY OF THIS DEED OF TRUST THAT THE SELLER HAS NO FURTHER RIGHT TO ORDER LOAN ADVANCES.
2681-1 (Use with 2640)
CS PFDI 09/03

06 2134503



**This page is part of your document - DO NOT DISCARD**

# 20110204824





**Pages:**
**0008**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**02/07/11 AT 11:17AM**

| | |
|---|---|
| FEES: | 65.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 65.00 |



**L E A D S H E E T**

201102070040028

00003700700

003137905

**SEQ:**
**01**

**DAR - Mail (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

02/07/2011

*20110204824*

This document prepared by and returns to:
RICH CARLSON
US RECORDINGS INC.
2925 Country Drive, St. Paul, MN 55117
(651) 765-6400
76813723

## ASSIGNMENT OF DEEDS OF TRUST

For value received, the undersigned FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF
PFF BANK & TRUST BY U.S. BANK NATIONAL ASSOCIATION UNDER LIMITED POWER OF
ATTORNEY DATED SEPTEMBER 29, 2010 RECORDED SEPTEMBER 29, 2010 IN DALLAS COUNTY,
TEXAS IN DOCUMENT NUMBER 201000250121, (herein "Assignor"), whose address is 9467 Miliken Ave,
Rancho Cucamonga, CA 91729, does hereby grant, sell, assign, transfer and convey unto U.S. BANK
NATIONAL ASSOCIATION (herein "Assignee") whose address is 1850 OSBORN AVENUE, OSKOSH, WI
54902, all interest under that certain mortgage described as follows:
Those deeds of trust which encumber the real property described therein, and are described in Schedule "A",
attached hereto and made a part hereof, together with the certain note(s) described therein with all interest, all
liens, and any rights due or to become due thereon.

Said deeds of trust are recorded in the State of CA, County of LOS ANGLES.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the
terms and conditions of the above described Deeds of Trust.
IN WITNESS WHEREOF, the undersigned has executed this Assignment of Deeds of Trust on NOVEMBER 16, 2010,
but effective APRIL 1, 2009.

FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF PFF BANK
& TRUST BY U.S. BANK NATIONAL ASSOCIATION UNDER LIMITED POWER
OF ATTORNEY DATED SEPTEMBER 29,2010 RECORDED SEPTEMBER 29, 2010
IN DALLAS COUNTY, TEXAS IN DOCUMENT NUMBER 201000250121

KAREN J. CANON, ASSOCIATE GENERAL COUNSEL

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT**
STATE OF MINNESOTA)SS
COUNTY OF HENNEPIN)
On NOVEMBER 16, 2010 before me, Cara L. Seeley, Notary Public, personally appeared Karen J. Canon
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

Signature



CARA L. SEELEY
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2011

This area for official notarial seal.

## SCHEDULE "A" TO ASSIGNMENT

**Assignor:** FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF PFF BANK & TRUST BY U.S. BANK NATIONAL ASSOCIATION UNDER LIMITED POWER OF ATTORNEY DATED SEPTEMBER 29, 2010 RECORDED SEPTEMBER 29, 2010 IN DALLAS COUNTY, TEXAS IN DOCUMENT NUMBER 201000250121
**Assignee:** U.S. BANK NATIONAL ASSOCIATION

U.S. Bank Loan #: 246301329    FNMA Loan #: 246301329
Trustor: Gilbert Valdez
Beneficiary: PFF BANK AND TRUST
Property Address: 10331 Loch Lomond Dr, Whittier, CA 90606
Recorded on: 7/23/2007 Instrument: 20071733391 Page:    Book:    Certificate:
Re-Recorded on:    Re-Recorded Instrument:    Re-Recorded Page:    Re-Recorded Book:    Re-Recorded
Certificate:

U.S. Bank Loan #: 246304042    FNMA Loan #: 246304042
Trustor: Cynthia L Burke
Beneficiary: PFF BANK AND TRUST
Property Address: 1913 261st St, Lomita, CA 90717
Recorded on: 9/27/2007 Instrument: 20072238501 Page:    Book:    Certificate:
Re-Recorded on:    Re-Recorded Instrument:    Re-Recorded Page:    Re-Recorded Book:    Re-Recorded
Certificate:

U.S. Bank Loan #: 246305213    FNMA Loan #: 246305213
Trustor: Zabel E Hindoyan
Beneficiary: PFF BANK AND TRUST
Property Address: 4500 Stansbury Ave, Sherman Oaks, CA 91423
Recorded on: 10/9/2007 Instrument: 20072300200 Page:    Book:    Certificate:
Re-Recorded on:    Re-Recorded Instrument:    Re-Recorded Page:    Re-Recorded Book:    Re-Recorded
Certificate:

U.S. Bank Loan #: 246305692    FNMA Loan #: 246305692
Trustor: Vicenzo Terzoli and Kimberly M Terzoli
Beneficiary: PFF BANK AND TRUST
Property Address: 936 Gatun St, San Pedro, CA 90731
Recorded on: 10/16/2007 Instrument: 20072356932 Page:    Book:    Certificate:
Re-Recorded on:    Re-Recorded Instrument:    Re-Recorded Page:    Re-Recorded Book:    Re-Recorded
Certificate:

U.S. Bank Loan #: 246307649    FNMA Loan #: 246307649
Trustor: Herbert T Boswell Jr and Cecilia Boswell
Beneficiary: PFF BANK AND TRUST
Property Address: 4009 North Lang Ave, Covina, CA 91722
Recorded on: 12/21/2007 Instrument: 20072809561 Page:    Book:    Certificate:
Re-Recorded on:    Re-Recorded Instrument:    Re-Recorded Page:    Re-Recorded Book:    Re-Recorded
Certificate:

Page ___ of ___

## SCHEDULE "A" TO ASSIGNMENT

**Assignor:** FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF **PFF BANK & TRUST** BY U.S. BANK NATIONAL ASSOCIATION UNDER LIMITED POWER OF ATTORNEY DATED SEPTEMBER 29, 2010 RECORDED SEPTEMBER 29, 2010 IN DALLAS COUNTY, TEXAS IN DOCUMENT NUMBER 201000250121

**Assignee:** U.S. BANK NATIONAL ASSOCIATION

**U.S. Bank Loan #:** 246308779    **FNMA Loan #:** 246308779
**Trustor:** Dale B Kaye
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 630 W 20th St 1 2 3, Los Angeles, CA 90731
**Recorded on:** 1/15/2008 **Instrument:** 20080080724 **Page:**  **Book:**  **Certificate:**
**Re-Recorded on:**  **Re-Recorded Instrument:**  **Re-Recorded Page:**  **Re-Recorded Book:**  **Re-Recorded Certificate:**

**U.S. Bank Loan #:** 246309470    **FNMA Loan #:** 246309470
**Trustor:** Carlos Villegas and Josephine Lemus
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 25933-25935 Cypress St, Lomita, CA 90717
**Recorded on:** 1/17/2008 **Instrument:** 20080096983 **Page:**  **Book:**  **Certificate:**
**Re-Recorded on:**  **Re-Recorded Instrument:**  **Re-Recorded Page:**  **Re-Recorded Book:**  **Re-Recorded Certificate:**

**U.S. Bank Loan #:** 246311062    **FNMA Loan #:** 246311062
**Trustor:** Michael L Cortis
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 17615 Cranbrook Ave, Torrance, CA 90504
**Recorded on:** 3/18/2008 **Instrument:** 20080461707 **Page:**  **Book:**  **Certificate:**
**Re-Recorded on:**  **Re-Recorded Instrument:**  **Re-Recorded Page:**  **Re-Recorded Book:**  **Re-Recorded Certificate:**

**U.S. Bank Loan #:** 246311096    **FNMA Loan #:** 246311096
**Trustor:** Russell Neese
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 740 Maryland St, El Segundo, CA 90245
**Recorded on:** 3/25/2008 **Instrument:** 20080507881 **Page:**  **Book:**  **Certificate:**
**Re-Recorded on:**  **Re-Recorded Instrument:**  **Re-Recorded Page:**  **Re-Recorded Book:**  **Re-Recorded Certificate:**

**U.S. Bank Loan #:** 246204034    **FNMA Loan #:** 246204034
**Trustor:** Michael G. Lawyer and Laila A. Lawyer
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 10650 Pinyon Ave, Tujunga, CA 91042
**Recorded on:** 12/12/2002 **Instrument:** 02 3041537 **Page:**  **Book:**  **Certificate:**
**Re-Recorded on:**  **Re-Recorded Instrument:**  **Re-Recorded Page:**  **Re-Recorded Book:**  **Re-Recorded Certificate:**

## SCHEDULE "A" TO ASSIGNMENT

**Assignor:** FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF PFF BANK & TRUST BY U.S. BANK NATIONAL ASSOCIATION UNDER LIMITED POWER OF ATTORNEY DATED SEPTEMBER 29, 2010 RECORDED SEPTEMBER 29, 2010 IN DALLAS COUNTY, TEXAS IN DOCUMENT NUMBER 201000250121
**Assignee:** U.S. BANK NATIONAL ASSOCIATION

**U.S. Bank Loan #:** 246211270   **FNMA Loan #:** 246211270
**Trustor:** Michael Field and Marsha Weltman
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 860 Yale St., Santa Monica, CA 90403
**Recorded on:** 8/25/2003 **Instrument:** 03 2455293 **Page: Book: Certificate:**
**Re-Recorded on: Re-Recorded Instrument: Re-Recorded Page: Re-Recorded Book: Re-Recorded Certificate:**

**U.S. Bank Loan #:** 246255244   **FNMA Loan #:** 246255244
**Trustor:** Jeffery Wallace Descombes and Elisabeth Mott Descombes
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 255 W. 7th St., Claremont, CA 91711
**Recorded on:** 11/5/2004 **Instrument:** 04 2872225 **Page: Book: Certificate:**
**Re-Recorded on: Re-Recorded Instrument: Re-Recorded Page: Re-Recorded Book: Re-Recorded Certificate:**

**U.S. Bank Loan #:** 246256085   **FNMA Loan #:** 246256085
**Trustor:** Consepcion Amescua
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 13520 Heflin Drive, La Mirada, CA 90638
**Recorded on:** 11/3/2004 **Instrument:** 04 2846379 **Page: Book: Certificate:**
**Re-Recorded on: Re-Recorded Instrument: Re-Recorded Page: Re-Recorded Book: Re-Recorded Certificate:**

**U.S. Bank Loan #:** 246264097   **FNMA Loan #:** 246264097
**Trustor:** Adolfo Michel and Diane Michel
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 5012 N Garsden Ave, Covina, CA 91724
**Recorded on:** 3/18/2005 **Instrument:** 05 0627455 **Page: Book: Certificate:**
**Re-Recorded on: Re-Recorded Instrument: Re-Recorded Page: Re-Recorded Book: Re-Recorded Certificate:**

**U.S. Bank Loan #:** 246269377   **FNMA Loan #:** 246269377
**Trustor:** Gregg M. Kent II and Tammy S. Kent
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 210 W. Bennett Ave, Glendora, CA 91741
**Recorded on:** 7/6/2005 **Instrument:** 05 1581208 **Page: Book: Certificate:**
**Re-Recorded on: Re-Recorded Instrument: Re-Recorded Page: Re-Recorded Book: Re-Recorded Certificate:**

## SCHEDULE "A" TO ASSIGNMENT

**Assignor:** FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF PFF BANK & TRUST BY U.S. BANK NATIONAL ASSOCIATION UNDER LIMITED POWER OF ATTORNEY DATED SEPTEMBER 29, 2010 RECORDED SEPTEMBER 29, 2010 IN DALLAS COUNTY, TEXAS IN DOCUMENT NUMBER 201000250121

**Assignee:** U.S. BANK NATIONAL ASSOCIATION

**U.S. Bank Loan #:** 246274872   **FNMA Loan #:** 246274872
**Trustor:** Khatchik Sakadjian
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 1639 Storrs Pl, Pomona, CA 91766
**Recorded on:** 10/6/2005 **Instrument:** 05 2408466 **Page:** **Book:** **Certificate:**
**Re-Recorded on:** **Re-Recorded Instrument:** **Re-Recorded Page:** **Re-Recorded Book:** **Re-Recorded Certificate:**

**U.S. Bank Loan #:** 246276729   **FNMA Loan #:** 246276729
**Trustor:** Guillermo Preciado and America Preciado
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 545-551 N Currier St., Pomona, CA 91768
**Recorded on:** 11/21/2005 **Instrument:** 05 2818379 **Page:** **Book:** **Certificate:**
**Re-Recorded on:** **Re-Recorded Instrument:** **Re-Recorded Page:** **Re-Recorded Book:** **Re-Recorded Certificate:**

**U.S. Bank Loan #:** 246277636   **FNMA Loan #:** 246277636
**Trustor:** Bruce Gustafson and Barbara Goodson Gustafson
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 201 Juniper Springs Dr. 311, Mammoth Lake, CA 93546
**Recorded on:** 12/13/2005 **Instrument:** 2005010232 **Page:** **Book:** **Certificate:**
**Re-Recorded on:** **Re-Recorded Instrument:** **Re-Recorded Page:** **Re-Recorded Book:** **Re-Recorded Certificate:**

**U.S. Bank Loan #:** 246278964   **FNMA Loan #:** 246278964
**Trustor:** Bryan J. Goetzinger
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 18107 S. Harvard Blvd, Gardena, CA 90248
**Recorded on:** 12/19/2005 **Instrument:** 05 3110485 **Page:** **Book:** **Certificate:**
**Re-Recorded on:** **Re-Recorded Instrument:** **Re-Recorded Page:** **Re-Recorded Book:** **Re-Recorded Certificate:**

**U.S. Bank Loan #:** 246282347   **FNMA Loan #:** 246282347
**Trustor:** James L. Zimmerman and Lisa Zimmerman
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 32766 Barrett Dr., Westlake Village, CA 91361
**Recorded on:** 2/28/2006 **Instrument:** 06 0435144 **Page:** **Book:** **Certificate:**
**Re-Recorded on:** **Re-Recorded Instrument:** **Re-Recorded Page:** **Re-Recorded Book:** **Re-Recorded Certificate:**

## SCHEDULE "A" TO ASSIGNMENT

**Assignor:** FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF PFF BANK & TRUST
BY U.S. BANK NATIONAL ASSOCIATION UNDER LIMITED POWER OF ATTORNEY DATED
SEPTEMBER 29, 2010 RECORDED SEPTEMBER 29, 2010 IN DALLAS COUNTY, TEXAS IN DOCUMENT
NUMBER 201000250121
**Assignee:** U.S. BANK NATIONAL ASSOCIATION

**U.S. Bank Loan #:** 246283402   **FNMA Loan #:** 246283402
**Trustor:** Charles Rene Betts and Fahimeh Hosseini Betts
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 21132 Lighthill Drive, Topanga, CA 90290
**Recorded on:** 3/28/2006 **Instrument:** 06 0656210 **Page:** **Book:** **Certificate:**
**Re-Recorded on:** **Re-Recorded Instrument:** **Re-Recorded Page:** **Re-Recorded Book:** **Re-Recorded
Certificate:**

**U.S. Bank Loan #:** 246287981   **FNMA Loan #:** 246287981
**Trustor:** Robert Shevlowitz
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 157 N. Mountain Trail Ave, Sierra Madre, CA 91024
**Recorded on:** 7/12/2006 **Instrument:** 06 1535664 **Page:** **Book:** **Certificate:**
**Re-Recorded on:** **Re-Recorded Instrument:** **Re-Recorded Page:** **Re-Recorded Book:** **Re-Recorded
Certificate:**

**U.S. Bank Loan #:** 246289250   **FNMA Loan #:** 246289250
**Trustor:** Maureen Lee
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 250 The Village 212, Redondo Beach, CA 90277
**Recorded on:** 7/28/2006 **Instrument:** 06 1676893 **Page:** **Book:** **Certificate:**
**Re-Recorded on:** **Re-Recorded Instrument:** **Re-Recorded Page:** **Re-Recorded Book:** **Re-Recorded
Certificate:**

**U.S. Bank Loan #:** 246289417   **FNMA Loan #:** 246289417
**Trustor:** Betty J. Mackenzie
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 9733-9735 Park St., Bellflower, CA 90706
**Recorded on:** 8/9/2006 **Instrument:** 06 1769395 **Page:** **Book:** **Certificate:**
**Re-Recorded on:** **Re-Recorded Instrument:** **Re-Recorded Page:** **Re-Recorded Book:** **Re-Recorded
Certificate:**

**U.S. Bank Loan #:** 246290910   **FNMA Loan #:** 246290910
**Trustor:** Thomas A. Stanton and Linda L. Stanton
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 121 W. Whitcomb Ave, Glendora, CA 91741
**Recorded on:** 10/12/2004 **Instrument:** 04 2611280 **Page:** **Book:** **Certificate:**
**Re-Recorded on:** **Re-Recorded Instrument:** **Re-Recorded Page:** **Re-Recorded Book:** **Re-Recorded
Certificate:**

Page ____ of ____

## SCHEDULE "A" TO ASSIGNMENT

**Assignor:** FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF **PFF BANK & TRUST**
BY U.S. BANK NATIONAL ASSOCIATION UNDER LIMITED POWER OF ATTORNEY DATED
SEPTEMBER 29, 2010 RECORDED SEPTEMBER 29, 2010 IN DALLAS COUNTY, TEXAS IN DOCUMENT
NUMBER 201000250121
**Assignee:** U.S. BANK NATIONAL ASSOCIATION

**U.S. Bank Loan #:** 246291082   **FNMA Loan #:** 246291082
**Trustor:** Christopher R. Smith
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 4130-4132 1/2 Toluca Lake Ave, Burbank, CA 91505
**Recorded on:** 9/26/2006 **Instrument:** 06 2134503 **Page:**   **Book:**   **Certificate:**
**Re-Recorded on:**   **Re-Recorded Instrument:**   **Re-Recorded Page:**   **Re-Recorded Book:**   **Re-Recorded
Certificate:**

**U.S. Bank Loan #:** 246292767   **FNMA Loan #:** 246292767
**Trustor:** lawrence Arangua and Lisa Arangua
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 161 N. Brightview Dr., Covina, CA 91723
**Recorded on:** 10/18/2006 **Instrument:** 06 2315390 **Page:**   **Book:**   **Certificate:**
**Re-Recorded on:**   **Re-Recorded Instrument:**   **Re-Recorded Page:**   **Re-Recorded Book:**   **Re-Recorded
Certificate:**

**U.S. Bank Loan #:** 246294540   **FNMA Loan #:** 246294540
**Trustor:** Sharron A. Babb, Trustee, Sharron A. Babb Living Trust
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 14701 Dublin Ave, Gardena, CA 90249
**Recorded on:** 12/27/2006 **Instrument:** 20062871735 **Page:**   **Book:**   **Certificate:**
**Re-Recorded on:**   **Re-Recorded Instrument:**   **Re-Recorded Page:**   **Re-Recorded Book:**   **Re-Recorded
Certificate:**

**U.S. Bank Loan #:** 246303606   **FNMA Loan #:** 246303606
**Trustor:** Salvador Guzman and Griselda Guzman
**Beneficiary:** PFF BANK AND TRUST
**Property Address:** 1650 Lawrence Pl., Pomona, CA 91766
**Recorded on:** 9/28/2007 **Instrument:** 20072238500 **Page:**   **Book:**   **Certificate:**
**Re-Recorded on:**   **Re-Recorded Instrument:**   **Re-Recorded Page:**   **Re-Recorded Book:**   **Re-Recorded
Certificate:**

-U01675778-

6611   12/1/2010   76813723/1

Page ____ of ____

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **15233 Ventura Blvd., Suite 250, Sherman Oaks, CA 91403.**

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL [11 U.S.C. § 506(a), FRBP 3012]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **11/5/2014** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page.

- **Melanie Scott Green**   Melanie.green@usdoj.gov
- **M Jonathan Hayes**   jhayes@srhlawfirm.com, roksana@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;maria@srhlawfirm.com;staci@srhlawfirm.com;jhayesecf@gmail.com;sevan@srhlawfirm.com
- **Gina J Kim**   gjkim@piteduncan.com, ecfcacb@piteduncan.com;GJK@ecf.inforupcty.com
- **John H Kim**   jkim@cookseylaw.com
- **Matthew D Resnik**   matt@srhlawfirm.com, mattecf@gmail.com;renee@srhlawfirm.com
- **Cassandra J Richey**   cmartin@pralc.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov

**II. SERVED BY U.S. MAIL:** On **11/5/2014** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**Debtor's Copy**
Christopher R. Smith
10155 Toluca Lake Avenue
Toluca Lake, CA  91602
///

///

///

///

///

SIMON RESNIK
HAYES LLP

### III. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):

Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **11/5/2014** I served the following person(s) and/or entity(ies) by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**Judge's Copy:**
Hon. Julia W. Brand
US Bankruptcy Court
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| <u>11/5/2014</u> | <u>**Ja'Nita Fisher**</u> | <u>**/s/ Ja'Nita Fisher**</u> |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

SIMON RESNIK
HAYES LLP

(Attached page to Proof of Service-please include any additional or alternative addresses and attach additional pages if needed)(Certified Mail required for service on a national bank.)

| (Name of 1st Lienholder) OneWest Bank, NA<br><br>Agent for Service of Process (Name & Address)<br>P.O. Box 829009<br>Dallas, Texas 75382-9009 | Address from:<br>☒ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☒ Other: (Specify)<br>Schedules Address | Delivery method:<br>☐ US Mail<br>☒ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>   Carrier Name: |
| --- | --- | --- |
| (Name of 1st Lienholder) OneWest Bank, NA<br>Agent for Service of Process (Name & Address)<br>Joseph Otting, President<br>888 E. Walnut Street<br>Pasadena, CA 91101 | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☒ FDIC website<br>☐ Other: (Specify) | Delivery method:<br>☐ US Mail<br>☒ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>   Carrier Name: |
| (Name of 1st Lienholder)<br><br>Agent for Service of Process (Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: (Specify) | Delivery method:<br>☐ US Mail<br>☐ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>   Carrier Name: |

| (Name of 2nd Lienholder) US Bank, NA<br><br>Agent for Service of Process (Name & Address)<br>US Bank<br>Attention: Bankruptcy Dept.<br>PO Box 5229<br>Cincinnati, OH 45201 | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☒ Other: (Specify)<br>Schedules Address | Delivery method:<br>☐ US Mail<br>☒ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>   Carrier Name: |
| --- | --- | --- |
| (Name of 2nd Lienholder) US Bank, NA<br><br>Agent for Service of Process (Name & Address)<br>Jan Estep, President<br>425 Walnut Street<br>Cincinnati, OH 45202 | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☒ FDIC website<br>☐ Other: (Specify) | Delivery method:<br>☐ US Mail<br>☒ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>   Carrier Name: |
| (Name of 2nd Lienholder)<br><br>Agent for Service of Process (Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: (Specify) | Delivery method:<br>☐ US Mail<br>☐ Certified mail – Tracking #<br>☐ Overnight mail – Tracking #<br>   Carrier Name: |